PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARCANA DIVISION

| | |
|---|---|
| PANTECH CORPORATION and PANTECH WIRELESS, LLC, | |
| *Plaintiffs*, | Case No. 5:22-cv-00069-RWS-JBB |
| v. | **JURY TRIAL DEMANDED** |
| ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., | PUBLIC VERSION |
| *Defendant*. | |

## PLAINTIFFS' OMNIBUS MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR ORAL ARGUMENT

PUBLIC VERSION

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ....................................1

    A.  Patent Exhaustion...................................................................................................1

    B.  Public Availability of Alleged Prior Art.................................................................2

    C.  Claim Limitations Unaddressed by OnePlus's Expert Witness...............................2

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS .................................................2

    A.  OnePlus Has Asserted a Defense of Patent Exhaustion..........................................2

    B.  Operation of the 3GPP Organization and its Website .............................................3

    C.  OnePlus Has Challenged the Validity of the '839 Patent ........................................5

    D.  OnePlus Has Challenged the Validity of the '954 Patent ........................................7

    E.  OnePlus Has Challenged the Validity of the '052 Patent ........................................7

IV.  RELEVANT LEGAL STANDARDS ..........................................................................8

    A.  Patent Exhaustion...................................................................................................8

    B.  Public Accessibility of a Prior Art Printed Publication ..........................................9

    C.  Anticipation Requires Meeting Every Claim Element ..........................................11

V.  ARGUMENT ........................................................................................................11

    A.  Summary Judgment Should be Granted Against OnePlus's Defense of Patent Exhaustion....................................................................................................11

        1.  The Accused Products are Excluded from the Scope of the ▮▮▮ ▮▮▮▮▮▮▮▮▮▮ . ...........................................................................................11

        2.  Alternatively, Licensed Base Stations do Not Substantially Embody the Patent Claims. ........................................................................13

        3.  OnePlus is Not a Beneficiary of the ▮▮▮▮▮▮▮▮▮▮▮ .....................15

    B.  Summary Judgment Should be Granted Against Each Ground of Invalidity Reliant on an Unavailable Prior Art Reference. ....................................................15

        1.  The 3GPP Technical Documents Do Not Qualify as Prior Art Printed Publications. ...................................................................................16

            a.  The 3GPP Technical Documents Are Not Indexed in Any Meaningful Way. ................................................................................16

            b.  The 3GPP Technical Documents Lack Evidence of Public Posting.........................................................................................................19

            c.  R1-081161 Did Not Exist Prior to the Priority Date of the '839 Patent. ....................................................................................21

i

PUBLIC VERSION

      2.    Mere Discussions of the 3GPP Technical Documents at Working Group Meetings in Foreign Countries do Not Constitute Prior Art..........23

  C.    Summary Judgment Should be Granted of No Invalidity of '052 Patent Claims with Limitations Unaddressed by OnePlus's Expert Witness. .................25

VI.    CONCLUSION.....................................................................................................26

PUBLIC VERSION
## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acceleration Bay, LLC v. Activision Blizzard Inc.*,
    908 F.3d 765 (Fed. Cir. 2018)......................................................................10, 18, 19

*ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*,
    No. 04-3526, 2008 U.S. Dist. LEXIS 68441 (N.D. Cal. Aug. 21, 2008) ..........................9, 14

*Blue Calypso, LLC v. Groupon, Inc.*,
    815 F.3d 1331 (Fed. Cir. 2016)...................................................................................10

*Bright Response, LLC v. Google, Inc.*,
    730 F. Supp. 2d 610 (E.D. Tex. 2010) .......................................................................11

*In re Cronyn*,
    890 F.2d 1158 (Fed. Cir. 1989)..................................................................................18

*Estech Sys. IP, LLC v. Carvana LLC*,
    No. 2:21-CV-00482-JRG-RSP, 2023 WL 3292881 (E.D. Tex. May 5, 2023).......................23

*Google Inc. v. Ben. Innovations, Inc.*,
    No. 2:11-cv-229-JRG, 2014 U.S. Dist. LEXIS 5443 (E.D. Tex. Jan. 16, 2014)....................12

*Helferich Patent Licensing, LLC v. New York Times Co.*,
    778 F.3d 1293 (Fed. Cir. 2015)....................................................................................9

*Jazz Pharm., Inc. v. Amneal Pharm., Inc.*,
    895 F.3d 1347 (Fed. Cir. 2018)................................................................................9, 10

*In re Lister*,
    583 F.3d 1307 (Fed. Cir. 2009)....................................................................10, 11, 19, 20

*Monsanto Co. v. Scruggs*,
    459 F.3d 1328 (Fed. Cir. 2006)....................................................................................9

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
    553 U.S. 617 (2008)........................................................................................ *passim*

*Samsung Elecs. Co., Ltd. v. Infobridge Pte. Ltd.*,
    929 F.3d 1363 (Fed. Cir. 2019)...................................................................................18

*SRI Intern., Inc. v. Internet Sec. Sys., Inc.*,
    511 F.3d 1186 (Fed. Cir. 2008)...................................................................................19

PUBLIC VERSION

*SSL Servs., LLC v. Citrix Sys., Inc.*,
   940 F. Supp. 2d 480 (E.D. Tex. 2013) ....................................................................11

*VidStream LLC v. Twitter, Inc.*,
   981 F.3d 1060 (Fed. Cir. 2020)............................................................9, 16, 24

*Voter Verified, Inc. v. Premier Electron Sols., Inc.*,
   698 F.3d 1374 (Fed. Cir. 2012)............................................................16

*Wi-LAN Inc. v. LG Elecs., Inc.*,
   No. 18-cv-01577-H-BGS, Doc. No 278 (S.D. Cal. Oct. 24, 2019) (attached at
   Ex. 12)........................................................................................14, 15

**Statutes**

35 U.S.C. § 102...........................................................................10, 16, 18, 19

35 U.S.C. § 102(a) ....................................................................16, 24

## I.     INTRODUCTION

Summary judgment should be granted against several meritless affirmative defenses raised by OnePlus for which it cannot possibly satisfy its burden of proof. Specifically, Pantech seeks summary judgment on the following issues:

- OnePlus's defense of patent exhaustion fails as a matter of law because the Accused Products are excluded from the scope of the ████████████ that OnePlus relies on, and because the licensed base stations do not substantially embody the patent claims asserted by Pantech in U.S. Patent Nos. 10,869,247 (the "'247 Patent"), 9,548,839 (the "'839 Patent"), and 11,012,954 (the "'954 Patent").

- OnePlus's defenses of invalidity based on alleged prior art references R1-081161, R1-081063, and R2-100423 fail as a matter of law because OnePlus cannot show that these references were publicly accessible prior to the priority dates of the '839 and '954 Patents, and because R1-081161 did not even exist before the priority date of the '839 Patent.

- OnePlus's defense of invalidity based on alleged prior art reference Kinoshita fails as a matter of law because OnePlus's expert did not address all the limitations of the asserted claims of U.S. Patent No. 8,893,052 (the "'052 Patent").

As explained below, OnePlus cannot meet its burden of proof on any of these issues, and there are no genuine disputes of material fact that would preclude summary judgment in Pantech's favor. Accordingly, Pantech respectfully requests that the Court grant summary judgment against OnePlus's affirmative defenses and enter judgment of no patent exhaustion for the '247, '839 and '954 Patents and no invalidity for the '839, '954, and '052 Patents.

## II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

### A.     Patent Exhaustion

Can OnePlus carry its burden to prevail on its defense of patent exhaustion against the '839, '247, and '924 Patents?

PUBLIC VERSION

## B.      Public Availability of Alleged Prior Art

Can OnePlus carry its burden to show that R1-081161 was publicly available prior to the priority date of the '839 Patent?   If not, can OnePlus carry its burden to show R1-081161 anticipates or renders obvious claims 9-12 of the '839 Patent?

Can OnePlus carry its burden to show that R1-081063 was publicly available prior to the priority date of the '839 Patent? If not, can OnePlus carry its burden to show R1-081161 in view of R1-081063 renders obvious claims 9-12 of the '839 Patent?

Can OnePlus carry its burden to show that R2-100423 was publicly available prior to the priority date of the '954 Patent? If not, can OnePlus carry its burden to show R2-100423 anticipates or renders obvious claims 6 or 9 of the '954 Patent?

## C.      Claim Limitations Unaddressed by OnePlus's Expert Witness

Can OnePlus carry its burden to show that Kinoshita anticipates the asserted claims of the '052 Patent when OnePlus's expert does not offer an opinion on all limitations of independent claims 10 and 18?

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

## A.      OnePlus Has Asserted a Defense of Patent Exhaustion

OnePlus has raised an alleged defense of patent exhaustion against the '839, '247, and '924 Patents. *See* Dkt. 15 (Answer) at ¶ 178; Ex. 1 (OnePlus's Second Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories) at 37. OnePlus's alleged patent exhaustion defense is based upon ███████████████████, whereby ██████ allegedly exhaust Pantech's ability to assert the '839, '247, and '924 Patents "because the Accused Products interface with equipment manufactured by ████ having a license." Ex. 1 (OnePlus's Second Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories) at 37.

PUBLIC VERSION



The Accused Products for the '839, '247, and '924 Patents are each a smartphone and therefore a ███████████████████████████████████████████████ Ex. 2 (Cooklev Reb. Rep.) at ¶¶ 195-96.

Each of the patent claims for which OnePlus asserts that the doctrine of equivalents applies are apparatus claims. Independent claim 9 of the '839 Patent claims a "mobile station," which is not a base station. Ex. 3 ('839 Patent) at claim 9; Ex. 2 (Cooklev Reb. Rep.) at ¶¶ 200-02. Independent claim 1 of the '247 Patent claims a "wireless transmit/receive unit," which is not a base station. Ex. 4 ('247 Patent) at claim 1; Ex. 2 (Cooklev Reb. Rep.) at ¶¶ 203-05. Independent claim 6 of the '954 Patent claims a "communication apparatus for user equipment," which is not a base station. Ex. 5 ('954 Patent) at claim 1; Ex. 2 (Cooklev Reb. Rep.) at ¶¶ 206-07.

## B.    Operation of the 3GPP Organization and its Website

The 3rd Generation Partnership Project ("3GPP") is an organization for the development of wireless communications standards and is composed of a collection of Organization Partners ("OP"). *See* Ex. 6 (Cooklev Rep.) at ¶ 62. These OPs are major telecommunications standards developing organizations from around the world with significant expertise in their own right,

including the European Telecommunications Standards Institute ("ETSI") and the North American Alliance for Telecommunication Industry Solutions ("ATIS"), among others. *See id.* Starting with 2G, standards for cellular telephony were generally developed by international organizations, such as 3GPP. *See id.* 3GPP is composed of a number of Technical Specification Groups ("TSG"), such as the Radio Access Networks ("RAN"), which are further broken down into various Working Groups ("WG"). *See* Ex. 7 (Kakaes Rep.) at ¶ 73 n.1.

The WGs meet regularly to discuss proposed changes and updates to the Technical Specifications ("TS"). *See id.* In preparation for a meeting, those that intend to contribute a technical document ("Tdoc") normally obtain a document number (such as R1-######) before that document is even created, at which point the number is assigned to them and provided a date. *See* Ex. 2 (Cooklev Reb. Rep.) at ¶ 64. Documents typically follow a template listing the place and date of the meeting in connection with which they are developed, such as with the letter R (Radio Access Network), followed by a number indicating the working group, followed by a hyphen, followed by two digits identifying the year, followed by the document number. *See id.* R1-081161, R1-081063, and R2-100423 (addressed in this motion) are examples of such Tdocs, which are not uploaded onto the 3GPP server immediately after a document number is obtained. *See id.*; *see also* Ex. 8 (R1-081161); Ex. 9 (R1-081063); Ex. 10  (R2-100423).

The 3GPP website provides directories of Tdocs for each WG. *See* Ex. 2 (Cooklev Reb. Rep.) at ¶ 72. However, the 3GPP directories lack search functionality for the contents of Tdocs. *See id.* at ¶ 70. Tdocs are identified by WG number, correct WG meeting number, and Tdoc number, but not individually indexed by subject matter (beyond the overall purpose of the WG). *See id.*

### C.      OnePlus Has Challenged the Validity of the '839 Patent

OnePlus has challenged the validity of the '839 Patent on two grounds, and both grounds rely on R1-081161 as a prior art reference. OnePlus's first ground of invalidity alleges that R1-081161 anticipates and/or renders obvious all of the asserted claims, *i.e.*, claims 9-12 of the '839 Patent. *See* Ex. 7 (Kakaes Rep.) at ¶ 120. OnePlus's second ground of invalidity alleges that R1-081063 in view of R1-081161 renders obvious all of the asserted claims of the '839 Patent, *i.e.*, claims 9-12 of the '839 Patent. *See id.* at ¶ 159. Both parties agree that the priority date of the '839 Patent is February 19, 2008. *See* Ex. 7 (Kakaes Rep.) at ¶ 63; Ex. 2 (Cooklev Reb. Rep.) at ¶ 67. OnePlus asserts no ground of invalidity not reliant on the prior art status of R1-081161.

R1-081161 and R1-081063 purport to be from a 3GPP Radio Access Networks ("RAN") Working Group 1 meeting #52 in Sorrento, Italy during the period February 11-15, 2008. *See* Ex. 8 (R1-081161) at 1; Ex. 9 (R1-081063) at 1.

To locate R1-081161 and R1-081063 from the 3GPP website, the following steps need to be taken: from the 3GPP homepage, locate the tab for the Radio Access Network Working Group 1. *See*  Ex. 2 (Cooklev Reb. Rep.) at ¶ 72. Selecting "document area," brings the searcher to the directory for RAN WG1, which contains 179 folders named with a combination of acronyms and numbers. *See id.* This directory does not provide the ability to search the contents of individual documents. *Id.* The folder for R1-081161 and R1-081063 contains over 500 zip files, with each zip file named according to Tdoc number without further information provided. *See id.* R1-081161 and  R1-081063 are distinct folders within this directory. *Id.*

R1-081161 lists May 20, 2008 as its "sort by date." *See id.* at ¶ 73. However, a document located in the same folder with R1-081161 and R1-081063, lists the "uploaded" date for both R1-081161 and R1-081063 as October 5, 2017. *See id.*

5

PUBLIC VERSION

R1-081161 provides as the "reason for change" that "[d]ecisions from RAN1#51bis and RAN`#52 need to be reflected in 36.211," indicating that the document itself was meant to compile and reconcile proposals on a post hoc basis. *See* Ex. 8 (R1-081161) at 1; Ex. 2 (Cooklev Reb. Rep.) at ¶ 78. The redline revisions within R1-081161 are dated February 28, 2008.

*See* Ex. 14 (redlines from R1-081161); *see also* Ex. 8 (R1-081161) at 48; Ex. 2 (Cooklev Reb. Rep.) at ¶ 77. Dr. Kakaes's report relies upon these redlined disclosures as supposed evidence of invalidity for multiple claim limitations. *See, e.g.*, Ex. 7 (Kakaes Rep.) at ¶¶ 108, 133, 144, 146, 175, 185, 187.

The only publicly available version of R1-081161 has a "modified" date of March 5, 2008. *See* Ex. 2 (Cooklev Reb. Rep.) at ¶ 79.

A March 4, 2008 email entitled "[LTE] CR 36.211-0003rl" from Stefan Parkvall sent to the email address 3GPP_TSG_RAN_WG@list.etsi.org attached a zip folder titled "R1-081161.zip," containing a file titled R1-081161. *See id.* The body of the email states, in part, "attached is the revision to the CR to 36.211" and "[w]ith this I hope we have a final CR to be submitted to RAN for approval." *Id.*

6

### D.    OnePlus Has Challenged the Validity of the '954 Patent

OnePlus has challenged the validity of the '954 Patent on the basis that R2-100423 allegedly anticipates and/or renders obvious the asserted claims of the '954 Patent, *i.e.*, claims 6 and 9. *See* Ex. 7 (Kakaes Rep.) at ¶ 445.

R2-100423 purport to be from a 3GPP Radio Access Networks ("RAN") Working Group 2 meeting #68bis in Valencia, Spain during the period January 18-22, 2010. *See* Ex. 10 (R2-100423) at 1.

To locate R2-100423 from the 3GPP website, the following steps need to be taken: from the 3GPP homepage, locate the tab for the Radio Access Network Working Group 2. *See* Ex. 2 (Cooklev Reb. Rep.) at ¶ 156. Selecting "meeting documents" yields the directory for RAN WG2, which contains 191 folders named with a combination of acronyms and numbers. *See id.* This directory does not include the ability to search contents of individual documents. *Id.* The folder for R2-100423 contains over 700 zip files, with each zip file named according to Tdoc number without further information. *See id.*  R2-100423 is a distinct folder within this directory. *Id.*

The "sort by date" for R2-100423 is January 12, 2010. *See id.* at ¶ 157. However, a document located in the same folder as R2-100423, lists the "uploaded" and "reservation date" for R2-100423 as December 1, 2016. *See id.*

### E.    OnePlus Has Challenged the Validity of the '052 Patent

OnePlus has challenged the validity of the '052 Patent on the basis that U.S. Patent No. 8,997,015 ("Kinoshita") allegedly anticipates claims 10, 17, 18, 19, and 20 of the '052 Patent. *See* Ex. 11 (Kia Rep.) at ¶ 39.

In opining on the alleged anticipation of the '052 Patent by Kinoshita, Dr. Kia analyzed the following language purporting to be limitation [10.h] of the '052 Patent:

| 9.1.1.9 | [10h] "[the application controlling unit] to control the target application to perform the command event in a background application state if the command event is a command event of the target application." |
|---|---|

*See id.* at ¶¶ 181-84. He concludes his opinion by stating:

> In my opinion, a POSA would have understood that Kinoshita discloses this limitation for "[the application controlling unit] to control the target application to perform the command event in a background application state if the command event is a command event of the target" (claim 10h) either expressly or inherently in the teachings of the reference.

*See id.* at ¶ 184.

When addressing limitation [18.c], Dr. Kia merely incorporates by reference his opinions for limitation [10.h]. *See id.* at ¶ 195.

Limitation [10.h] of the '052 Patent requires that "determines the first application as the target application without the application selection gesture if the first application is the only background application being executed." *See* Ex. 17 ('052 Patent) at 15:12-16. Limitation [18.c] of the '052 Patent requires that "[the application executing unit] to determine a first application as the target application without the contact signal if the first application is the only background application being executed." *Id.* at 16:15-22. At no point does Dr. Kia provide an opinion about the language in limitation [10.h] or [18.c]. *See generally* Ex. 11 (Kia Rep.) at ¶¶ 181-84, 195.

## IV.   RELEVANT LEGAL STANDARDS

The standard for summary judgment under Fed. R. Civ. P. 56 is undoubtedly well-known to this Court, and Plaintiffs will not repeat it. Instead, this legal section is limited to the particular legal doctrines presented by this motion.

### A.   Patent Exhaustion

"The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Elecs., Inc.*,

PUBLIC VERSION

553 U.S. 617, 625 (2008). "Exhaustion is triggered only by a sale authorized by the patent holder." *Id.* at 636. Additionally, the authorized sale must be of an article that "substantially embodies" the patent. *Id.* at 637. "Substantial embodiment will be found where the item has no reasonable non-infringing use and includes all essential, or inventive, aspects of the patent claims." *ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, No. 04-3526, 2008 U.S. Dist. LEXIS 68441, at *7 (N.D. Cal. Aug. 21, 2008) (citing *Quanta*, 553 U.S. at 631, 636-37).

Patent exhaustion is an affirmative defense, and therefore the burden of proof lies with the defendant. *See Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1334 (Fed. Cir. 2006). Furthermore, patent exhaustion is properly decided by summary judgment when there are no genuine disputes of material fact. *See Helferich Patent Licensing, LLC v. New York Times Co.*, 778 F.3d 1293, 1299 (Fed. Cir. 2015).

### B.     Public Accessibility of a Prior Art Printed Publication

Not every document is a prior art reference. "When the status of a reference is reasonably challenged, the provider of the reference has the burden of establishing that the requirements of 'printed publication' are met." *VidStream LLC v. Twitter, Inc.*, 981 F.3d 1060, 1065 (Fed. Cir. 2020). The party asserting invalidity bears the "burden of establishing that the requirements of 'printed publication' are met." *Id.*

"[W]hether a reference is a 'printed publication' is a 'case-by-case inquiry into the facts and circumstances surrounding the reference's disclosure to members of the public.'" *Jazz Pharm., Inc. v. Amneal Pharm., Inc.*, 895 F.3d 1347, 1356 (Fed. Cir. 2018) (quoting *In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004)). One such fact question is public accessibility. "Because there are many ways in which a reference may be disseminated to the interested public, 'public accessibility' has been called the touch-stone in determining whether a reference constitutes a 'printed publication.'" *Id.* (quoting *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986)). A reference

9

is considered publicly accessible if it was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it." *Id.* at 1355–56 (citing *In re Wyer*, 655 F.2d 221, 226 (CCPA 1981)).

Several factors guide this inquiry. "Just as indexing plays a signification role in evaluating whether a reference in a library is publicly accessible, [] indexing, '[w]hether…through search engines or otherwise,' [is] an important question for determining if a reference stored on a given webpage in cyberspace is publicly accessible." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1349 (Fed. Cir. 2016) (citing *Voter Verified, Inc. v. Premier Electron Sols., Inc.*, 698 F.3d 1374, 1380 (Fed. Cir. 2012)). For example, the Federal Circuit has held that a report indexed only by author or year was "not meaningfully indexed" such that a reasonably diligent artisan would have found it "by skimming though potentially hundreds of titles in the same year" or "by viewing all titles in the database listed by author." *See Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 773-74 (Fed. Cir. 2018) (holding that the report was not publicly available and is thus not a printed publication under Section 102).

Further, online disclosures may be considered to be publicly available "as of the date the item was publicly posted" in certain circumstances, but there needs to be evidence of public posting. *See* Ex 13 (Manual of Patent Examining Procedures) § 2128. "Absent evidence of the data that the disclosure was publicly posted, if the publication itself does not include a publication date (or retrieval date), it cannot be relied upon as prior art under [] pre-AIA 35 U.S.C. 102(a) or (b)." *See id.*; *see also In re Lister*, 583 F.3d 1307, 1317 (Fed. Cir. 2009) ("We see little difference between the evidence in this case and a situation in which an examiner comes across an undated reference that discloses an invention for which an applicant is seeking the patent."). "We surely

would not view the mere existence of the reference…as prima facie evidence that it was available prior to the applicant's critical date." *Lister*, 583 F.3d at 1317.

### C.    Anticipation Requires Meeting Every Claim Element

"For a prior art reference to anticipate a patent claim, it must describe each and every limitation of the claimed invention." *See SSL Servs., LLC v. Citrix Sys., Inc.*, 940 F. Supp. 2d 480, 498-99 (E.D. Tex. 2013) (citing *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1344 (Fed. Cir. 2012)). Failure to show that a reference does so warrants summary judgment against a corresponding assertion of invalidity. *See Bright Response, LLC v. Google, Inc.*, 730 F. Supp. 2d 610, 619 (E.D. Tex. 2010) (granting summary judgment as to validity when defendant's alleged anticipatory reference failed to disclose one element of an asserted claim).

## V.    ARGUMENT

### A.    Summary Judgment Should be Granted Against OnePlus's Defense of Patent Exhaustion.

For the reasons presented herein, summary judgment should be granted against OnePlus's alleged defense of patent exhaustion relating to the '839, '247, and '924 Patents.



*1.    The Accused Products are Excluded from the Scope of the*

First, the                              (the only basis for OnePlus's alleged patent exhaustion defense) explicitly exclude                from the scope of their respective authorizations for sale. Because the scopes of these licenses have been restricted to exclude                and the Accused Products are                the doctrine of patent exhaustion does not apply to the Accused Products. *See Quanta*, 553 U.S. at 637.

There can be no factual dispute that

. *See supra* Section

III.A above. It is similarly beyond any possible factual dispute that the Accused Products, which

are smartphones, are ████████████ within the meaning of these licenses. ██████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████ Dr. Cooklev also confirmed what is otherwise

obvious: "█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████" Ex. 2 (Cooklev Reb. Rep.) at ¶¶ 195-96.



Thus, by the plain terms of these licenses, ████████████ are not licensed products.

Therefore, even ██████████████████████ would not have been licensed to manufacture or

sell smartphones that practiced the licensed patents—the parties agreed to exclude these types of

products from the scope of the licenses. Based on this, OnePlus cannot claim to be licensed to do

what the ████████████ could not. The contracted scope o██████████████ does not extend to

the Accused Products, which is an implicit premise of OnePlus's defense.

Parties are free to define the scope of their contracts, and Courts should not subvert explicit

contract terms through the doctrine of patent exhaustion. *See Google Inc. v. Ben. Innovations, Inc.*,

No. 2:11-cv-229-JRG, 2014 U.S. Dist. LEXIS 5443, at *11-13 (E.D. Tex. Jan. 16, 2014) ("The

license to Google's customers being explicitly defined within the express terms of the contract,

Google is not now entitled to the benefit of an implied license by way of the patent exhaustion

doctrine."). OnePlus's defense amounts to a request for the Court to re-write these contracts to

cover subject matter that is explicitly excluded. The Court should not do so.

Accordingly, the restricted scope of the base station licenses ends the inquiry, and summary

judgment should be granted against OnePlus's affirmative defense of patent exhaustion.

2.    *Alternatively, Licensed Base Stations do Not Substantially Embody the Patent Claims.*

Even if the express exclusion of ████████████████████████████████████████ is set aside (and it should not be), there is a second entirely separate and appropriate basis for summary judgment of no patent exhaustion: any licensed base stations that may have been sold by ████████████████ do not "substantially embody" the claimed inventions of the asserted patents, regardless of whether these base stations are used to wirelessly communicate with the Accused Products. *See Quanta*, 553 U.S. at 637. Stated plainly, the asserted claims are not directed to base stations.

Each of the patent claims for which OnePlus asserts that the doctrine of equivalents applies are apparatus claims that claim some form of a specifically-configured wireless terminal rather than a base station. *See* Ex. 3 ('839 Patent) at claim 9 ("A mobile station…"); Ex. 4 ('247 Patent) at claim 1 ("A wireless transmit/receive unit…"); Ex. 5 ('954 Patent) at claim 6 ("A communication apparatus for user equipment…"). Each of these claims sets forth, *inter alia*, a processor that exists within the wireless terminal, and the specific configuration that this processor must have to be able to carry out certain claimed functionality. *See, e.g.*, Ex. 3 ('839 Patent) at claim 9 ("a processor configured to determine indexes of resource element groups in which the PHICH is transmitted…"); Ex. 4 ('247 Patent) at claim 1 ("the processor [is] configured to cause the WTRU to: … determine whether to retransmit the data block based on the received uplink scheduling information and not based on whether the WTRU has received a negative acknowledgement (NACK) from the base station"); Ex. 5 ('954 Patent) at claim 6 ("the processor,

when executing program instructions stored in the memory, is configured to: … cause the apparatus to transmit the random access preamble according to a non-contention selection").[1]

The configuration of these processors within the wireless terminal are undoubtedly key parts of these inventions, and in no way can be supplied by a base station—in fact, the base station supplies no part of these apparatus claims directed to a terminal. *See* Ex. 2 (Cooklev Reb. Rep.) at ¶¶ 202, 205, 207 (reviewing asserted claim limitations that are entirely implemented by the wireless terminal). While the claimed wireless terminals are certainly configured for communications with a base station—after all, communications are the point of a wireless terminal—the base station itself does not substantially embody the particular claims at issue. In fact, base stations do not provide *any*, let alone "all" of the "essential, or inventive, aspects of the patent claims" being asserted. *ACCO Brands*, 2008 U.S. Dist. LEXIS 68441, at *7. OnePlus ignores that these are apparatus claims and seeks instead to examine a merely possible (even plausible) form of use, which is legally incorrect.

A strikingly similar defense as now advanced by OnePlus was already considered—and rejected—by the Southern District of California in the context of similarly-structured claims. *See Wi-LAN Inc. v. LG Elecs., Inc.*, No. 18-cv-01577-H-BGS, Doc. No 278, at 63-64 (S.D. Cal. Oct. 24, 2019) ("LG argues that Wi-LAN has exhausted its rights to [certain patents] for all accused products that connect to 4G LTE networks using Nokia, Ericsson, Alcatel-Lucent, Samsung, ZTE and/or Huawei base stations") (attached at Ex. 12). By way of explanation in rejecting LG's arguments, the Court first "acknowledge[d] that the claim language provides that the claimed

---

[1] This is a non-exhaustive listing of the required configuration of these processors, and a more comprehensive description can be found in the claims themselves. *See* Ex. 3 ('839 Patent) at claims 9-12; Ex. 4 ('247 Patent) at claims 1, 2, and 8; and Ex. 5 ('954 Patent) at claims 6 and 9; *see also* Ex. 2 (Cooklev Reb. Rep.) at ¶¶ 200-07 (identifying key claim limitations modifying the wireless terminals).

cellular telephone and its components must be 'operable to' communicate with a base station in the claimed manner," but clarified that "this language merely imposes capability limitations on the claimed cellular telephone." *Id.* at 17. Calling back to this reasoning (initially provided in the context of non-infringement), the Court then concluded that "[u]nder the plain language of the claims [], a base station is not a required component" of the claims and therefore patent exhaustion does not apply. *Id.* at 64. The same logic compels judgment against OnePlus's similar patent exhaustion claims.

   3.    *OnePlus is Not a Beneficiary of the* ███████████████

   Finally, OnePlus can claim no benefit from ████████████. While "[t]he longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item" (*Quanta*, 553 U.S. at 625), Pantech is not asserting its patent rights against licensed base stations—OnePlus has not purchased these base stations and does not operate these base stations. In fact, OnePlus has not alleged any commercial relationship whatsoever with ████████████ Thus, unlike the facts in *Quanta* and numerous other patent exhaustion cases, the licensed base stations form no part of the Accused Products. There is no danger of Pantech asserting its patents twice against the same products—the underlying rationale for the existence of patent exhaustion—because Pantech's lawsuit is not against base stations or the use of base stations. Rather, the accused products are smartphones with specific configurations that meet certain patent claims. Accordingly, for this reason too, summary judgment against OnePlus's defense of patent exhaustion should be granted.

   **B.    Summary Judgment Should be Granted Against Each Ground of Invalidity Reliant on an Unavailable Prior Art Reference.**

   Summary judgment should be granted against (1) OnePlus's defense that R1-081161 anticipates and/or renders obvious claims 9-12 of the '839 Patent; (2) OnePlus's defense that R1-

081063 in view of R1-081161 renders obvious claims 9-12 of the '839 Patent; and (3) OnePlus's defense that R2-100423 anticipates and/or renders obvious claims 6 and 9 of the '954 Patent.

To avoid summary judgment, OnePlus bears the burden to show that the prior art references that these grounds rely upon, namely R1-081161, R1-081063, and R2-100423 (collectively, the "3GPP Technical Documents"), qualify as art under pre-AIA 35 U.S.C. § 102(a) or as prior art printed publications. *See VidStream LLC*, 981 F.3d at 1065. Neither OnePlus nor its expert, Dr. Kakaes, have put forth any evidence to meet this burden, and in fact this burden cannot be met.

> 1.    *The 3GPP Technical Documents Do Not Qualify as Prior Art Printed Publications.*

OnePlus cannot meet its burden to show that the 3GPP Technical Documents qualify as prior art printed publications under Section 102. Specifically, OnePlus cannot show that the 3GPP Technical Documents were publicly available prior to the priority dates of the patents that they are respectively asserted against (*i.e.*, the '839 and '954 Patents). Further, R1-081161 itself shows that its creation date was after the undisputed priority date of the '839 Patent. Accordingly, none of the 3GPP Technical Documents can form the basis of a viable prior art-based invalidity challenge.

> a.    <u>The 3GPP Technical Documents Are Not Indexed in Any Meaningful Way.</u>

For public accessibility, the "ultimate question is whether the reference was 'available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it.'" *Voter Verified*, 698 F.3d at 1380. The 3GPP Technical Documents were not publicly accessible such that a reasonably diligent artisan could locate them.

Dr. Cooklev, a 3GPP Working Group participant, explains that the 3GPP website, which hosts the 3GPP Technical Documents, "does not meaningfully index or provide useful search functionality of its working group documents." *See* Ex. 2 (Cooklev Reb. Rep.) at ¶ 69. There is no evidence to the contrary.

16

Indeed, as explained in the unrebutted opinion of Dr. Cooklev, "without knowing the contents of the document you are looking for, a POSITA conducting a reasonable search would not be able to locate a given document from the 3GPP website." *See id.* at ¶ 70. This is particularly true because the 3GPP website and its related database "does not allow term searching across the contents of the working group documents." *See id.* Specifically, Dr. Cooklev states that "at a minimum, a POSITA would need to know the group number, meeting number, and technical document number before attempting to locate such document from the 3GPP website, since that is how documents are generally grouped." *See id.*

Dr. Cooklev has detailed the tedious procedure a diligent artisan would need to follow to find each of the 3GPP Technical Documents, which shows why these documents are only "available" to those who already know what they are. From the 3GPP homepage, a searcher needs to select the tab for the proper working group, in this case, either Radio Access Network Working Group 1 (for R1-081161 and R1-081063) or 2 (for R2-100423). *See id.* at ¶¶ 72, 156. From the working group page, a reasonably diligent searcher could of course deduce that a tab labeled "document area" or "meeting documents" would lead them to a repository of documents, but this deduction would be of little help. *See id.* As discussed by Dr. Cooklev, the Working Group directories each contain hundreds of subfolders, each named according to "a combination of acronyms and numbers." *See id.* These directories do not contain search functionality, so to come across a given reference without knowing where it is located, "a POSITA would need to do a manual search of the folders," which a POSITA could deduce are named according to working group meeting numbers. *Id.* In other words, "a POSITA would not be able to easily find a specific document without knowing which meeting discussed that specific document." *See id.* Even after identifying a particular meeting of interest, the corresponding folder contains hundreds of zip files,

named only according to technical document number, "without any search capabilities or indication about the contents of the documents." *See id.* The only reason why Dr. Cooklev was able to identify the zip folders containing the 3GPP Technical Documents at issue in this case was because he knew the specific technical documents he was searching for. *See id.*

This inaccessibility of the 3GPP Technical Documents shows that they were not publicly accessible within the standard of 35 U.S.C. § 102. Indeed, a reference "is not publicly accessible if the only people who know how to find it are the ones who created it." *See Samsung Elecs. Co., Ltd. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1372-73 (Fed. Cir. 2019) (holding that substantial evidence supported the finding that a reference's inclusion on a website did not make it publicly available because "the structure of the website, which organized content by meeting and lacked a way to search by subject matter, meant that a person would only find the WD4 reference if they knew where to look").

In fact, the Federal Circuit has upheld findings of inaccessibility for documents found in repositories with greater searching and indexing than that of the 3GPP database. For example, a technical report indexed only by author and year "was not meaningfully indexed" and could not constitute a prior art printed publication. *See Acceleration Bay, LLC*, 908 F.3d at 774; *see also In re Cronyn*, 890 F.2d 1158, 1161 (Fed. Cir. 1989) (finding student theses "not accessible to the public because they had not been either cataloged or indexed in a meaningful way"). The evidence "suggests that an artisan might have located [the reference] by skimming through potentially hundreds of titles in the same year with most containing unrelated subject matter, or by viewing all titles in the database listed by author, when the authors were not particularly well known." *See Acceleration Bay, LLC*, 908 F.3d at 773-74. Further, the relevant website "allowed a user to view a list of technical reports indexed only by author or year" and "there was no evidence as to how

18

many reports were in the Library's database in [the critical year ]." *See id.* at 773. Such "substantial evidence supports [the USPTO's] findings that [the reference] was not publicly accessible." *See id.*, *see also SRI Intern., Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1197-98 (Fed. Cir. 2008) ("on summary judgment, this court finds that the prepublication Liver Traffic paper, though on the FTP server, was not cataloged or indexed in a meaningful way and not intended for dissemination to the public"). Here, the 3GPP does not even provide search capabilities by author and year.

Given the lack of search capabilities and inability to locate the references without prior knowledge of their contents, the 3GPP Technical Documents were not publicly available. Accordingly, OnePlus cannot meet its burden to show that the 3GPP Technical Documents constitute prior art printed publications.

      b.   The 3GPP Technical Documents Lack Evidence of Public Posting.

OnePlus has also not put forth evidence that the 3GPP Technical Documents were actually uploaded (even setting aside public accessibility) to the 3GPP database prior to the critical dates of the '839 and '954 Patents. Such evidence is required as "[p]rior art disclosures on the Internet or on an on-line database are considered to be publicly available *as of the date the item was publicly posted.*" *See* Ex. 13 (Manual of Patent Examining Procedures § 2128 (emphasis added)). "[I]f the publication itself does not include a publication date (or retrieval date), it cannot be relied upon as prior art." *Id.*

The Federal Circuit adopted this principle in *Lister*. *See* 583 F.3d 1307 (Fed. Cir. 2009). There, an applicant challenged a pre-AIA rejection under Section 102 based on a copyrighted manuscript available publicly via two commercial databases, Westlaw and Dialog, which permitted keyword searching by titles. *See id.* at 1315-16. In response, the Government argued that it made a *prima facie* showing that the manuscript was included in the commercial databases shortly after the Copyright Office granted the certificate of registration and thus the burden shifted

PUBLIC VERSION

to Dr. Lister to show that it was not in the databases before the critical date. *See id.* at 1317. The

Federal Circuit disagreed with the Government:

> Essentially, the evidence shows that at some point in time Westlaw and Dialog
> incorporated the Copyright Office's automated catalog information about the Lister
> manuscript into their own databases. There is no indication as to when that occurred
> or whether it was prior to the critical date. We see little difference between the
> evidence in this case and a situation in which an examiner comes across an undated
> reference that discloses an invention for which an applicant is seeking the patent.
> We surely would not view the mere existence of the reference in the latter scenario
> as prima facie evidence that it was available prior to the applicant's critical date.

*Id.*

This lawsuit presents a similar issue as considered in *Lister*: neither OnePlus nor Dr.

Kakaes has offered any evidence of when the 3GPP Technical Documents were actually uploaded

to the 3GPP database. *See generally* Ex. 7 (Kakaes Rep.) at ¶¶ 117-20, 151-53, 443-45. To assume

that the 3GPP Technical Documents were uploaded to the 3GPP database at some point prior to

the critical dates of the '839 and '954 Patents based solely on the later existence of each document

"would be pure speculation." *See Lister*, 583 F.3d at 1317. OnePlus has not even identified a date

for each document that it contends that they were first made available. For this additional reason,

none of the 3GPP Technical Documents qualify as prior art printed publications.

Furthermore, while OnePlus bears the burden to show public accessibility of these

documents (rather than Pantech bearing the burden to show inaccessibility), the available evidence

indicates that none of the 3GPP Technical Documents were in fact included on the 3GPP database

prior to the respective critical dates of the '839 and '954 Patents. For example, the 3GPP directory

lists May 20, 2008 as the "sort by date" for R1-081161—post-dating the priority date of the '839

Patent by nearly three months. *See* Ex. 2 (Cooklev Reb. Rep.) at ¶ 73. However, a document

located in the same folder as R1-081161 and R1-081063 lists the "uploaded" date for both R1-

081161 and R1-081063 as October 5, 2017, nearly ten years after the priority date of the '839

Patent. *See id.* This is not uncommon for Tdocs—they are frequently "not uploaded onto the server immediately after a document number is obtained." *See id.* at ¶ 64. Of course, actually uploading a given document is a necessary predicate for any public accessibility.

Similarly, a document located in the same folder as R2-100423 lists the "uploaded" and "reservation date" for R2-100423 as December 1, 2016, over five years after the priority date of the '954 Patent. *See id.* at ¶ 157. Accordingly, multiple sources show potential dates of availability for the 3GPP Technical Documents that post-date the priority dates of the '839 and '954 Patents.

At bottom, OnePlus failed to meet its burden to provide the date of availability for the 3GPP Technical Documents by clear and convincing evidence, and cannot meet this burden. Accordingly, none of these documents can qualify as prior art printed publications.

      c.   <u>R1-081161 Did Not Exist Prior to the Priority Date of the '839 Patent.</u>

Beyond not qualifying as a publicly available printed publication, the evidence shows that R1-081161 was not even *<u>created</u>* earlier than March 2008, well after the February 19, 2008 priority date of the '839 Patent.

Specifically, as shown below, various redlined edits pertaining to Section 6.9 of R1-081161 are dated as late as February 28, 2008. This particular excerpt from Section 6.9.3, which Dr. Kakaes relies upon throughout his Opening Invalidity Report, forms the basis of Dr. Kakaes's invalidity opinions for the '839 Patent. *See* Ex. 7 (Kakaes Rep.) at ¶¶ 108, 133, 144, 146, 175, 185, 187. However, such edits post-date the priority date (February 19, 2008).

21

*See* Ex. 14 (redlines from R1-081161) (noting the time of edit as "2/28/2008 12:25:00 PM"); *see also* Ex. 8 (R1-081161) at 48; Ex. 2 (Cooklev Reb. Rep.) at ¶ 77.

Furthermore, as discussed by Dr. Cooklev, the metadata of R1-081161 shows that the document relied upon by OnePlus has a "modified" date of March 5, 2008. *See* Ex. 2 (Cooklev Reb. Rep.) at ¶ 79. That the document was created and finalized *after* the February 2008 Sorrento meetings comports with the standard practice of working groups. Based on Dr. Cooklev's experience as a participant and contributor to 3GPP and other standard setting organizations, "decisions from a working group meeting are not immediately input into a formal, finalized change request." *See* Ex. 2 (Cooklev Reb. Rep.) at ¶¶ 62, 78. That the R1-081161 reference post-dates the Sorrento meetings is also reflected in the "reason for change" on the front page of R1-081161, which states that "[d]ecisions from RAN#51bis and RAN1#52 need to be reflected in 36.211." Ex. 8 (R1-081161) at 1; *see also* Ex. 2 (Cooklev Reb. Rep.) at ¶ 78. Thus, R1-081161 was meant to "compile and reconcile proposals on a post hoc basis," an ongoing endeavor beyond the February 2008 Sorrento meetings. *See* Ex. 2 (Cooklev Reb. Rep.) at ¶ 78.

Additionally, the 3GPP_TSG_RAN_WG1 Archives indicate that R1-081161 was still being worked on and circulated to members of the Working Group by March 4, 2008. *See* Ex. 2 (Cooklev Reb. Rep.) at ¶ 80. Specifically, an email from Dr. Stefan Parkvall dated March 4, 2008,

with the subject line "[LTE] CR 36.211-0003rl" to the Working Group Listserv attaches a zip folder entitled "R1-081161.zip," which contains R1-081161. *See id.* The body of the email states "attached is the revision of the CR to 36.211" and "[w]ith this I hope we have a final CR to be submitted to RAN for approval." *See id.* In Dr. Cooklev's experience, this "indicates that R1-081161 had not previously been submitted to the working group, and did not exist at the time of the Sorrento, Italy meetings." *See id.*

Accordingly, the evidence clearly shows that R1-081161 did not exist prior to the priority date of the '839 Patent and cannot constitute invalidating prior art. *See Estech Sys. IP, LLC v. Carvana LLC*, No. 2:21-CV-00482-JRG-RSP, 2023 WL 3292881, at *12 (E.D. Tex. May 5, 2023) (granting motion to exclude an expert's reliance on post-dated references stating that "the general rule is not to allow post-dated references as evidence for invalidity").

2.   *Mere Discussions of the 3GPP Technical Documents at Working Group Meetings in Foreign Countries do Not Constitute Prior Art.*

There is no basis for allowing the 3GPP Technical Documents to support invalidity. Dr. Kakaes, OnePlus's expert on wireless communications standards, makes the bare allegation that R1-081161 and R1-081063 were "presented at a RAN Working Group 1 meeting in Sorrento, Italy during the period February 11 – 15, 2008, thus prior to the earliest claimed priority of the '839 patent, which is February 19, 2008" (*see* Ex. 7 (Kakaes Rep.) at ¶¶ 117, 152) and states that R2-100423 "is a contribution made by Qualcomm Incorporated to Radio Access Network (RAN) Working Group 2 (WG2) at their meeting #68bis held in Valencia, Spain during the period January 18-22, 2010" (*id.* at ¶ 443), he does not provide any details of these Sorrento and Valencia meetings or comment on the standard procedures of such Working Group meetings. But as explained by Dr. Cooklev, it is common practice for many submissions to never be presented at Working Group meetings. *See* Ex. 2 (Cooklev Reb. Rep.) at ¶ 74. Specifically, "[s]ubmissions are presented at the

discretion of the Chair" and there "is not enough time [for] all submissions to be presented." *See id.* There is thus no basis for Dr. Kakaes's assumption that the 3GPP Technical Documents were in fact presented at their respective Working Group meetings.

But ultimately, whether these documents were discussed or not in Sorrento or Valencia at this time is irrelevant. Pre-AIA Section 102(a) requires that "the invention was known or used by others *in this country*, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent." *See* pre-AIA 35 U.S.C. § 102(a) (emphasis added). "Prior knowledge or use which is not present in the United States, even if widespread in a foreign country, cannot be the basis of a rejection under pre-AIA 35 U.S.C. § 102(a)." Ex. 13 (Manual of Patent Examining Procedures § 2132) (citing *In re Ekenstam*, 256 F.2d 321 (CCPA 1958)). Thus, any alleged presentation or discussion of the 3GPP Technical Documents during the Sorrento or Valencia Working Group meetings cannot invalidate the '839 or '954 Patents.

\*      \*      \*

It was OnePlus's burden to show that the 3GPP Technical Documents meet the requirements for consideration as printed publications. *See VidStream LLC*, 981 F.3d at 1065. Yet OnePlus failed to put forth any evidence. Such failure taints all invalidity grounds reliant upon the 3GPP Technical Documents. Specifically, summary judgment of no invalidity should be granted for the following defenses raised by OnePlus: R1-081161 anticipating and/or rendering obvious claims 9-12 of the '839 Patent; R1-081063 in view of R1-081161 rendering obvious claims 9-12 of  the '839 Patent; and R2-100423 anticipating and/or rendering obvious claims 6 and 9 of the '954 Patent.

### C.      Summary Judgment Should be Granted of No Invalidity of '052 Patent Claims with Limitations Unaddressed by OnePlus's Expert Witness.

OnePlus cannot meet its burden to show that U.S. Patent No. 8,997,015 ("Kinoshita") anticipates each and every limitation of claim 10 and 18 of the '052 Patent because OnePlus's expert, Dr. Omid Kia, did not analyze the correct claim language. Specifically, OnePlus's expert, Dr. Kia, does not provide an opinion that Kinoshita anticipates limitations [10.h] and [18.c], and instead analyzes different claim language.

The arguments put forth under heading 9.1.1.9 of Dr. Kia's report purport to address claim element [10.h], but instead analyzes the language that appears to be drawn from claim element [18.h]. *Compare* Ex. 11 (Kia Rep.) at ¶¶ 181-84 *with* Ex. 11 (Kia Rep.) at ¶ 200 (heading 9.1.3.9 for limitation [18.h]). As shown below, the language Dr. Kia analyzes is not limitation [10.h] of the '052 Patent—for unexplained reasons, it is some other, unrelated language.

| Ex. 17 ('052 Patent) claim element [10.h] | Language analyzed by Dr. Kia at ¶¶ 181-84 when supposedly addressing element [10.h] |
|---|---|
| "determines the first application as the target application without the application selection gesture if the first application is the only background application being executed." | "[the application controlling unit] to control the target application to perform the command event in a background application state if the command event is a command event of the target application." |

The actual language (or even the substantive content) of claim element [10.h] is analyzed nowhere in Dr. Kia's report, let alone within a proper anticipation analysis of claim 10.

Further, Dr. Kia addresses limitation [18.c], a similar claim limitation to [10.h], by merely incorporating by reference his opinions with respect to limitations [10.c] and [10.h]. *See* Ex. 11 (Kia Rep.) at ¶ 195. Incorporating by reference incorrect claim language provides no support for OnePlus's invalidity defenses for [18.c] and cannot cure the deficiencies with respect to Dr. Kia's opinions for limitation [10.h]. As such, nowhere in his report does Dr. Kia provide an opinion that the correct claim language ("[the application executing unit] determines the first application as the

target application without the application selection gesture if the first application is the only background application being executed") is anticipated by Kinoshita. *See Bright Response, LLC v. Google, Inc.*, 730 F. Supp. 2d 610, 619 (E.D. Tex. 2010) (granting summary judgment as to validity when defendant's anticipatory reference failed to disclose one element of an asserted claim). Lacking this, OnePlus cannot hope to meet its burden of proof.

Ultimately, this is a simple issue. Dr. Kia has not provided an opinion that claims 10 and 18 have been anticipated by Kinoshita because he has not addressed each and every claim limitation in his expert report. OnePlus has no other way of meeting its burden of proof as to these claims. Accordingly, summary judgment should be granted against OnePlus's defense that Kinoshita anticipates claims 10 and 18 (and therefore dependent claims 17, 19, and 20) of the '052 Patent.

## VI.   CONCLUSION

For the reasons herein, Pantech respectfully requests summary judgment against (1) OnePlus's defense of patent exhaustion; (2) OnePlus's defense that R1-081161 anticipates and/or renders obvious claims 9-12 of the '839 Patent; (3) OnePlus's defense that R1-081063 in view of R1-081161 renders obvious claims 9-12 of the '839 Patent; (4) OnePlus's defense that R2-100423 anticipates and/or renders obvious claims 6 and 9 of the '954 Patent; and (5) OnePlus's defense that Kinoshita anticipates claims 10 and 18 (and therefore dependent claims 17, 19, and 20) of the '052 Patent. Pantech also respectfully requests oral argument on all forms of relief requested herein.

Dated: November 21, 2023                    Respectfully submitted,

                                             */s/ James A. Fussell, III*
                                            Geoffrey Culbertson
                                            Kelly Tidwell
                                            PATTON TIDWELL & CULBERTSON, LLP

PUBLIC VERSION

2800 Texas Blvd. (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
(P) (903) 792-7080
(F) (903) 792-8233
gpc@texarkanalaw.com
kbt@texarkanalaw.com

James A. Fussell, III
Jamie B. Beaber
Saqib J. Siddiqui
Tiffany A. Miller
Baldine Paul
Clark S. Bakewell
Tariq Javed
Seth W. Bruneel
Courtney Krawice
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000
jbeaber@mayerbrown.com
jfussell@mayerbrown.com
ssiddqui@mayerbrown.com
tmiller@mayerbrown.com
bpaul@mayerbrown.com
cbakewell@mayerbrown.com
tjaved@mayerbrown.com
sbruneel@mayerbrown.com
ckrawice@mayerbrown.com

Graham (Gray) M. Buccigross
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
(650) 331-2000
gbuccigross@mayerbrown.com

Gregory J. Apgar
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
gapgar@mayerbrown.com

27

PUBLIC VERSION

Luiz Miranda
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
lmiranda@mayerbrown.com

*Counsel for Plaintiffs Pantech Corporation and Pantech Wireless, LLC*

PUBLIC VERSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 21st day of November, 2023, with a copy of this document via email.

*/s/ Courtney M. Krawice*
Courtney M. Krawice

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Courtney M. Krawice*
Courtney M. Krawice