**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| PANTECH CORPORATION and PANTECH WIRELESS, LLC, | <u>**PUBLIC VERSION**</u> |
| Plaintiffs, | C.A. No. 5:22-cv-00069-RWS-JBB |
| v. | |
| ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DEFENDANT'S MOTION TO STRIKE AND EXCLUDE**
**EXPERT TESTIMONY OF CHARLES MAURO**

FILED UNDER SEAL

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY ........................................................................... 1

II.     LEGAL STANDARD ............................................................................................... 3

III.    ARGUMENT ........................................................................................................... 4

   A.   Mr. Mauro Should Be Excluded Because He Does Not Meet the Requirements of a
        POSA ................................................................................................................... 4

   B.   Mr. Mauro Should Be Precluded From Testifying About Irrelevant Problems Allegedly
        Solved by the '654 Patent ..................................................................................... 9

   C.   Mr. Mauro Should Be Precluded From Opining on Claim Construction .................... 10

   D.   Mr. Mauro Should Be Precluded From Testifying on Issues of Direct Infringement,
        Inducement and Secondary Considerations. ............................................................ 13

IV.     CONCLUSION ........................................................................................................ 14

**FILED UNDER SEAL**

## TABLE OF AUTHORITIES

**Cases**

*Alpex Computer Corp. v. Nintendo Co.*,
102 F.3d 1214 (Fed. Cir. 1996) ................................................................................ 7

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) .............................................................................. 12

*Best Medical Int'l, Inc. v. Elekta*,
46 F.4th 1346 (Fed. Cir. 2022) ................................................................................ 8

*Daubert v. Merrill Dow Pharm., Inc.*,
509 U.S. 579 (1993) .................................................................................. 3, 10, 14

*Enfish, LLC v. Microsoft Corp.*,
No. 2:12-cv-7360, 2014 WL 12585801 (C.D. Cal. Mar. 31, 2014) ......................... 10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) .............................................................................. 12

*Flex-Rest, LLC v. Steelcase, Inc.*,
455 F.3d 1351 (Fed. Cir. 2006) ................................................................................ 6

*Greger v. C.R. Bard, Inc.*,
No. 4:19-CV-675, 2021 WL 3855474 (E.D. Tex., Aug. 30, 2021) .......................... 14

*In re Schreiber*,
128 F.3d 1473 (Fed. Cir. 1997) .............................................................................. 10

*Kyocera Senco Indus. Tools, Inc. v. Int'l Trade Comm'n*,
22 F.4th 1369, 1376 (Fed. Cir. 2022) ............................................................... 2, 4, 5

*Lodsys v. Brother Int'l Corp.*,
No. 2:11–cv–00090, 2013 WL 2949959 (E.D. Tex. June 14, 2013) ....................... 12

*Maxell, Ltd. v. Apple Inc.*,
No. 5:19-CV-00036, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) .................... 4, 12

*Metaswitch Networks Ltd. v. Genband US LLC*,
No. 2:14-CV-00744-JRG, 2017 WL 3704760 (E.D. Tex. Aug. 28, 2017) .............. 13

*Music Choice v. Stingray Digital Grp. Inc.*,
No. 2:16-CV-00586, 2019 WL 8110069 (E.D. Tex. Nov. 19, 2019) (Report and
Recommendation) ................................................................................................ 3, 12

*Not Dead Yet Mfg, Inc. v. Pride Sols, LLC*,
222 F. Supp. 3d 657 (N.D. Ill. Nov. 28, 2016) ...................................................... 10

**FILED UNDER SEAL**

*SB IP, LLC v. Vivint, Inc.*,
No. 4:20-CV-00886, 2023 WL 6601415 (E.D. Tex. Oct. 10, 2023) ............................ 3, 12, 13

*SIPCO, LLC v. Amazon.com, Inc.*,
No. 2:08-CV-359, 2012 WL 5195942 (E.D. Tex. Oct. 19, 2012) ........................................ 2, 12

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
346 F.3d 1057 (Fed. Cir. 2003) ........................................................................................ 9, 10

*Sundance, Inc. v. DeMonte Fabricating, Ltd.*,
550 F.3d 1356 (Fed. Cir. 2008) .............................................................................................. 5

*Ultravision Techs., LLC v. GoVision, LLC*,
No. 2:18-CV-00100, 2021 WL 2144788 (E.D. Tex. May 26, 2021) ........................................ 12

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
No. 18-CV-00366, 2019 WL 6896674 (E.D. Tex. Dec. 18, 2019) ...................................... 3, 14

*VARTA Microbattery GmbH v. Audio Partnership, LLC*,
2023 WL 5192986 (E.D. Tex. Aug. 11, 2023) ........................................................................ 13

*Yoon Ja Kim v. ConAgra Foods, Inc.*,
465 F.3d 1312 (Fed. Cir. 2006) .............................................................................................. 7

**Rules**

Fed. R. Evid. 702 .................................................................................................................. 3, 4

**FILED UNDER SEAL**

## <u>EXHIBIT LIST</u>

| Exhibit | Documents |
|---------|-----------|
| 1 | Initial Expert Report of Charles Mauro CHFP Concerning OnePlus's Infringement Related to U.S. Patent No. 9,063,654 |
| 2 | Rebuttal Expert Report of Charles Mauro CHFP Regarding Validity of U.S. Patent No. 9,063,654 |
| 3 | Claim Construction Memorandum and Order (Dkt. No. 51) |
| 4 | Excerpts from the Claim Construction Expert Report of Branimir Vojcic, D.Sc. Concerning Alleged Indefiniteness of Certain Terms of U.S. Patent Nos. 10,869,247; 11,012,954; 11,172,493; 9,548,839; 8,587,710; 8,893,052; and 9,063,654 |
| 5 | Excerpts from the Initial Expert Report of Robert Louis Stevenson Concerning OnePlus's Infringement Related to U.S. Patent No. 8,893,052 |
| 6 | Excerpts from the prosecution history for the application for U.S. Patent No. 9,063,654 |
| 7 | Excerpts from the Expert Report of Omid Kia, Ph.D. Regarding U.S. Patent Numbers:  8,893,052 and 9,063,654 |
| 8 | Excerpts from the November 10, 2023 deposition transcript of Charles Mauro |
| 9 | U.S. Patent No. 9,063,654 |
| 10 | U.S. Patent Publication No. 2003/0189553 ("Goren") |

FILED UNDER SEAL

Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("OnePlus" or "Defendant") hereby moves to strike the opinions of Charles Mauro, one of the technical experts for Plaintiffs Pantech Corp. and Pantech Wireless, LLC ("Plaintiff" or "Pantech")[1].  Mr. Mauro's testimony and opinions should be excluded because he is unqualified to offer expert testimony on the issues of patent infringement, claim construction and invalidity with respect to U.S. Patent No. 9,063,654 (the "'654 patent).  If Mr. Mauro is not excluded entirely, OnePlus moves to strike paragraphs 50–77 and 176–177 of the Initial Expert Report of Charles Mauro CHFP Concerning OnePlus's Infringement Related to U.S. Patent No. 9,063,654 (Ex. 1) and paragraphs 59–86, 99–108, 113–114, 136–137, 144–146, 164, 171–172, 179–180, 187–188, and 210–212  of the Rebuttal Expert Report of Charles Mauro CHFP Regarding Validity of U.S. Patent No. 9,063,654 (Ex. 2).

## I.  INTRODUCTION AND SUMMARY

Pantech has submitted two reports from one its technical experts, Mr. Charles Mauro—one relating to alleged infringement of the '654 patent (Ex. 1) and the other relating to alleged validity of the '654 patent (Ex. 2).  Each of Mr. Mauro's reports include opinions that should not be permitted at trial.

***First***, the Court set forth the level for a person of skill in the art ("POSA") in its Claim Construction Memorandum and Order ("Claim Construction Order").  Ex. 3 at 7.  The Court, after reviewing the declaration of another Pantech technical expert, found a POSA with respect to the '654 patent to have *inter alia* "a degree in electrical or computer engineering, or computer science or related field."  *Id.*  Mr. Mauro does not meet these requirements.  His education and experience are in ergonomics and human factors engineering.  He is <u>not</u> an expert in the field of electronics

---

[1] On November 20, 2023, the Parties conducted a meet and confer during which it was agreed that a hearing is requested.

FILED UNDER SEAL

or software development.  His opinions on the issues of infringement, validity and claim construction are, therefore, not relevant or reliable and should be excluded.  *See e.g., Kyocera Senco Indus. Tools, Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1376-77 (Fed. Cir. 2022) (ALJ abused its discretion by admitting expert testimony of person not having at least ordinary skill in the art).

**Second**, Mr. Mauro provides opinions concerning various problems that he supposes are solved by the alleged invention of the '654 patent.  *See* Ex. 1 at ¶¶ 53 – 77, Ex. 2 at ¶¶ 59 – 86. Mr. Mauro uses these problems to distinguish the asserted claims in the '654 patent from the prior art.  For example, Mr. Mauro opines that the prior art is "non-analogous" because it does not, in his view, solve the same problems he identifies.  However, whether a prior art reference is "analogous" is only relevant to obviousness.  Here, the only prior art invalidity defenses advanced by OnePlus for the '654 patent are anticipation.  On that issue, whether prior art is analogous is simply irrelevant.  Similarly, on the issue of infringement, Mr. Mauro opines that these problems somehow evidence infringement.  *See* Ex. 2 at ¶ 59.  But whether OnePlus phones solve particular unclaimed human factors problems is irrelevant to the issue of infringement.  In short, Mr. Mauro's opinions concerning various unclaimed problems and solutions are irrelevant to infringement and validity and should be excluded.

**Third**, Mr. Mauro engages in improper claim construction by narrowing several claim terms in his validity analysis including at least "untouched region" (claim 1), "pop-up form" (claim 6) and "information" (claim 8).  In stark contrast, Mr. Mauro did not use these narrow constructions in his infringement analysis.  Mr. Mauro's "nose of wax" treatment of the patent claims is improper and should be excluded.  *See, e.g., SIPCO, LLC v. Amazon.com, Inc*., No. 2:08-CV-359, 2012 WL 5195942, at *14 (E.D. Tex. Oct. 19, 2012) ("A patent may not, like a 'nose of wax,' be twisted

2

one way to avoid anticipation and another to find infringement.") (internal citation omitted). Moreover, Pantech did not argue these narrow constructions during claim construction and they should be deemed waived. *Music Choice v. Stingray Digital Grp. Inc*., No. 2:16-CV-00586, 2019 WL 8110069, at *3 (E.D. Tex. Nov. 19, 2019) (Report and Recommendation) (arguments not raised during claim construction are waived). In any event, claim construction is an issue for the Court. Mr. Mauro's analysis goes well beyond merely articulating plain and ordinary meanings of a POSA. He should not be permitted to argue claim construction positions to the jury. *SB IP, LLC v. Vivint, Inc*., No. 4:20-CV-00886, 2023 WL 6601415, at *9 (E.D. Tex. Oct. 10, 2023).

     *Fourth*, Mr. Mauro offers testimony on subjects of direct infringement, inducement and secondary considerations. However, aside from his comparison of accused products to the claims, Mr. Mauro did no independent analysis of any information relevant to these issues. The only "opinion" Mr. Mauro could offer on those subjects is information provided to him by counsel. Mr. Mauro should not be permitted to act as a mere mouthpiece relaying legal theories from counsel under the guise of expert testimony. *See, e.g.*, *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A*., No. 18-CV-00366, 2019 WL 6896674, at *3 (E.D. Tex. Dec. 18, 2019). Further, Mr. Mauro's opinion on secondary considerations is irrelevant because obviousness is not presently at issue.

## II.    LEGAL STANDARD

     "Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue." *SB IP Holdings,* 2023 WL 6601415, at *1. Courts serve as the gatekeeper of expert testimony, excluding irrelevant and unreliable testimony. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Expert testimony should not be allowed at trial unless the expert's scientific or technical knowledge will

help the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702.[2]

Pantech, as the proponent of Mr. Mauro's expert testimony here at issue, bears the burden of

proving admissibility. *See Maxell, Ltd. v. Apple Inc*., No. 5:19-CV-00036, 2020 WL 8269548, at

*3 (E.D. Tex. Nov. 11, 2020).

## III.    ARGUMENT

### A.    Mr. Mauro Should Be Excluded Because He Does Not Meet the Requirements of a POSA

Mr. Mauro's education and experience do not meet the Court's definition of a POSA.  As

such, his opinions on the issues of infringement, validity and claim construction are irrelevant and

unreliable and should be excluded.

As noted in the Claim Construction Order, "the level of ordinary skill often is important to

claim-construction analysis."  Ex. 3 at 7.  It also critical to the issues of validity and infringement.

*Kyocera*, 22 F.4th at 1376-77.  In considering the level of skill in the art for the asserted patents in

this lawsuit, the Court reviewed various materials including the declaration of Dr. Vojcic, which

was submitted by Pantech in support of its positions on various claim construction issues for the

patents-in-suit including the '654 patent.  Ex. 3 at 7, Ex. 4.  Dr. Vojcic's educational background

includes a Master and Doctor of Science in electrical engineering.  Ex. 4, at 3, ¶ 9.  In addition to

his work as a professor in electrical engineering, Dr. Vojcic also has experience as a lead radio

system architect including chipset and smart phone development.  *Id*. at ¶¶ 5 – 8.

In view of the information considered, including Dr. Vojcic's declaration, the Court set

forth the following the level of skill in the art for the '654 patent, which the Court relied on for

claim construction:

---

[2] The arguments in this Motion are unaffected by the amendments to Federal Rule of Evidence 702, which become effective December 1, 2023.

> [A] skilled artisan would have had a bachelor's degree in electrical engineering, computer engineering, computer science, or a related field, and three-years experience in the design and programming of user applications and interfaces for mobile terminals.

Ex. 3 at 7. No party objected to the Court's definition of a POSA and, aside from Mr. Mauro, Pantech's technical experts used definitions of a POSA that substantially align with the Court's definition.[3] *See, e.g.*, Ex. 5 at ¶¶ 39-40. Similarly, Dr. Kia, OnePlus's technical expert on issues of validity and infringement for the '654 patent and U.S. Patent No. 8,893,052, agreed with, and followed, the Court's definition. *See* Ex. 7 at ¶ 26.

The Federal Circuit has held that "[t]o offer expert testimony from the perspective of a skilled artisan in a patent case—like for claim construction, validity, or infringement—a witness must at least have ordinary skill in the art." *Kyocera*, 22 F.4th at 1376-77. "Without that skill, the witness' opinions are neither relevant nor reliable." *Id.* This follows because the "opinions would not be based on any specialized knowledge, training, or experience that would be helpful to the factfinder." *Id.* at 1377. "Admitting testimony from a person ... with no skill in the pertinent art serves only to cause mischief and confuse the factfinder. That testimony would 'amount[ ] to nothing more than advocacy from the witness stand.'" *Id.* (citing *Sundance, Inc. v. DeMonte Fabricating, Ltd.*, 550 F.3d 1356, 1362-65 (Fed. Cir. 2008)).

Mr. Mauro has an undergraduate degree in Industrial Design from Art Center College and a master's degree in Ergonomics. Ex. 1 at Appendix A; Ex. 8 at 15:8–20. Mr. Mauro does not hold a degree in electrical engineering, computer engineering, or computer science. *Id.* at 15:24–16:3. He does not have formal training in the design of electronic circuits or software development.

---

[3] Pantech's technical expert for U.S. Patent No. 8,893,052, Louis Stevenson, states a POSA "would have at least a Bachelor's Degree in Electrical Engineering, Computer Engineering, or Computer Science and at least two years of relevant work experience ... ." Ex. 5 at ¶¶ 39-40.

**FILED UNDER SEAL**

*Id*. at 16:7 – 9, 17:2 – 4.  Mr. Mauro's education and background may qualify him to assess abstract design features, such as the look and feel of a graphical user interface ("GUI").  But nothing in Mr. Mauro's background qualifies him to analyze the electronic components and software that allegedly meet the claim elements, such as "an interface," "a processing unit," and "a control unit" and associated software as required by all asserted claims.  *See* Ex. 9 at col. 11.  Indeed, Mr. Mauro admitted during deposition that he cannot describe at the level of electronic circuitry how a smartphone touchscreen works because he was only responsible for task flows and graphic layout of a GUI—purely abstract concepts.  Ex. 8 at 29:12–21.

Because he is not qualified, Mr. Mauro should be excluded from testifying on the issues infringement, invalidity and claim construction.  *Flex-Rest, LLC v. Steelcase, Inc*., 455 F.3d 1351, 1360–61 (Fed. Cir. 2006) (upholding exclusion of expert testimony where proffered individual, like Mr. Mauro, had expertise in ergonomics, but was not an expert in keyboard design.)

The shortcomings in Mr. Mauro's education and experience are not inconsequential.  Here, for example, Mr. Mauro fails to competently identify specific components for the claimed "interface," "processing unit," and "control unit."   With respect to the claimed "processing unit" and "control unit," Mr. Mauro facially identifies the same component, namely, the Qualcomm Snapdrdagon 8+ Gen 1 Mobile Platform Processor. Ex. 1 at ¶¶ 113, 123.  But during deposition, Mr. Mauro could not differentiate between the device CPU and a separate component known as the graphics processing unit ("GPU").  *See* Ex. 8 at 114:3–117:2.  He equivocated on which components performed which functions and unhelpfully suggested that the various phone components and software cooperate to perform the required functions:

> what's relevant to one of ordinary skill in the art in GUI design, which is what's relevant here for the '654, looks at all those functionalities, all those hardware definitions ***not from the standpoint of a hardware engineer***, but from the standpoint of what is actually being delivered to the glass. That's

really what they care about.

> Now, ***from a, you know, legal point of view, you might want to try to separate those out, but one of ordinary skill in the art doesn't look at the world that way***. It's one processing unit does, you know, all of this together. And it could be -- ***it could be several components; it's just conceptualized as a function, not as a hardware solution.***

Ex. 8 at 120:3–121:20 (emphasis added).  In other words, Mr. Mauro does not know which component in the accused device allegedly performs which function and, in his view, such details are irrelevant as long as the functional aspects of the claims are met.  Mr. Mauro's approach flows directly from his viewpoint as a human factors specialist with insufficient expertise in hardware and software design.  Such hand waving is simply not an acceptable approach for a technical expert assessing issues of patent infringement and invalidity.  *See, e.g.*, *Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006) (affirming JMOL of non-infringement where "conclusory [expert] testimony" was the basis for infringement); *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1222–23 (Fed. Cir. 1996) (conclusory expert testimony did not support a finding of infringement).  His inadequate analysis should not be permitted before the jury.

Mr. Mauro attempts to side-step his lack of qualification by ignoring the Court's reasoned definition and, without explanation, redefining a POSA.  Mr. Mauro defines a POSA as:

> [A]n individual with either undergraduate or graduate level ***education in human factors[4] engineering theory and practice with specific training in human computer interaction design*** for modern mobile devices including wireless communications terminals. They should have a minimum of one year of industry experience in the design and user testing of modern mobile GUI systems and have designed production modern mobile GUI utilizing common screen design interaction elements

---

[4] Human factors and ergonomics is "the application of ***psychological and physiological principles*** to the engineering and design of products, processes, and systems." *See, e.g.*, https://en.wikipedia.org/wiki/Human_factors_and_ergonomics (last accessed Nov. 18, 2023) (emphasis added).

7

Ex. 1 at ¶ 47, Ex. 2 at ¶ 55 (emphasis added). Mr. Mauro's definition, however, is not grounded in any relevant facts. Mr. Mauro does not explain why he found it necessary to deviate from the Court's definition that was essentially adopted by all other technical experts for the '654 and '052 patents. Mr. Mauro did not speak with Dr. Vojcic nor did Mr. Mauro consider Dr. Vojcic's education and experience when arriving at his definition of a POSA. Ex. 8 at 14:25–15:7. Notably, Dr. Vojic—whose declaration this Court relied upon for claim construction—would not qualify as a POSA under Mr. Mauro's definition. Mr. Mauro also did not have any discussions with or consider the educational level of the inventor of the '654 patent. *Id.* Mr. Mauro did not consider the actual problem discussed in the '654 patent, i.e., supporting display of overlapping objects and inaccurate selection of closely spaced objects using smart touch technology. Instead, he considered nine problems untethered from the '654 patent. It is also apparent that he did not consider actual problems in the prior art and prior art solutions to those problems. For example, during prosecution, the Examiner found all features in the asserted claims fully anticipated by the prior art (e.g., Jobs et al. assigned to Apple) except for the claim element directed to "remov[ing] the display of the second object if the second object is not selected with a reference period of time." *See* Ex. 6. Mr. Mauro's definition is simply unsupported. *See generally, Best Medical Int'l, Inc. v. Elekta*, 46 F.4th 1346, 1353 (Fed. Cir. 2022) (listing relevant factors).

Mr. Mauro's recent effort to rely on belated software analysis and report by Mr. Walker does not cure his lack of qualification. Mr. Walker's report, which further evidences non-infringement, analyzed one aspect of the publicly available Android source code relating a lock screen and keyguard function that conventionally causes the accused phones to enter a lock screen following a period of inactivity. His analysis does nothing to cure the deficiencies in Mr. Mauro's expert reports. For example, Mr. Walker does not address Mr. Mauro's inability to pinpoint

accused circuitry relating to features other than the accused locked screen and activity timer.

**B.    Mr. Mauro Should Be Precluded From Testifying About Irrelevant Problems Allegedly Solved by the '654 Patent**

In his initial and rebuttal reports, Mr. Mauro identifies nine problems he contends are solved by the alleged invention of the '654 patent.   *See* Ex. 1 at ¶¶ 50 – 77, Ex. 2 at ¶¶ 62 – 96. Mr. Mauro then concludes that the two prior art references relied upon by OnePlus for invalidity–– Sugiyama and Goren—are directed to "fundamentally different problems and solutions" as compared to the invention of the '654 patent because they do not "objectively solve any of the nine primary human factors problems noted earlier in this report."   *See, e.g.*, *id.* at ¶¶ 99 – 108, 114, 116.   During deposition, Mr. Mauro tacitly conceded that his discussion of the nine problems evidences that the prior art, i.e., Sugiyama and Goren "are not analogous prior art."   Ex. 8 at 137:5– 11.   When asked why this conclusion was relevant, Mr. Mauro testified that "it impacts the assessment of whether the prior art anticipates or is found obvious."   *Id.*   Mr. Mauro also relies on his "nine problems" and alleged solutions in his infringement analysis.   Ex. 2 at ¶¶ 50–77, For example, Mr. Mauro opines "The following analysis of the special problems associated with the design of modern smartphone GUI defines both the scope of the problems Pantech innovations solved and aligns the asserted claims infringed by the Accused '654 Products as exemplified by the OnePlus 10T 5G smartphone."   Ex. 2 at 59.

With respect to the '654 patent here at issue, OnePlus has only advanced anticipation prior art defenses.   *See, e.g.*, Ex. 7 at ¶ 39.   It is well settled that "the question whether a reference is analogous art is irrelevant to whether that reference anticipates."   *State Contracting & Eng'g Corp. v. Condotte Am., Inc*., 346 F.3d 1057, 1068 (Fed. Cir. 2003) (quoting *In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997)); *see also Enfish, LLC v. Microsoft Corp*., No. 2:12-cv-7360, 2014 WL 12585801, *5 (C.D. Cal. Mar. 31, 2014) ("whether Excel 5.0 is equivalent to Enfish's

FILED UNDER SEAL

invention, or even analogous art, does not affect the anticipation inquiry.")  "To the contrary, 'a reference may be from an entirely different field of endeavor than that of the claimed invention or may be directed to an entirely different problem from the one addressed by the inventor, yet the reference will still anticipate if it explicitly or inherently discloses every limitation recited in the claims.'"  *State Contracting*, 346 F.3d at 1068.

Mr. Mauro's discussion of the nine allegedly solved problems and whether the prior art references solve those problem, even if accepted as correct, is simply irrelevant to the question of invalidity analyzed in his rebuttal report on the validity issue and should be excluded (Ex. 2).  *State Contracting*, 346 F.3d at 1068; *In re Schreiber*, 128 F.3d at 1478; *Enfish,* 2014 WL 12585801 at *5.  The sole question is whether Sugiyama and/or Goren anticipate the claims of the '654 patent. *Enfish*, 2014 WL 12585801 at *5.

Likewise, and for similar reasons, Mr. Mauro's discussion of the nine allegedly solved problems and whether the accused OnePlus product solves those problems is irrelevant to the question of infringement.  The issue of infringement is determined only by a comparison of the accused products to the patent claims.  *See, e.g., Not Dead Yet Mfg, Inc. v. Pride Sols, LLC*, 222 F. Supp. 3d 657, 662–67 (N.D. Ill. Nov. 28, 2016) (excluding expert testimony irrelevant to infringement).

Mr. Mauro's discussion of the various problems allegedly solved by the '654 patent are irrelevant to the issues on which he opines—infringement and validity–and they should therefore be excluded.  *Daubert*, 509 U.S. 589-92 (trial courts act as a gatekeeper to exclude expert testimony that is irrelevant).

### C.      Mr. Mauro Should Be Precluded From Opining on Claim Construction

Mr. Mauro on several occasions improperly narrows claim terms to draw distinctions

FILED UNDER SEAL

between the prior art and claims.  For example, claim 1 recites "an interface . . . to detect *a touch region* corresponding to the touch input, and to identify an object that is overlapped by the touch input in the *touch region* as a first object."  Ex. 9 at 11:15 – 18.  In analyzing this claim element for purposes of validity, Mr. Mauro states "[t]he 'touch region' claimed in the '654 Patent is not fixed but rather is variable based on human interaction."  *See* Ex. 2, ¶ 111 (distinguishing claim 1 from Sugiyama), ¶ 172 (distinguishing claim 1 for Goren).  Claim 6 recites "wherein the second object is displayed in a *pop-up form*."  Mr. Mauro interprets the claim as requiring a GUI with "modern GUI behaviors or widgets including windowing, scrolling, scaling, overlapping content, pop-up menus, dialog boxes, drop down menus or other related GUI design features present in the modern mobile phone device and the '654 Patent under this claim."  *Id*. at ¶¶ 137, 180.  Claim 8 recites "wherein the second object comprises *information* associated with the first object."  Mr. Mauro defines "information" to mean:

> For information to be present there must be a transfer of knowledge from the object to the user of the system that results in the establishment of actual meaning on the part of the user. Knowledge is this context is used to represent an increase in "meaning" at the point of information transfer between the interface and the user.

*Id*. at ¶ 145.  Mr. Mauro's belated and improper claim constructions should be excluded for several reasons.  First, Mr. Mauro's claim constructions reflect an improper attempt to construe the terms one way for infringement and another way for validity.  For example, when comparing the accused product to claim 1, Mr. Mauro simply shows that an alleged "second object" is shown in an area that is not touched by him. Ex. 1, ¶¶ 116–117.  Yet, in his prior art analysis which shows a "second object" in an untouched area, Mr. Mauro for the first time introduces the concept of variability to distinguish from the prior art.   Ex. 2 at ¶¶ 113–14, 172.  Similarly, in his infringement analysis of claims 6 and 8, Mr. Mauro does no more than compare the accused products against the full breadth

FILED UNDER SEAL

of the plain and ordinary meaning of the claims terms. *See* Ex. 1 at ¶¶ 146–151, 156–162. Yet when considering the prior art, Mr. Mauro now imparts all types of narrowing requirements on what qualifies as pop-up form and information. Ex. 2, ¶¶ 135–37, 143–146, 178–80, 187–88. Mr. Mauro's approach is at least unreliable because "the claims must be interpreted and given the same meaning for purposes of both validity and infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc*., 239 F.3d 1343, 1351 (Fed. Cir. 2001). His nose of wax approach is improper and should be excluded. *Id*.; *SIPCO,* 2012 WL 5195942, *14 ("A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement.") (quoting *Amazon.com,* 239 F.3d at 1351).

Second, Pantech has waived its argument regarding narrow construction of the claim terms "region," "pop-up form," and "information" by not presenting them during claim construction. *See e.g., Lodsys v. Brother Int'l Corp.*, No. 2:11–cv–00090, 2013 WL 2949959, at *19–20 (E.D. Tex. June 14, 2013); *Music Choice*, 2019 WL 8110069, at *3; *Maxell,* 2020 WL 8269548, at *23. OnePlus completed fact and expert discovery based on a construction of plain and ordinary meaning for the claimed elements here at issue. There is no reason now for the Court to alter or revisit these claim construction issue based on Mr. Mauro's opinions.

Third, Mr. Mauro's claim construction should be excluded because "[t]he Court is the sole arbiter of claim construction disputes." *SB IP,* 2023 WL 6601415, *9 (citing *Ultravision Techs., LLC v. GoVision, LLC*, No. 2:18-CV-00100, 2021 WL 2144788, at *2 (E.D. Tex. May 26, 2021) and *Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1321 (Fed. Cir. 2009)). Experts may in some cases "opine as to the plain and ordinary meaning of the term as known within the art to a person of ordinary skill." *Id*. (citing *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-00744-JRG, 2017 WL 3704760, at *4 (E.D. Tex. Aug. 28, 2017)). However, "there is a

**FILED UNDER SEAL**

specific way that experts may opine as to that plain and ordinary meaning without venturing into

impermissible claim construction". For example, experts should not use "intrinsic evidence, such

as the surrounding claim language, specification, or prosecution history … to narrow the plain and

ordinary meaning of the claims." *VARTA Microbattery GmbH v. Audio Partnership, LLC*, 2023

WL 5192986, *3 (E.D. Tex. Aug. 11, 2023). "Expert testimony based on impermissible claim

construction is also properly excluded because it may confuse the jury." *Id*.

Mr. Mauro's analysis here crosses the line of opining on plain and ordinary meaning and

instead offers an improper claim construction reserved for the Court and, therefore, should be

excluded. *SB IP*, 2023 WL 6601415 at *9 (excluding various testimony of expert that "venture

beyond permissible opinions regarding the plain and ordinary meaning of their respective terms")

For "pop-up form" Mr. Mauro uses a complex description of requirements for a GUI when the

term GUI is not even used in the patents in suit nor does the specification even hint that a pop up

may have the characteristics in his definition let alone require those features. For "information,"

Mr. Mauro identifies three different definitions from a 1991 publication of the American Society

of Information Science, which has nothing to do with smartphones or touch sensors. He then

inexplicably choses only one of those as applying to the '654 patent. Mr. Mauro blatantly ignores

the plain and ordinary meaning of the term "information" as used in, for example, prior art relating

to touch screen and smart phone technology such as Goren, which uses the term "information"

more broadly to mean many different types of data. See, e.g., Ex. 10 at [0024], [0039]–[0040].

> **D.      Mr. Mauro Should Be Precluded From Testifying on Issues of Direct
> Infringement, Inducement and Secondary Considerations.**

Mr. Mauro's initial expert report on the issue of infringement includes a section a direct

infringement and inducement. See Ex. 1 at ¶¶ 176–177. Each paragraph includes the qualification

"I am informed by counsel that Partech contends, and expects the evidence to show . . ." No

independent analysis of any evidence is provided, but Mr. Mauro nonetheless offers opinions that OnePlus sells and/or imports accused products in the United Sates and that OnePlus "has done so with knowledge of the patent and knowledge that its actions would result in infringement." Because Mr. Mauro provides no independent analysis of any evidence to reach his conclusions, his opinions and testimony they should be excluded. *See Greger v. C.R. Bard, Inc*., No. 4:19-CV-675, 2021 WL 3855474, at *3 (E.D. Tex., Aug. 30, 2021) (an expert cannot "simply repeat the opinions of others as his own when he has done nothing to verify the accuracy of the opinions"); *United Servs*, 2019 WL 6896674, at *3 (striking testimony where expert simply presented purported evidence without expert analysis that "help the trier of fact understand the evidence.")

Finally, Mr. Mauro's purported opinions on "secondary considerations of non-obviousness" as found in paragraphs 210–212 of his rebuttal report are wholly irrelevant because it is anticipation—not obviousness—that is issue for the '654 patent.  Ex. 2.  These opinions should, therefore, be excluded.  *Daubert*, 509 U.S. 589-92 (trial courts act as a gatekeeper to exclude expert testimony that is irrelevant).

## IV.    CONCLUSION

For the above reasons, the Court should exclude Mr. Mauro's opinions in their entirety.  In the alternative, the Court should strike and exclude Mr. Mauro's opinions in paragraphs 50–77 of his initial report on infringement and paragraphs 59–86, 99–108, 113–114, 136–137, 144–146, 164, 171–172, 179–180, 187–188, and 210–212 in his rebuttal report on validity.

**FILED UNDER SEAL**

Date:  November 21, 2023

Respectfully Submitted,

*/s/ G. Blake Thompson*

**G. Blake Thompson**
State Bar No. 24042033
Blake@TheMannFirm.com
**J. Mark Mann**
State Bar No. 12926150
Mark@TheMannFirm.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone (903) 657-8540
Facsimile  (903) 657-6003

LEYDIG, VOIT & MAYER, LTD.
David M. Airan (lead counsel)
Wesley O. Mueller
Robert T. Wittmann
Paul J. Filbin
Leonard Z. Hua
Christopher J. Gass
John K. Winn
Nicole Kopinski
Pei Chen
Two Prudential Plaza
180 N. Stetson Ave., Suite 4900
Chicago, IL 60601
(312) 616-5600
dairan@leydig.com
wmueller@leydig.com
bwittmann@leydig.com
pfilbin@leydig.com
lhua@leydig.com
cgass@leydig.com
jwinn@leydig.com
nkopinski@leydig.com
rchen@leydig.com

***Attorneys for Defendant***
***OnePlus Technologies***
***(Shenzhen) Co. Ltd.***

15

**FILED UNDER SEAL**

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant

to the Protective Order entered in this case.

_/s/ G. Blake Thompson_
**G. Blake Thompson**


## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance

with Local Rule CV-5(a). Plaintiff's counsel of record were served with a true and correct copy of the

foregoing document by electronic mail on November 21, 2023.

_/s/ G. Blake Thompson_
**G. Blake Thompson**

16