**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| PANTECH CORPORATION and PANTECH WIRELESS, LLC, | |
| Plaintiffs, | C.A. No. 5:22-cv-00069-RWS-JBB |
| v. | |
| ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., | **JURY TRIAL DEMANDED** |
| Defendant. | **PUBLIC VERSION** |

**DEFENDANT'S MOTION FOR JUDGMENT OF INVALIDITY AND**
**NONINFRINGEMENT OF U.S. PATENT NO. 9,063,654**

i

## <u>TABLE OF CONTENTS</u>

I.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT (L.R. CV-56(A)(1)) ........... 1

II.   STATEMENT OF THE UNDISPUTED MATERIAL FACTS (L.R. CV-56(A)(2)) ............... 1

III.  ARGUMENT ................................................................................................................. 8

    A.    The Asserted '654 Patent Claims Are Patent Ineligible ................................. 8

        1.    *Alice* Step One ................................................................................... 9

        2.    *Alice* Step Two ................................................................................. 12

        3.    Dependent Claims 6, 8 and 10 ......................................................... 14

    B.    OnePlus Does Not Infringe the Asserted '654 Patent Claims ...................... 14

        1.    A display inactivity sleep timer is not a "reference period of time for displaying the second object" ............................................................................. 15

IV.   CONCLUSION ............................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ................................................................................... 8, 13, 14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................ 8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .......................................................................................... 14

*Encyclopaedia Brittanica, Inc. v. Dickstein Shapiro LLP*,
    128 F. Supp. 3d 103 (D.D.C. 2015) ................................................................. 12

*Exigent Tech., Inc. v. Atrana Solutions, Inc.*,
    442 F.3d 1301 (Fed. Cir. 2006) ........................................................................ 14

*First-Class Monitoring, LLC v. United Parcel Serv. Of Am., Inc.*,
    389 F. Supp. 3d 456 (E.D. Tex. 2019) ............................................................. 12

*GREE, Inc. v. Supercell Oy*,
    855 F. App'x 740 (Fed. Cir. 2021) ........................................................ 11, 13, 14

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    839 F. App'x 534 (Fed. Cir. 2021) ................................................................... 13

*In re Bd. of Trustees of Leland Stanford Junior Univ.*,
    991 F.3d 1245 (Fed. Cir. 2021) ........................................................................ 12

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ............................................................................ 8

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) .................................................................. 11, 13

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
    50 F.4th 1371 (Fed. Cir. 2022) ........................................................................ 12

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
    566 U.S. 66 (2012) ........................................................................................... 11

*PC Connector Sols. LLC v. SmartDisk Corp.*,
    406 F.3d 1359 (Fed. Cir. 2005) ........................................................................ 14

*TQP Development, LLC v. Intuit Inc.*,
    No. 2:12–CV–180–WCB, 2014 WL 2810016 (E.D. Tex. June 20, 2014) ....... 14

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1084 (Fed. Cir. 2019) ................................................................ 9, 12, 14

*Uniloc USA, Inc. v. Amazon.com, Inc.*,
    243 F. Supp. 3d 797 (E.D. Tex. 2017 .............................................................. 8, 9

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................ 8

Local Rule CV-56 ..................................................................................................................... 1

## EXHIBIT LIST

| Exhibits | Documents |
|---|---|
| 1 | Plaintiff's Final Election of Asserted Claims (dated August 28, 2023) |
| 2 | Excerpts from U.S. Patent No. 9,063,654 (Dkt. No. 1-8) |
| 3 | Excerpts from the Claim Construction Memorandum and Order (Dkt. No. 51) |
| 4 | Excerpts from the Initial Expert Report of Charles Mauro CHFP Concerning OnePlus's Infringement Related to U.S. Patent No. 9,063,654 |
| 5 | Excerpts from Appendix 9: Preliminary Infringement Contentions of U.S. Patent No. 9,063,654 |
| 6 | Excerpts from the Rebuttal Expert Report of Omid Kia, Ph.D. Regarding Noninfringement of U.S. Patent Numbers:  8,893,052 and 9,063,654 |
| 7 | Excerpts from the Expert Report of Martin Walker Regarding Certain Source Code Functionality |
| 8 | Appendix E – Example 1 – Video B from Initial Expert Report of Charles Mauro CHFP Concerning OnePlus's Infringement Related to U.S. Patent No. 9,063,654 |
| 9 | Appendix G – Example 2 – Video D from Initial Expert Report of Charles Mauro CHFP Concerning OnePlus's Infringement Related to U.S. Patent No. 9,063,654 |
| 10 | Appendix I – Example 3 – Video F from Initial Expert Report of Charles Mauro CHFP Concerning OnePlus's Infringement Related to U.S. Patent No. 9,063,654 |
| 11 | Excerpt from the Prosecution History of U.S. Patent No. 9,063,654 |
| 12 | Excerpts from Expert Report of Omid Kia, PH.D. Regarding U.S. Patent Nos. 8,893,052 and 9,063,654 |

Defendant OnePlus Technology (Shenzhen) Co., Ltd. (hereinafter "OnePlus" or "Defendant") hereby moves for summary judgment of invalidity and non-infringement of all asserted claims of U.S. Patent Nos. 9,063,654 (the "'654 Patent") (claims 1, 6, 8, and 10), one of the five patents being asserted in this action by Plaintiffs Pantech Corporation and Pantech Wireless, LLC (hereinafter "Pantech" or "Plaintiffs")[1]. In summary, (1) the claims of the '654 Patent are invalid as not being directed to patentable subject matter; and (2) the asserted claims of the '654 patent are not infringed because the accused products lack a control unit that "removes the display of the second object if the second object is not selected within a reference period of time," as required by the asserted claims. There are no material factual dispute regarding the invalidity and non-infringement issues related to the '654 Patent, and OnePlus should be granted summary judgment.

## I.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT (L.R. CV-56(a)(1))

1.     Whether summary judgement of invalidity of all asserted claims of the '654 Patent should be granted because the claims are directed to patent ineligible subject matter.

2.     Whether summary judgment of no infringement of all asserted claims of the '654 Patent should be granted because the accused products do not have a control unit that "removes the display of the second object if the second object is not selected within a reference period of time," as required by the asserted claims.

## II.     STATEMENT OF THE UNDISPUTED MATERIAL FACTS (L.R. CV-56(a)(2))

1.     Pantech asserts that OnePlus infringes claims 1, 6, 8, and 10 of the '654 Patent.  Ex. 1 at p. 1.

2.     The only asserted independent claim of the '654 Patent is claim 1.  Ex. 2 at col. 11.

3.     Claim 1 of the '654 Patent recites (emphasis added):

A terminal apparatus, comprising:

---

[1] On November 20, 2023, the Parties conducted a meet and confer during which it was agreed that a hearing is requested.

an interface to detect a touch input, to detect a touch region corresponding to the touch input, and to identify an object that is overlapped by the touch input in the touch region as a first object;

a processing unit to generate a second object based on the first object, and to display the second object in an untouched region; and

a control unit to execute an operation corresponding to the second object if the second object is selected,

**wherein the control unit removes the display of the second object if the second object is not selected within a reference period of time**.

*Id.* at claim 1.

4.    Claim 1 of the '654 Patent requires a control unit to remove the display of a second object if the second object is not selected within a reference period of time.

5.    The USPTO found all limitations of claim 1 and all limitations of the dependent claims, except for the emphasized limitation above, in the prior art as shown in an Office Action dated October 22, 2014, at pp. 3-8.  Ex. 11 at pp. 3-8.

6.    OnePlus's expert Dr. Kia shows the above emphasized limitation is also in the prior art.  Ex. 12 at ¶¶ 351-356 and 392-397.

**The Accused Products**

7.    Pantech contends that functionality contained in the OnePlus 10T 5G device is representative of the devices accused of infringement.  Ex. 4 (Opening Expert Report of Mr. Mauro) at ¶ 81.

8.    Pantech contends that an "Auto screen off" feature of the accused devices satisfies the "reference period of time" from claim 1 of the '654 Patent.  Ex. 5 (Appendix 9: Preliminary Infringement Contentions of U.S. Patent No. 9,063,654) at pp. 39-46.  Pantech also contends that the "Auto screen off" feature of the accused devices is a "display sleep timer."  *Id.* at pp. 40-41.



*Id*. at p. 39.

9.    Pantech relies on three examples of accused product functionality for showing the claimed "second object."  That functionality includes a notes application shortcut screen (image 1a below), a search settings shortcut context menu (image 2a below), and a keyboard (image 3a below). *Id.* at pp. 39-46.



(1a)                              (2a)                              (3a)

In the above three images, the "second objects" (i.e., notes application shortcut screen, search settings context menu, and keyboard) are removed from the display after expiration of the "Auto screen off" timer for the display to enter a sleep mode. *Id.*

10.      In his analysis of infringement of claim 1 of the '654 Patent, Pantech's technical expert, Mr. Mauro, relies on the same items in the accused devices in Pantech's infringement contentions.  Ex. 4 (Opening Expert Report of Mr. Mauro) at ¶¶ 133-137.  Mr. Mauro opines that the "Auto screen off" feature, which he also refers to as a "display sleep timer," satisfies the "reference period of time" limitation of claim 1 of the '654 Patent.  *Id.*

4



*Id.* at p. 60.

11.    Mr. Mauro opines that the "second objects" (i.e., notes application shortcut screen, search settings context menu, and keyboard) are removed from the display after expiration of the "Auto screen off" timer for the display to enter a sleep mode. *Id.* at ¶¶ 133-137; Exhibits 8, 9, and 10. The screen shots below show images of the testing performed by Mr. Mauro for the three alleged "second objects." For each alleged "second object," the image on the left shows Mr. Mauro's testing of the accused device displaying the second object before the display inactivity sleep timer expires, and the image on the right shows the state of the display after the accused device is woke from sleep for each of the three alleged second objects. Exhibits 8, 9, and 10 are videos showing this testing.

**Notes Application as Second Object (Ex. 8)**



**Search Settings Shortcut as Second Object (Ex. 9)**



**Keyboard as Second Object (Ex. 10)**



*Id*.

12.    Mr. Mauro further opines that certain items in the accused products that are not removed from the display after expiration of the "Auto screen off" timer for the display to enter a sleep mode. Ex. 4 at ¶¶ 138-140. These items include a Phone application context menu (image 1b below) and a long press of a photo in a Photo application (image 2b below). *Id*.



(1b)                    (2b)

In the above images 1b and 2b, the "second objects" (i.e., Phone application context menu and the long press of the photo in the Photo application shown as images with a blue checkmark in the bottom right corner of the photo) are not removed from the display after expiration of the "Auto screen off" timer for the display to enter a sleep mode. *Id*.

13.    OnePlus's expert Dr. Kia opines that the "Auto screen off" is a display sleep timer "set to put the device into a sleep mode for power savings." Ex. 6 (Rebuttal Expert Report of Dr. Kia) at ¶ 303. Dr. Kia further opines that "timers such as the 'Auto screen off' are set to trigger a device to enter a power savings mode by typically turning off unneeded functionalities of the device, such as a

display, cache buffers, or certain executing processes." *Id*. In this power savings mode, the device is placed in a specific power savings state, where certain types of data is discarded based on whether retention of that data is needed upon device wake up. *Id*.

14. Pantech provided a supplemental expert report from a second technical expert, Dr. Walker. Dr. Walker opines:

> As part of certain battery-saving features, the Android OS can initiate a lock screen and keyguard function after a period of inactivity. A user is able to select the amount of time that the device will wait for input before entering the lock screen. As one example, the user can configure their device to enter the lock screen after a timeout period of 15 seconds. The PowerMangerService3 will switch the device from an active state to the lock screen and switch the focus to keyguard. As an example, the OnePlus 10T 5G allows a user to select 15 seconds for "Auto screen off."

Ex. 7 (Supplemental Expert Report of Dr. Walker) at p. 9, ¶ 23. Dr. Walker further opines that when a "shortcut menu is presented in response to a long-press but no further activity is detected for a predetermined time, the device will activate a lock screen." *Id*. at p. 12, ¶ 26.

## III.    ARGUMENT

Summary judgment should be granted if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

### A.    The Asserted '654 Patent Claims Are Patent Ineligible

Courts apply a two-step test to decide whether a claim states patent eligible subject matter under 35 U.S.C. § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). At step one, a court "asks whether the focus of the claims is on a specific asserted improvement in computer capabilities or, instead, on an 'abstract idea' for which computers are merely invoked as a tool." *Uniloc USA, Inc. v. Amazon.com, Inc.*, 243 F. Supp. 3d 797, 803 (E.D. Tex. 2017) (cleaned-up, citations omitted). Methods of organizing human activity are abstract under step one. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016).

8

At step two, the court "determines whether the claims contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Uniloc*, 243 F. Supp. 3d at 803 (internal citation omitted). Step two excludes the abstract idea, "no matter how groundbreaking the advance." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) (internal citation omitted).

### 1.    *Alice* Step One

The Court indicated in its Claim Construction Order that the '654 patent seeks to address a specific problem of multi-object touch arising in the context of touchscreens:

> The '654 Patent relates "to a smart touch technology to support a display of an overlapped object." '654 Patent at 1:15–17. Generally, one of many target objects on a display may be selected by a touch input on the user interface (UI) of the device. *Id.* at 1:19–23. But if the objects are close together, this may cause inaccurate selection and thus the execution of the wrong object. *Id.* at 1:24–30.
>
> In what the '654 Patent calls "smart touch operation," the claimed method detects a "touch region" on the display and then identifies objects within that touch region by a reference percent. For example, if Objects 1–4 are 55%, 21%, 9%, and 15%, respectively, within the touch region, and the reference percentage is 15% or lower, Objects 1, 2, and 4 are a "first object." See id. at 3:26–37. The method then generates and displays, outside of the touch region, a number of "second objects" based on the "first objects." For example, in Figure 4, which is a digital keyboard, the "first objects" are letters and the "second objects" are the larger and easier-to-select versions of the first objects. *Id.* at Fig. 4; id. at 7:6–48. In Figure 5, which shows a subway route map, the "first objects" are representations of subway stations and the "second objects" are more detailed information about the stations in the touch region. *Id.* at Fig. 5; *id.* at 7:49–8:10. Similarly, Figure 6 shows a webpage or document where the "first objects" are portions of words and the "second objects" are the words in their entirety. *Id.* at Fig. 6; id. at 8:11–45.

Ex. 3 (Claim Construction Order) at 49.

The asserted claims, however, are not so limited. For example, Pantech contends that the asserted claims cover a single-object touch and require only the display of a second display object in response to a touch input on a first display object. This is shown in the sequence below by Mr. Mauro:



(*See, e.g.*, Ex. 4, Mauro Opening Report at ¶¶ 115-117 (alleging infringement based on opening a folder, displaying a context menu, *or* displaying a keyboard in response to touch input).)  The asserted claims are not directed to a specific solution to the multi-object touch problem as contemplated in the '654 patent specification. Rather, they cover the much broader concept of temporarily displaying a second object based on a touch input on a first object, so long as the second object is displayed in an untouched region (*see* Ex. 2, ('654 Patent) at claim 1, Fig. 5, cols. 7:49-8:10).  Pantech thus has asserted the claims to cover the basic smartphone operations of opening a folder, context menu, or keyboard, followed by shutting off the display in response to an idle timer.  S*ee* Ex. 4, Mauro Opening Report at ¶¶ 93-143.  They are directed to the abstract idea of manipulation of data on a touchscreen.

In particular, independent claim 1 starts with the detection of a touch input and a touch region corresponding to the touch input and identifying an object overlapped by the touch region, followed by generating and displaying a second object in an untouched region.  An operation corresponding to the second object is then executed if the second object is selected, or if the second object is not selected within a reference period of time, the display of the second object is removed.

Taken as a whole, the subject matter recited in these claims is abstract. The patentee did not invent touchscreens or the concept of selecting and displaying objects via touch input. *See* Ex. 2, '654 Patent, at col. 1:19-23.  Rather, the purported invention of the asserted claims was to display, using conventional touchscreen technology, a second object in an untouched region in response to a touch

input on a first displayed object.  In view of the Court's interpretation of the claimed "processing

unit" and the "control unit" as being general-purpose processors (*see* Ex. 3, Claim Construction

Order, at pp. 50-52), the invention is directed to the implementation of an abstract idea on a

conventional device – the manipulation of data on a touchscreen -- and no improvements in

touchscreen technology were necessary to implement the purported invention.  *See GREE, Inc. v.*

*Supercell Oy*, 855 F. App'x 740, 742 (Fed. Cir. 2021) ("The touch interface claimed is merely the

mechanism by which the focus of the invention… is executed. This is made clear by the patent's

wholly generic claiming and description of the touch interface, and the claiming of wholly generic

touch-screen functionality…. The inclusion of such 'generalized steps to be performed on a computer

using conventional computer activity' does not render the claims directed to improvements in

computer technology.") (citation omitted).

　　In *Interval Licensing LLC v. AOL, Inc.*, the claims at issue involved the generation and display

of additional content through the user interface of a conventional computing device, and the purported

inventive concept was to display the additional content without disrupting an ongoing provision of

other information.  *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344-46 (Fed. Cir. 2018).  In

analyzing whether such claims constituted patent-eligible subject matter, the Federal Circuit held that

"the act of providing someone an additional set of information without disrupting the ongoing

provision of an initial set of information is an abstract idea" (*id.* at 1344) and further concluded that

the recited claims did not convert this abstract idea into a particular conception of how to carry out

that concept because they "'[s]imply append[ed] conventional steps, specified at a high level of

generality, to' [the abstract idea]" (*id.* at 1346 (quoting *Mayo Collaborative Servs. v. Prometheus*

*Lab'ys, Inc.*, 566 U.S. 66, 82 (2012)). That is precisely the case here.  The '654 patent claims are

directed to the abstract idea of temporarily displaying a second object separate from the display of a

first object, and nothing else in the claims provides anything beyond a conventional touch or display

operation specified at a high level of generality. *See also Encyclopaedia Brittanica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 108, 111-116 (D.D.C. 2015) (invalidating similar claims under 35 U.S.C. § 101 which recited "displaying text information associated with a first one of the plurality of place indicators in response to input from a user indicating selection of the first place indicator" in the context of electronically using a map via a user interface); *Trading Techs.*, 921 F.3d at 1089-90 (holding that improvements to the "intuitiveness" or "efficiency" of a user interface do not constitute an improvement in computer functionality).

Like the '654 patent claims, in *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, the claims at issue were "directed to limiting and coordinating the display of information based on a user selection."  50 F.4th 1371, 1380 (Fed. Cir. 2022).  Similarly, the asserted claims of the '654 patent are directed to limiting and coordinating the display of information based on user activity. The Federal Circuit held "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Id. at* 1380.

Accordingly, the asserted claims of the '654 patent are directed to an abstract idea under *Alice* step one.

### 2.    *Alice* Step Two

"Step two is like a lifeline: it can rescue and save a claim that has been deemed, at step one, directed to non-statutory subject matter." *In re Bd. of Trustees of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1251-52 (Fed. Cir. 2021).  However, even if the patent specification included some transformative advance, "it is the claims, not the specification, that must contain the inventive concept necessary to render the claims patentable." *First-Class Monitoring, LLC v. United Parcel Serv. Of Am., Inc.*, 389 F. Supp. 3d 456, 468 (E.D. Tex. 2019).  In this case, there is nothing transformative whatsoever about the claims.

Aside from the abstract idea of manipulating data on a touchscreen, namely, temporarily

displaying a second object in an untouched region based on a touch input on a first object, the asserted '654 patent claims merely recite receiving the touch input on the first object, executing an operation in the event of selection of the second object, and removing the display of the second object after a period of time in the absence of selection of the second object.  With the exception of removing the display of the second object after a period of time, the U.S. Patent and Trademark Office found that all remaining features of the claims are conventional and known.  *See* SOF 5. However, mere removal of a displayed object after expiration of a period of time is not an improvement, much less a transformative improvement. Again it is conventional and known.  *See, e.g.,* SOF 6.  Accordingly, each of the additional features of the claims of the '654 patent are basic touch and display operations performable by conventional touchscreen devices and are thus insufficient to transform the abstract idea into patent-eligible subject matter.  *See GREE*, 855 F. App'x at 742 ("The touch interface claimed is merely the mechanism by which the focus of the invention… is executed"); *Interval Licensing*, 896 F.3d at 1347 ("Offering a user the ability to select information to be displayed is one of the 'most basic functions of a computer.'") (*quoting Alice*, 573 U.S. at 225).

Additionally, "[i]t is well-settled that placing an abstract idea in the context of a computer does not 'improve' the computer or convert the idea into a patent-eligible application of that idea." *Id.* at 1346 (*quoting Alice*, 573 U.S. at 223).  The recitation of generic computer components ("an interface," "a processing unit," and "a control unit"), which are functionally claimed and functionally described at a high level in the specification, likewise do not confer eligibility to the asserted claims of the '654 patent.  *See iLife Techs., Inc. v. Nintendo of Am., Inc.,* 839 F. App'x 534, 538 (Fed. Cir. 2021); *Interval Licensing*, 896 F.3d at 1346-47.

Accordingly, the asserted claims of the '654 patent cannot be saved by *Alice* step two and are patent-ineligible under 35 U.S.C. § 101.

### 3.    Dependent Claims 6, 8 and 10

To the extent that Pantech contends that independent claim 1 of the '654 patent is not representative, asserted dependent claims 6, 8 and 10 merely recite that "the second object is displayed in a pop-up form," "the second object comprises information associated with the first object," and "the control unit controls the interface to restrict a selection of the first object while the second object is selected," respectively.  These are trivial details regarding the user interface recited at a high-level of generality, and none of these claims contain additional limitations that pass muster under *Alice* steps one or two.  *See, e.g.*, *Trading Techs.*, 921 F.3d at 1089-90, 1094; *GREE*, 855 F. App'x at 742-44.  Moreover, the patent Examiner confirmed all of these features were well known and conventional.  *See* SOF 5.

### B.    OnePlus Does Not Infringe the Asserted '654 Patent Claims

Summary judgment of non-infringement is appropriate when, in light of the undisputed material facts, "no reasonable jury could find that every limitation recited in a properly construed claim [is] . . . found in the accused device either literally or under the doctrine of equivalents."  *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005).

Because Pantech bears the burden of proof on the issue of infringement, OnePlus need not produce evidence showing the absence of a genuine dispute as to a material fact.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Instead, OnePlus's burden is discharged by pointing out there is an absence of evidence to support Pantech's case. *See, e.g.*, *id.*; *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1307–09 (Fed. Cir. 2006) (summary judgment of non-infringement appropriate based on identification of ways in which accused product did not satisfy claim limitations); *TQP Development, LLC v. Intuit Inc.*, No. 2:12–CV–180–WCB, 2014 WL 2810016, *10–11 (E.D. Tex. June 20, 2014) (Bryson, J., sitting by designation) (granting summary judgment of noninfringement where the defendants pointed out the absence of evidence to support the plaintiff's case).

14

### 1.    A display inactivity sleep timer is not a "reference period of time for displaying the second object"

Independent claim 1 of the '654 Patent requires "wherein the control unit removes the display of the second object if the second object is not selected within a reference period of time."  SOF 3. The Court construed this phrase to mean "wherein the control unit removes the display of the second object if the second object is not selected within a reference period of time for displaying the second object." Ex. 3 (Claim Construction Order) at p. 53.  The Court stated, "[t]he inclusion of 'for displaying the second object' sufficiently addresses the issue by tying the limitation to not just any time, but the time the second object is displayed." *Id*.

Pantech and its technical expert rely on a display inactivity sleep timer as the claimed "reference period of time for displaying the second object."  SOF 7-12.  Specifically, Pantech's expert, Mr. Mauro, relies on an "Auto screen off" display inactivity sleep timer as the "reference period of time for displaying the second object."  SOF 9-10; Ex. 4, Mauro Opening Report, at ¶¶ 133-137.  Mr. Mauro then performs testing under three conditions showing structure Pantech alleges displays the claimed "second object."  SOF 11-12.  The structure for the three tested conditions are a "Notes application icon," a "search settings shortcut," and a keyboard.  *Id*.  In each condition, Mr. Mauro shows the device display the alleged second object, the screen then times out as a result of the expiration of the "Auto screen off" display inactivity sleep timer, and upon waking the device, the second object is no longer displayed.  *Id*.

The following screen shots below show images of the testing performed by Mr. Mauro for the three identified "second objects."  For each "second object," the testing shows the state of the display of the accused device showing the second object before the display inactivity sleep timer expires and then shows the state of the display after the accused device is woke from sleep for each of the three alleged second objects mentioned above.  SOF 11.  Exhibits 8, 9, and 10 of this motion are video files showing this testing.  SOF 11.

**Notes Application as Second Object (Ex. 8)**



(before)                                          (after)

The Notes application is outlined in yellow in the image on the above left.  SOF 11.  The above left screen shot is from Mr. Mauro's testing before the expiration of the display screen timer, where the display shows the Notes icon.  SOF 11.  From this screen, Mr. Mauro's testing allows the display inactivity sleep timer to expire.  SOF 11.  The right screen shot shows the state of the display after being woke from sleep.  SOF 11.  As shown, the display no longer displays the Notes icon from above.  SOF 11.

**Search Settings Shortcut as Second Object (Ex. 9)**



(before)                                          (after)

The above left screen shot is from Mr. Mauro's testing before the expiration of the display screen timer and shows the search settings shortcut menu.  SOF 11.  Mr. Mauro's testing allows the

16

display inactivity sleep timer to expire.  SOF 11.  The above right screen shot shows the state of the display after being woke from sleep.  SOF 11.  As shown, the display no longer displays the search settings shortcut menu from above.  SOF 11.

### Keyboard as Second Object (Ex. 10)



(before)                    (after)

The above left screen shot is from Mr. Mauro's testing before the expiration of the display screen timer showing the keyboard.  SOF 11.  From this screen, Mr. Mauro's testing allows the display inactivity sleep timer to expire.  SOF 11.  The above right screen shot shows the state of the display after being woke from sleep.  SOF 11.  As shown, the display no longer displays the keyboard from above.  SOF 11.

Mr. Mauro further shows states where other alleged "second objects" are not removed after the same cycle of letting the display inactivity sleep timer expire and then waking the phone after expiration of the display inactivity sleep timer.  SOF 12.  The structure shown to not be removed after expiration of the "Auto screen off" timer includes a phone application context menu and a long press of a photo in a photo application.  SOF 12; Ex. 4 at ¶¶ 138-140.

Based on the above testing, Mr. Mauro concludes that the display inactivity sleep timer (i.e., the "Auto screen off" feature) is a "reference period of time for displaying the second object."  *Id*.

Mr. Mauro's testing confuses correlation with causation.  Nowhere in Mr. Mauro's expert report nor in Pantech's infringement contentions is it shown that the display inactivity sleep timer is a "reference period of time for displaying the second object," as required by independent claim 1 in light of the Court's construction.  As explained by OnePlus's expert Dr. Kia, the display inactivity sleep timer is for power savings and triggers the device to turn off unneeded functionalities, such as the display, cache buffers, or execution of certain processes.  SOF 13; Ex. 6, Kia Rebuttal Report, at ¶ 303.  Dr. Kia further opines that "[i]n this power savings mode, the device is placed in a specific power savings state, where certain types of data is discarded based on whether retention of that data is needed upon device wake up."  *Id*.  Pantech's own expert Dr. Walker, in his supplemental expert report, confirms that display inactivity sleep timer is a battery-saving feature that initiates a lock-screen ***after a period of inactivity***.  SOF 14; Ex. 7, Walker Supplemental Report, at p. 9.

All Mr. Mauro's testing has shown is that certain objects are removed as a result of the data regarding the alleged second object being cleared because it is unnecessary to be maintained after returning from the power savings state and other alleged second objects not being cleared because the associated data is needed after returning from the power savings state.  Such testing is insufficient to show infringement.  Critically, the removal of the alleged "second object" has nothing to do with whether the second object is selected and nothing to do with how long the second object is displayed.  Rather, as admitted by Pantech's own expert Dr. Walker, clearing of the phone screen, including the alleged second object, occurs as a result of inactivity untethered to the second object.  In other words, the display inactivity sleep timer is a timer that tracks inactivity with the phone in general in order to determine when to enter a power savings state.  Whether or not the structure alleged as a second object is even displayed is not tracked or considered by the display inactivity sleep timer.  Rather, the display inactivity sleep timer simply tracks inactivity of the accused device regardless of what is currently being displayed on the device, as shown by Pantech's own testing.  Therefore, the display

inactivity sleep timer is a power savings mechanism for the accused device in general and not a specific "reference period of time for displaying the second object," as required by the claims of the '654 Patent.

Neither Pantech nor Mr. Mauro allege infringement under the doctrine of equivalents. Indeed, in view of the prosecution history, equivalents is not available because the element here in question was added to overcome rejections in view of the prior art.

In view of the foregoing, Mr. Mauro's expert report and Pantech's infringement contentions fail to show any of the accused devices meet the claim 1 limitation of "wherein the control unit removes the display of the second object if the second object is not selected within a reference period of time." Based on these undisputed facts, there is no infringement of claim 1 of the '654 Patent, or any other asserted claims, which depend directly from claim 1.

## IV.    CONCLUSION

OnePlus requests that the Court allow summary judgment of (1) patent ineligibility of asserted claims 1, 6, 8, and 10 of the '654 Patent, and (2) no infringement of asserted claims 1, 6, 8, and 10 of the '654 Patent, either literally or under the doctrine of equivalents.

Date:  November 21, 2023                    Respectfully Submitted,

                                               */s/ G. Blake Thompson*

**G. Blake Thompson**
State Bar No. 24042033
Blake@TheMannFirm.com
**J. Mark Mann**
State Bar No. 12926150
Mark@TheMannFirm.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone (903) 657-8540
Facsimile  (903) 657-6003

LEYDIG, VOIT & MAYER, LTD.
David M. Airan (lead counsel)
Wesley O. Mueller
Robert T. Wittmann
Paul J. Filbin
Leonard Z. Hua
Christopher J. Gass
John K. Winn
Nicole Kopinski
Pei Chen
Two Prudential Plaza
180 N. Stetson Ave., Suite 4900
Chicago, IL 60601
(312) 616-5600
dairan@leydig.com
wmueller@leydig.com
bwittmann@leydig.com
pfilbin@leydig.com
lhua@leydig.com
cgass@leydig.com
jwinn@leydig.com
nkopinski@leydig.com
rchen@leydig.com

***Attorneys for Defendant***
***OnePlus Technologies***
***(Shenzhen) Co. Ltd.***

20

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ G. Blake Thompson*
**G. Blake Thompson**

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(h), counsel for Defendant, Christopher J. Gass, Nicole Kopinski, and Paul J. Filbin, met and conferred with counsel for Plaintiffs, James A. Fussell, III and Clark Bakewell, by teleconference on November 20, 2023, and counsel for Plaintiffs indicated that Plaintiffs are opposed to the relief sought by this Motion, such that the parties are at an impasse.

*/s/ G. Blake Thompson*
**G. Blake Thompson**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Plaintiff's counsel of record were served with a true and correct copy of the foregoing document by electronic mail on November 21, 2023.

*/s/ G. Blake Thompson*
**G. Blake Thompson**