**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| PANTECH CORPORATION and PANTECH WIRELESS, LLC<br><br>Plaintiffs,<br><br>v.<br><br>ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD.,<br><br>Defendant. | Case No. 5:22-cv-00069-RWS<br><br>**JURY TRIAL DEMANDED**<br><br>████████████ |

**FINAL JURY INSTRUCTIONS**

1.      **Introduction**

    1.1      **Introduction to Jury Instructions**

Ladies and Gentlemen of the Jury: You have now heard the evidence in this case. I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am about to give you orally. You will have these instructions for your review when you retire to deliberate in a few minutes. Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so. My preference is that you listen carefully while I give them to you orally, understanding you'll have your own written copy to review when you get to the jury room.

    1.2      **Introduction to Jury Instructions**

It is your duty to follow the law as I give it to you. On the other hand, as I have said, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have

made in the course of the trial or may make in the course of these instructions as an indication that I have any opinion about the facts in this case.

You are about to hear closing arguments from the attorneys for both of the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

### 1.3 Verdict Form and Procedure

A verdict form has been prepared for you. You will take this form to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it, and sign it. Answer the questions as directed in the verdict form from the facts as you find them to be. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

2.      **Considering the Evidence**

2.1      **Credibility of Witness and Evidence**

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all of the witnesses, regardless of who may have called them, and the stipulations of the parties. You may also consider all the exhibits received and admitted into evidence, regardless of who may have introduced them.

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all of the evidence. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider a witness's manner and demeanor on the witness stand, any feelings or interest they may have in the case, any prejudice or bias about the case that the witness may have, and the consistency or inconsistency of their testimony, considered in light of the circumstances. Has the witness been contradicted by other evidence? Has he or she made statements at other times and places contrary to what he or she said on the witness stand? You must give the testimony of each witness the amount of credibility that you think it deserves.

You must also keep in mind, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth. You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

2.2      **Objections of Counsel**

As I have told you previously, the attorneys in this case are advocates for their competing clients, and they have a duty to object when they believe evidence is offered that should not be

admitted under the rules of this Court. When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer. If the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question as if the objection had not been made. By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

Now, at times during the trial it was necessary for the Court to talk with the lawyers outside of your hearing at the bench, or by calling a recess and talking to them while you were out of the courtroom. This happened because, often during a trial, something comes up that does not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence.

### 2.3 Direct and Circumstantial Evidence

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented.

### 2.4 Stipulated Facts

The parties have stipulated or agreed to some facts in this case. When the lawyers on both sides stipulate as to the existence of a fact, then you must, unless otherwise instructed, accept the

stipulation as evidence and regard that fact as proven. These facts, which have been read to you throughout the trial, are not in dispute between the parties.

### 2.5 Testimony by Deposition

Certain testimony in the case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition.

Before this trial began, the attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded their sworn testimony. Deposition testimony is entitled to the same consideration by you as testimony given by a witness in-person from the witness stand in open court. Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you in open court.

### 2.6 Reasonable Inferences from Evidence

Now, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. However, you should not base your decision on any evidence not presented by the parties during this case, including your own personal experience with any products that are at issue in the case.

**2.7  Sufficiency of Testimony**

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence, you believe that single witness.

**2.8  Expert Witnesses**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide whether to rely upon it or not.

**2.9  Demonstratives**

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aids." Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence. Demonstrative exhibits will not be available for you to view during your deliberations.

3.      **Burdens of Proof**

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on the Plaintiffs for some issues and on the Defendant for other issues. There are two burdens of proof that you apply in this case: "preponderance of the evidence" and "clear and convincing evidence."

The Plaintiffs in this case, Pantech Corporation and Pantech Wireless, LLC, which have been referred to as "Pantech" or "Plaintiffs," have the burden of proving patent infringement by a preponderance of the evidence. Pantech also has the burden of proving damages for any patent infringement by a preponderance of the evidence. A preponderance of the evidence means evidence that persuades you that a claim is more likely true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

The Defendant in this case, OnePlus Technology (Shenzhen) Co., Ltd., which you have heard referred to throughout the trial as OnePlus, has the burden of proving invalidity of Pantech's patent claims by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

These two burdens of proof are not to be confused with the burden of proof known as "beyond a reasonable doubt," which is the burden of proof applied in a criminal case, not in a civil case such as this. Beyond a reasonable doubt is a higher standard than both the preponderance of the evidence and clear and convincing evidence standards.

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of the witnesses, regardless of who called them, and all of the evidence—including all of the exhibits received into evidence during the course of the trial, regardless of who may have produced them.

**4.** **Summary of the Positions of the Parties**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions. The Plaintiffs in this case are Pantech Corporation and Pantech Wireless, LLC, or Pantech. The Defendant in this case is OnePlus Technology (Shenzhen) Co., Ltd., or OnePlus. The case involves five United States Patents, which are referred to as "Asserted Patents," and certain claims of those patents, which are referred to as "Asserted Claims." The Asserted Patents are U.S. Patent Number 10,869,247, which you have heard referred to as "the '247 Patent"; U.S. Patent Number 9,063,654, which you have heard referred to as "the '654 Patent"; U.S. Patent Number 8,893,052, which you have heard referred to as "the '052 Patent"; U.S. Patent Number 11,012,954, which you have heard referred to as "the '954 Patent"; and U.S. Patent Number 9,548,839, which you have heard referred to as "the '839 Patent."

Pantech contends that OnePlus is liable for induced infringement of the Asserted Claims because it induced direct infringing acts by one or more of ███████████████████ ████████████████████████████████████████ ████████████████████████████., which Pantech contends are and have been making, using, selling, offering for sell, and/or importing into the United States certain OnePlus products. Specifically, Pantech contends that OnePlus:

a.  Induces infringement of claim 1 of the '247 Patent;

b.  Induces infringement of claims 1, 6, and 10 of the '654 Patent;

c.  Induces infringement of claims 10 and 17 of the '052 Patent;

d.  Induces infringement of claims 6 and 9 of the '954 Patent;

e.  Induces infringement of claims 9 and 11 of the '839 Patent.

Pantech also contends that OnePlus's infringement has been willful.

Pantech is seeking damages for the alleged infringement of OnePlus.

Pantech also contends that OnePlus has failed to prove any of its invalidity defenses by clear and convincing evidence.

OnePlus contends that it does not induce infringement of any of the Asserted Claims of the Asserted Patents. OnePlus also contends that it has not willfully infringed any Asserted Claim. OnePlus contends that the '839 and '954 Patents cannot be asserted against OnePlus because Pantech's rights to do so have been exhausted. OnePlus also contends that the Asserted Claims of the Asserted Patents are invalid and/or unenforceable against OnePlus. OnePlus also contends Pantech is not entitled to damages for any infringement, but in the event that the jury finds infringement, any damages should not exceed a reasonably royalty, which in the case of the '247, '839, or '954 patents, should not exceed a fair, reasonable, and non-discriminatory ("FRAND") royalty rate.

Your job is to decide whether OnePlus has infringed the Asserted Claims, and whether any of the Asserted Claims are invalid. If you decide that any Asserted Claim has been infringed and is not invalid, you will then need to decide the amount of money damages to be awarded to Pantech to compensate it for the infringement.

You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

5. **Claims and Claim Construction**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I'll now give you more detailed instructions about the patent laws that relate to this case.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of the patent. The claims are important because it is the words of the claims that define what a patent covers.

The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims themselves that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims cover.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have already determined the meaning of the claims, and I have provided to you my definitions of certain claim terms You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

You should disregard any evidence presented at trial that contradicts or is inconsistent with the constructions and definitions that I have given you. For claim limitations that I have not construed—that is, limitations that I have not interpreted or defined—you are to use the plain and

ordinary meaning of the limitations as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent, at the time of the alleged invention. The meaning of the words of the patent claims must be the same when deciding both infringement and invalidity. You have been provided with copies of the Asserted Patents, which are inside your juror notebooks, and you may use them in your deliberations. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually.

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a product or method satisfies each of these requirements, then it is covered by the claim. There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product or method meets all of the requirements of a claim, the claim is said to "cover" that product or method, and that product or method is said to "fall" within the scope of that claim. In other words, a claim covers a product or method where each of the claim elements or limitations is present in that product or method. If a product or method is missing even one limitation or element of a claim, the product or method is not covered

by the claim. If the product or method is not covered by the claim, that product or method cannot infringe that claim.

The beginning portion, or preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an Accused Product includes all of the requirements of that claim, the claim is infringed. This is true even if the Accused Product contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also contains other structures, such as leaves that would go in the tabletop or wheels that would go on the ends of the legs.

This case involves two types of patent claims: independent claims and dependent claims. In this case, claim 1 of the '247 Patent; claim 1 of the '654 Patent; claim 10 of the '052 Patent; claim 6 of the '954 Patent; and claim 9 of the '839 Patent are independent claims. Claims 6 and 10 of the '654 Patent; claim 17 of the '052 Patent; claim 9 of the '954 Patent; and claim 11 of the '839 Patent are dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A "dependent claim" does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers or, stated alternatively, from which it depends. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the

dependent claim and any other claim to which it refers. A product that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

### 5.1 "Functional Claiming" Claims

Asserted claim 10 of the '052 Patent has limitations expressed using functional language. For example, this claim has the phrase "gesture identifying unit." Such functional language phrases have a special meaning in patent law. It is called a "means-plus-function" requirement. These limitations do not cover all of the structures that could perform the functions set forth in the claim. Instead, each such limitation covers a structure or a set of structures that performs that function and is identical to the structure(s) described in the patent for performing that function. The issue of whether the structure(s) are identical is a question of fact for you to decide.

For purposes of this case, I have identified for you the structures described in the '052 Patents that perform the function recited in claim 10. You should apply my definitions of the functions, and the structures described in the '052 Patent for performing those functions, as you would apply my definition of any other claim term.

## 6. Infringement

Any person or business entity who makes, uses, sells, offers to sell, or imports into the United States a product that is covered by at least one claim of a patent infringes the patent. A patent owner has the right to stop others from making, using, selling and offering for sale, and importing into the United States the invention covered by the patent claims during the life of the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the Asserted Claims, as I have construed each of them, to the Accused Products, and determine whether or not there is infringement. You should not compare the Accused Products with any specific examples set out in the patents or the prior art. However, if an Accused Product practices an industry standard, then comparing the claims to that industry standard is the same as comparing the claims to the Accused Product. Infringement can be proven by showing that an accused product practices an industry standard if the asserted claim is standard essential.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

I will now instruct you on the specific rules that you must follow to determine whether Pantech has proven that OnePlus has induced the infringement of the Asserted Claims by a preponderance of the evidence.

### 6.1 Direct Infringement

For Pantech to prove that OnePlus has induced the infringement of any Asserted Claim, it must prove that someone directly infringed that claim. I will now instruct you about the specific

rules that you must follow to determine whether Pantech has proven that someone directly infringed the Asserted Claims.

A patent is directly infringed by someone making, using, selling, offering for sale, or importing into the United States the invention covered by the patent claims during the life of the patent. A patent can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it did was infringing. A patent may also be directly infringed even though the accused direct infringer believed in good faith that it was not infringing.

To support a finding of literal infringement, Pantech must show that it is more likely than not that each and every limitation of the claim is literally present in the Accused Products. A claim requirement is literally present if it exists just as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by its plain and ordinary meaning to one of ordinary skill in the art.

In determining whether the Accused Products directly infringe a patent claim in this case, you must compare the Accused Products with each and every one of the requirements of that claim to determine whether the Accused Products contain each and every requirement recited in the claim. An Accused Product infringes a claim if it satisfies each of the claim requirements, even though it may also be capable of non-infringing modes of operation. The same element of an accused method or an Accused Product may satisfy more than one element of a patent claim.

Pantech contends that one or more of the following directly infringed the Asserted Patents by making, using, selling, offering for sale, or importing into the United States the inventions covered by the Asserted Patents during the lifetimes of these patents: ▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████████

████████████████████████████████ .

## 6.2    Induced Infringement

I will now instruct you on indirect infringement. In this case, Pantech alleges that OnePlus has actively induced one or more of ████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ to directly infringe the asserted claims literally. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

For Pantech to prove that OnePlus has induced the infringement of any Asserted Claim, it must prove that someone directly infringed that claim. OnePlus is liable for induced infringement if you find that Pantech has proven that it is more likely than not that:

1.  Some entity directly infringes an asserted claim.

2.  OnePlus took action during the relevant period that assisted or encouraged the infringing act by such entity; and

3.  OnePlus was either aware of the Asserted Patent or Patents and knew the acts, if taken by such entity, would constitute infringement of an Asserted Claim of the Asserted Patent or Patents, or was willfully blind to that infringement. Willful blindness is established if OnePlus believed there was a high probability that the acts, if taken, would constitute infringement of the asserted claims, but deliberately avoided confirming that belief.

Pantech and OnePlus disagree on certain of the dates when OnePlus first learned about the patents in this case. Pantech contends that OnePlus had knowledge of the '839 Patent at least as of January 21, 2021. Pantech contends that OnePlus had knowledge of the '247 Patent at least as of

July 9, 2021. The parties agree that OnePlus had knowledge of the '954, '654, and '052 Patents as of the filing of Pantech's complaint on June 3, 2022.

### 6.3    Willful Infringement

Pantech contends that OnePlus willfully infringed the Asserted Patents. If you have decided that OnePlus is liable for infringement of any Asserted Claim, you must address the additional issue of whether or not this infringement was willful.  You must base your decision on OnePlus's knowledge at the time of infringement. Willfulness requires you to determine, for each Asserted Patent you determine has been infringed, whether Pantech proved that it is more likely than not that OnePlus knew of the Asserted Patent and that the infringement of that Asserted Patent by OnePlus was intentional. You may not determine that the infringement was willful just because OnePlus was aware of an Asserted Patent and infringed it. Instead, you must also find that OnePlus deliberately infringed the Asserted Patent in question.[1]

To determine whether OnePlus acted willfully for any of the Asserted Patents, consider all facts and circumstances. These facts may include, but are not limited, to:

- a. Whether or not OnePlus acted consistently with the standards of behavior for its industry;

- b. Whether or not OnePlus intentionally copied a product of Pantech that is covered by the Asserted Patent in question;

- c. Whether or not OnePlus reasonably believed it did not infringe;

- d. Whether or not OnePlus made a good-faith effort to avoid infringing, for example, whether OnePlus attempted to design around the patent; and

- e. Whether or not OnePlus tried to cover up its infringement.

None of these factors is determinative, and this list of factors is not an exhaustive list of things you should consider. Your determination of willfulness should incorporate the totality of the

circumstances based on the evidence presented during this trial. If you decide that there was willful infringement, that decision should not affect any damages award you give in this case. I will provide instructions on damages later.

**6.4      Patent Exhaustion**

I will ultimately decide whether patent exhaustion has occurred. Nevertheless, you must answer (1) whether OnePlus proved by a preponderance of the evidence that licensed base stations sold in the United States substantially embody the '839 and/or '954 Patents, and (2) OnePlus proved by a preponderance of the evidence that any entity accused of infringement in this matter is an authorized acquirer of any such licensed base stations.

The licensed base stations substantially embody the '839 and/or '954 Patents if (1) the only reasonable and intended use of the licensed base stations is to practice the '839 and/or '954 Patents and (2) they include all the inventive aspects of the '839 and/or '954 Patents.

### 7. Invalidity

I will now instruct you on the rules you must follow in deciding whether or not OnePlus has proven that any asserted claims of the Asserted Patents are invalid.

#### 7.1 Invalidity – Burden of Proof

An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout this trial as the "PTO" or sometimes just the "Patent Office," acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents.

In order to overcome this presumption, OnePlus must establish by clear and convincing evidence that a claim is invalid. Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, this does not mean that any other claim is necessarily invalid.

Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity. In making your determination as to invalidity, you should consider each claim separately.

#### 7.2 Prior Art

Prior art is considered in determining whether asserted claims of the asserted patents are anticipated; i.e. not "new." Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

Defendant contends that the Asserted Claims of the Asserted Patents are invalid based on certain alleged prior art. Just because Defendant identified references to be prior art, however, does

not mean that they invalidate the Asserted Patents. You must follow my instructions to determine whether Defendant has proven that these references invalidate any of the Asserted Claims.

### 7.3 Anticipation

As I stated before, in order for someone to be entitled to a patent, the invention must actually be "new." OnePlus contends that the asserted claims of the '654 Patent and '052 Patent are invalid because the claimed inventions are anticipated. OnePlus must convince you of this by clear and convincing evidence, *i.e.*, that the evidence highly probably demonstrates that the claims are invalid.

Anticipation must be determined on a claim-by-claim basis. OnePlus must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied— such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

To prove that a dependent claim is anticipated by the prior art, OnePlus must prove that the claims from which it depends are anticipated as well. If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

### 7.4 Level of Ordinary Skill

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention, or the art. In deciding what the level of ordinary skill in the field of the invention is for each patent, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working

in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

## 8.     Damages

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that OnePlus infringed any valid claim of the asserted patents, you must then determine the amount of money damages to be awarded to Pantech to compensate it for that infringement. If you find that OnePlus has not infringed any valid claim of the Asserted Patents, then Pantech is not entitled to any damages.

If you award damages, they must be adequate to compensate Pantech for any infringement you find based sales of the Accused Products. You must not award Pantech more damages than are adequate to compensate for the infringement, nor should you include any additional amount for the purpose of punishing OnePlus. Damages are not meant to punish an infringer or set an example. Your damages award, if you reach this issue, should put Pantech in approximately the financial position that it would have been in had the infringement not occurred; that is, if OnePlus had paid for a reasonable royalty for its sales of the Accused Products.

Pantech has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Pantech establishes that it more likely than not suffered.  While Pantech is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

Pantech seeks patent damages in the form of a reasonable royalty. You must be careful to ensure that the award is no more or no less than the value of the patented invention.

### 8.1 Damages – Reasonable Royalty Overview

A reasonable royalty is defined as the money amount that Pantech and OnePlus would have agreed to in a hypothetical negotiation taking place at the time when infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner and OnePlus would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed that the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

With respect to the '839, '247, and '954 patents, any reasonable royalty must reflect that Pantech is obligated to license these patents on fair, reasonable, and non-discriminatory ("FRAND") terms. Therefore, a reasonable royalty as to the '839, '247, and '954 patents cannot exceed the amount permitted under Pantech's FRAND obligations.

### 8.2 Damages – Date of Commencement of Damages

In determining the amount of damages, you must determine when the damages began. For each Asserted Patent, damages commence on the date that OnePlus had been notified of an Asserted Patent and of its alleged infringement of that Asserted Patent. Any damages for induced infringement can only be recovered for the period in which direct infringement has been shown.

**8.3    Damages – Apportionment**

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Pantech's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, damages must be apportioned so that it is based only on the value of the patented features, and no more.

**8.4    Damages – Reasonable Royalty Factors**

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner at the time and the alleged infringer would consider in setting the amount the alleged infringer should pay. Some of the kinds of factors that you may consider in making your determination are:

1. The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6.  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7.  The duration of the patent and the term of the license.

8.  The established profitability of the product made under the patents, its commercial success, and its current popularity.

9.  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

You may have heard these factors referred to as the "*Georgia-Pacific* factors."

You have heard evidence that the '247, '954, and '839 Patents are standard essential patents, that is, the LTE and/or 5G standards cannot be practiced without infringing the patents. Pantech agreed to grant an irrevocable license for the '247, '954, and '839 patents on FRAND terms and conditions. Accordingly, you must ensure that your damages award reflects only the

value of the patented invention and not the additional value that resulted from the patent's inclusion in the standard. In other words, you may not consider the success of the standard itself in determining a reasonable royalty for the asserted essential patents. In addition, because Pantech committed to grant licenses on terms that are fair, non-discriminatory, and reasonable, when assessing any royalty rate to be applied to the standard-essential '247, '954, and '839 patents, you should not consider *Georgia-Pacific* factors 4, 5, 8, 9, and 10. A reasonable royalty with respect to the '247, '954, and '839 Patents cannot exceed the amount permitted under Pantech's FRAND obligations.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty that OnePlus would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

### 8.5    Damages – Comparable Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies. Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated

between the patent owner and accused infringer in order for you to consider it. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

**8.6    Damages – Type of Royalty**

If you find Pantech is entitled to damages, you must decide whether the parties would have agreed to a running royalty or a fully paid-up lump-sum royalty at the time of the hypothetical negotiation.

A running royalty is a fee paid for the right to use the patent that is paid for each unit of the infringing products that have been sold. If there are additional units sold in the future, any damages for these sales will not be addressed by you. If you decide that a running royalty is appropriate, then the damages that you award, if any, should reflect the total amount necessary to compensate Pantech for OnePlus's past infringement.

9.      **Instructions for Deliberations**

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Your verdict must be unanimous. When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during trial. After you have reached your verdict, your Foreperson is to fill in on the verdict form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes

are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to deliberate.