PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| PANTECH CORPORATION and PANTECH WIRELESS, LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., <br><br> *Defendant*. | Case No. 5:22-cv-00069-RWS |

## PLAINTIFFS' POST-TRIAL MOTION FOR AWARD OF ATTORNEYS' FEES AND ENHANCEMENT OF DAMAGES

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   REQUEST FOR ATTORNEYS' FEES .................................................................3

      A.    Legal Standard ...........................................................................................3

      B.    OnePlus's Litigation Conduct Since August 28, 2023 Warrants an Award
            of Attorneys' Fees ......................................................................................4

            1.    OnePlus Engaged in Unreasonable Litigation Tactics................................5

                  a.    Refusal to Agree to Representative Products...................................6

                  b.    Failure to Prepare Rule 30(b)(6) Witnesses and
                        Unreasonable Instructions to those Witnesses During
                        Deposition. ......................................................................................9

                  c.    Production of Inaccurate Sales Data and Attempts to Exploit
                        its Own Failings. ..........................................................................14

                  d.    Pursuit of Fact and Expert Discovery Long Past Procedural
                        Deadlines........................................................................................17

                  e.    Untimely Raising New Defenses Through Expert Reports
                        and Pre-Trial Filings ....................................................................19

                  f.    Raising Patent Misuse During Pretrial Order Phase.....................20

                  g.    Refusal to Identify Grounds of Invalidity Until Pantech's
                        Expert Witnesses Had Already Testified.......................................21

                  h.    Raising Trial Disputes before Dropping Prior to Argument;
                        Shifting Objections. ......................................................................24

                  i.    Raising Issues of Standing During Trial........................................26

            2.    OnePlus Litigated a Weak Case...............................................................27

III.  REQUEST FOR ENHANCED DAMAGES ........................................................31

      A.    Legal Standard .........................................................................................32

      B.    Enhanced Damages are Appropriate.........................................................34

            1.    Whether OnePlus copied the ideas of another. .........................................34

            2.    Whether OnePlus investigated the scope of the patent and formed a
                  good-faith belief that it was invalid or that it was not infringed................35

            3.    OnePlus's behavior as a party to the litigation. .......................................36

            4.    OnePlus's size and financial condition......................................................38

            5.    The closeness of the case. ........................................................................38

            6.    The duration of OnePlus's misconduct......................................................39

i

PUBLIC VERSION

███████████████████████

7.    Remedial action by the defendant...........................................................41

8.    OnePlus's motivation for harm..............................................................41

9.    Whether OnePlus attempted to conceal its misconduct...........................42

PUBLIC VERSION

---

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
   876 F.3d 1350 (Fed. Cir. 2017)........................................................................33

*Barry v. Medtronic, Inc.*,
   250 F. Supp. 3d 107 (E.D. Tex. 2017)..........................................................35, 37

*Broadcom Corp. v. Qualcomm Inc.*,
   No. 5-cv-467, 2007 U.S. Dist. LEXIS 99068 (C.D. Cal. Aug. 10, 2007) ..............40

*Dominion Res. Inc. v. Alstom Grid, Inc.*,
   No. 15-224, 2016 U.S. Dist. LEXIS 136728 (E.D. Pa. Oct. 3, 2016) ....................44

*Eagleview Techs., Inc. v. Xactware Sols., Inc.*,
   522 F. Supp. 3d 40 (D.N.J. 2021) ..................................................................21

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
   No. 6:11-CV-00201-JRG, 2018 U.S. Dist. LEXIS 34908 (E.D. Tex. March 5,
   2018) .............................................................................................24, 37, 38, 40

*Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys. LLC*,
   No. 2:15-cv-00037-RWS, Dkt. 550, at 53 (E.D. Tex., Apr. 23, 2018) (Ex. 5)............... *passim*

*Fall Line Pats., LLC v. Zoe's Kitchen, Inc.*,
   No. 6:18-CV-00407-RWS (E.D. Tex. July 11, 2023) ...........................................31

*Foster v. Ocwen Loan Servicing*,
   No. 1:09-cv-701, 2011 U.S. Dist. LEXIS 174287 (E.D. Tex. June 15, 2011) ........14

*Fractus, S.A. v. Samsung Elecs. Co.*,
   876 F. Supp. 2d 802 (E.D. Tex. 2012) ..............................................................37

*G+ Commc'ns, LLC v. Samsung Elecs. Co.*,
   No. 2:22-CV-00078-JRG, 2024 U.S. Dist. LEXIS 10789 (E.D. Tex. Jan. 22,
   2024) ........................................................................................................40

*Georgetown Rail Equip. Co. v. Holland L.P.*,
   867 F.3d 1229 (Fed. Cir. 2017)........................................................................33

*Georgetown Rail Equip. Co. v. Holland L.P.*,
   No. 6:13-CV-366-RWS, 2016 U.S. Dist. LEXIS 78365 (E.D. Tex. 2016) ......31, 34

i

PUBLIC VERSION

████████████████████████

*Georgetown Rail Equip. Co. v. Holland LP*,
    Cause No. 6:13-cv-366, 2016 WL 3346084 (E.D. Tex. June 16, 2016)
    (Schroeder, J.) ............................................................................................. *passim*

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
    355 F.3d 1327 (Fed. Cir. 2004)................................................................................4

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    579 U.S. 93 (2016)..................................................................................32, 45

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)...........................................................................37

*Monolithic Power Sys., Inc. v. O2 Micro Intern. Ltd.*,
    726 F.3d 1359 (Fed. Cir. 2013)...........................................................................31

*Netsales, Inc. v. FesteCapital Management, LLC*,
    No. A-07-CV-496 LY, 2007 WL 9710173 (W.D. Tex. July 5, 2007) ...................................14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014)...................................................................................3, 4

*Oplus Techs., Ltd. v. Vizio, Inc.*,
    782 F.3d 1371 (Fed. Cir. 2015)................................................................................4

*Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*,
    421 F. Supp. 3d 410 (E.D. Tex. 2019) ..........................................................6, 9, 24

*Pavo Sols. LLC v. Kingston Tech. Co.*,
    No. 8:14-cv-01352, 2021 U.S. Dist. LEXIS 139185 (C.D. Cal. Feb. 16, 2021) ...................38

*Polara Eng'g Inc v. Campbell Co.*,
    894 F.3d 1339 (Fed. Cir. 2018)...........................................................................33

*Read Corp. v. Portec Inc.*,
    970 F.2d 816 (Fed. Cir. 1992).........................................................................33, 34

*Resolution Tr. Corp. v. S. Union Co., Inc.*,
    985 F.2d 196 (5th Cir. 1993) ..............................................................................14

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
    781 F.2d 198 (Fed. Cir. 1986)................................................................................3

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
    127 F.3d 1462 (Fed. Cir. 1997)...........................................................................33

*Tinnus Enters., LLC v. Telebrands Corp.*,
    369 F. Supp. 3d 704 (E.D. Tex. 2019) (Schroeder, J.) ....................................................3, 41

PUBLIC VERSION

*Traxcell Technologies, LLC v. AT&T Corp. et al.*,
   No. 2:17-cv-00718-RWS-RSP, Dkt. 535 (E.D. Tex. Nov. 10, 2022) (Ex. 6) ...........................5

*VirnetX Inc. v. Apple Inc.*,
   324 F. Supp. 3d 836 (E.D. Tex. 2017) ....................................................................4, 33, 35, 44

*VirnetX Inc. v. Apple Inc.*,
   No. 6:12-CV-00855-RWS, 2018 U.S. Dist. LEXIS 230877 (E.D. Tex. Aug.
   30, 2018) .........................................................................................................................34

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
   837 F.3d 1358 (Fed. Cir. 2016)............................................................................................33

*Whirlpool Corp. v. TST Water, LLC*,
   No. 2:15-CV-01528-JRG, 2018 U.S. Dist. LEXIS 52833 (E.D. Tex. March
   29, 2018) .........................................................................................................................38

**Statutes**

35 U.S.C. § 284................................................................................................................32

35 U.S.C. § 285..................................................................................................................3

PUBLIC VERSION

## I.    INTRODUCTION

In the intricate landscape of standard essential patents, equitable enforcement of the FRAND process is paramount. Here, there is substantial evidence that OnePlus attempted to improperly exploit the FRAND process by unfairly engaging in holdout tactics, which not only disrupted the intended balance of the FRAND system but also imposed undue costs on both Pantech and the Court. It is imperative that such conduct be addressed with the full weight of the remedies available under 35 U.S.C. §§ 284 and 285, which provide for both compensatory and punitive measures.

The evidence, detailed within this brief, illustrates a pattern of behavior by OnePlus that is emblematic of a broader industry issue: the strategic patent holdout by some implementers of standards. This conduct, which undermines the integrity of the patent system, is increasingly being studied by the industry: "'[P]atent holdout' refers to the opportunistic behavior of an implementer of a patented technology that uses delaying tactics and legal maneuvering to prolong infringement and thereby coerce the patent holder to accept zero or 'unreasonable' royalties or other such licensing terms." Kiri Gupta & Urska Petrovcic, *Evidence of Systematic "Patent Holdout"*, 38 BERKELEY TECH. L. J. 575, 576, 584 (2023) (detailing types of holdout) (Ex. 1); *see also* Brian J. Love & Christian Helmers, *Patent Hold-Out and Licensing Frictions: Evidence from Litigation of Standard Essential Patents*, 89 INT'L J. OF INDUS. ORG. SANTA CLARA UNIV. LEGAL STUD. RSCH. PAPER, June 7, 2023, at 2 (holdout "commonly refers to a prospective SEP licensee's efforts to avoid, delay, or lower the cost of licensing valid patents that cover a standardized technology") (Ex. 2).

This research delineates how certain implementers, such as OnePlus, take advantage of the cap on damages that the FRAND framework provides (or at least provides to good faith licensees), and try to use the expense and delay of litigation to extract a lower-than-FRAND rate from an SEP

1

████████████████████████████████

owner. This dynamic (cap on damages combined with the threat of litigation costs) "incentivizes the very patent holdout problem FRAND was intended to avoid." *See* Richard A. Epstein & Kayvan B. Noroozi, *Why Incentives for "Patent Holdout" Threaten to Dismantle FRAND, and Why It Matters*, 32 BERKELEY TECH. L.J. 1381, 1382 (2017) (Ex. 3); *see also* Kalyan Dasgupta & David J. Teece, *Protecting Innovation in the Mobile Wireless Ecosystem: Understanding & Addressing "Hold-Out"*, 38 BERKELEY TECH. L. J. 313, 317 (2023) ("Thus, the worst outcome for a licensor might be that it pays, after considerable delay, FRAND royalties on only a portion of infringing sales. This has the potential to further depress negotiated royalties.") (Ex. 4). An SEP owner thus faces a bleak choice when presented with holdout: take a discount (which all following implementers may use to further drive down royalty rates) or face daunting litigation costs simply to assert those rights guaranteed by the U.S. patent system.

Pantech's experience in this litigation is a stark illustration of the consequences of such holdout behavior. OnePlus has:

- Engaged in protracted pre-litigation negotiations, such as by ████████████ ██████████████████████████ (Trial Tr. 710:4-711:1) and ████████ ███████████████████████████████████████████ (Trial Tr. 293:3-294:16, 293:12-16, 299:1-6; 714:4-22). *See* Gupta & Petrovcic, *supra*, at 585-86 (detailing "several cases in which the implementer entered into a negotiation with the SEP holder but then engaged in practices that unreasonably delayed the process and hence the execution of a license")).

- Adopted a litigation strategy aimed at delay and obfuscation of discovery matters and untimely attempted to inject new issues into the litigation, even through trial, as generally detailed herein at Section II.B.1. *See* Love & Helmers, *supra*, at 9-10 (discussing patterns of holdout conduct that indicate "an intent to delay or raise the cost of litigation").

- ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████ in an apparent attempt to leverage the increased costs and uncertainty that it was injecting into the litigation to get Pantech to accept below-market rates for its portfolio. *See* Gupta & Petrovcic, *supra*, at 584 (holdout "uses delaying tactics and legal maneuvering to prolong infringement and thereby coerce the patent holder to accept zero or 'unreasonable' royalties or other such licensing terms").

2

Any question of why this case proceeded to trial is answered by OnePlus's apparent litigation strategy of attempting to leverage litigation costs to devalue Pantech's patent portfolio. This case is not only exceptional due to the nature of the infringement and weakness of OnePlus's case, but also because it highlights the urgent need for punitive enhancement. Such a measure is both justified and necessary to serve as a deterrent against future holdout behavior, ensuring the FRAND system functions as intended and that SEP owners like Pantech are not coerced through behavior that threaten the very fabric of innovation and fair competition.

## II.    REQUEST FOR ATTORNEYS' FEES

### A.    Legal Standard

The Court may award a litigant's attorneys' fees in "exceptional cases." 35 U.S.C. § 285. "[A]n exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Ultimately, a party's entitlement to attorneys' fees need only be proved by a preponderance of the evidence. *Id.* at 1758.

A determination of willful infringement alone is a "compelling fact" in favor of finding a case exceptional. *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986) (requiring a court to "explain why this is not an exceptional case in the face of its express finding of willful infringement"); *see also Tinnus Enters., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 744 (E.D. Tex. 2019) (Schroeder, J.) (same). "While a finding of willful infringement for purposes of enhanced damages does not necessarily require a finding that a case is exceptional under § 285, 'the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the

3

PUBLIC VERSION

prevailing patent owner.'" *VirnetX Inc. v. Apple Inc.*, 324 F. Supp. 3d 836, 871 (E.D. Tex. 2017) (quoting *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004)).

Furthermore, pursuant to guidance from *Octane Fitness*, litigation conduct that unreasonably complicates the proceedings or increases costs may make a case exceptional and justify a request for fees. *See Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374-75 (Fed. Cir. 2015) (remanding a decision that did not award fees despite a finding of litigation misconduct that made opposing counsel "incur[] additional expenses"). Courts need not determine that any specific "conduct in isolation makes this case exceptional." *Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys. LLC*, No. 2:15-cv-00037-RWS, Dkt. 550, at 53 (E.D. Tex., Apr. 23, 2018) (Ex. 5). Rather, a Court should evaluate the party's "litigation misconduct in sum." *Id.*; *see also Octane Fitness*, 134 S. Ct. at 1756. Ultimately, where a party's "litigation strategies unnecessarily complicated the proceedings and needlessly increased costs," an award of fees is appropriate. *Elbit Sys. Land*, No. 2:15-cv-37-RWS at 50.

### B. OnePlus's Litigation Conduct Since August 28, 2023 Warrants an Award of Attorneys' Fees

Attorneys' fees are properly awarded when a case is exceptional, either because of "the unreasonable manner in which the case was litigated" or because it "stands out from others with respect to the substantive strength of a party's litigating position." *Octane Fitness*, 134 S. Ct. at 1756. Here, both unreasonable litigation conduct and the evident weakness of OnePlus's case underscore the exceptional status of this case. Consequently, Pantech requests an award of its attorneys' fees, starting from the date of August 28, 2023.

The evidence, as shown below, demonstrates a clear shift in OnePlus's strategy to one characterized by delay and obfuscation commencing around August 28, 2023. It was from that point on that OnePlus consistently engaged in actions that unreasonably injected costs and disputes

4

PUBLIC VERSION

into this litigation. This pattern of conduct that demonstrates the exceptional nature of the case, and it is consequently from this point on that Pantech requests its fees pursuant to 35 U.S.C. § 285. *See, e.g.*, *Traxcell Technologies, LLC v. AT&T Corp. et al.*, No. 2:17-cv-00718-RWS-RSP, Dkt. 535 at 3 (E.D. Tex. Nov. 10, 2022) (adopting magistrate judge's decision to award fees beginning on day case became exceptional) (Ex. 6).

1. *OnePlus Engaged in Unreasonable Litigation Tactics.*

OnePlus's unreasonable litigation conduct, which began at least by August 28, 2023, includes: (1) refusing without basis to agree to the use of representative products; (2) not preparing its Rule 30(b)(6) witnesses in line with their discovery obligations and using unreasonable privilege assertions to thwart permissible discovery; (3) producing inaccurate sales data and providing misleading and contradictory answers about it; (4) pursuing fact and expert discovery long after case management deadlines had passed; (5) untimely raising new defenses through expert reports; (6) raising a new defense of patent misuse at the pretrial stage, and refusing to drop it even after the Court held the defense untimely; (7) refusing to disclose to Pantech what invalidity grounds it would present to the jury at trial (instead filing an expanded Section 282 notice with additional art); (8) raising trial disputes before the Court only to withdraw them on the eve of argument; and (9) unreasonably raising a supposed issue of Constitutional standing without basis during trial.

Even if any individual instance of the unreasonable conduct (detailed below) does not support finding this case exceptional on its own, the unrelenting pattern does. *Elbit Sys. Land*, No. 2:15-cv-37-RWS at 53 (Ex. 5). The following conduct, in the context of the weakness of OnePlus's litigation positions, establishes this case as deserving at least a partial award of attorneys' fees, as Pantech requests.

5

PUBLIC VERSION

██████████████████████████

a.   <u>Refusal to Agree to Representative Products.</u>

OnePlus unjustifiably refused to agree to the use of representative products, which is behavior that supports an award of fees. *See Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*, 421 F. Supp. 3d 410, 414-15 (E.D. Tex. 2019) (determining that the case was exceptional in part because "PanOptis argues that Huawei caused delay by declining to agree to any representative products [which] required PanOptis to prepare separate infringement proof for all 30 accused devices"); *see also Elbit Sys. Land*, No. 2:15-cv-37-RWS at 50 (awarding fees because "Hughes's litigation strategies unnecessarily complicated the proceedings and needlessly increased costs").

From the beginning of the case, Pantech maintained consistent theories of infringement for each of the asserted patents and argued that the accused OnePlus products infringe the respective patents in essentially the same way. This position is substantiated by a direct comparison of Pantech's initial infringement contentions, dated November 21, 2022, with the detailed testimonies provided during the trial. *Compare* Ex. 7 (excerpts of Pantech's November 21, 2022 infringement contentions) *with* Trial Tr. (March 25) 345:2-349:8 (Cooklev) (justifying use of OnePlus 9 5G as representative of the accused products for SEPs), Trial Tr. (March 26) 496:2-500:8 (Mauro) (justifying use of OnePlus 10T 5G as representative of the accused products for the '654 Patent), and Trial Tr. (March 26) 588:7-590:19 (Stevenson) (justifying use of OnePlus 10T 5G as representative of the accused products for the '052 Patent).

In view of the uniform applicability of its infringement theories across all accused products, Pantech proactively sought to streamline the legal process through the use of representative products to narrow the burdens on the parties. *See, e.g.*, Ex. 8 (Aug. 3, 2023 Email from Fussell to Gass) (proposing OnePlus 9 5G as representative for SEPs and OnePlus 10T 5G as representative for non-SEPs). Pantech's initiative (which is a common approach in these types of cases) not only

6

PUBLIC VERSION

████████████████████████████████████

aimed to expedite the proceedings but also offered a potential solution to serious deficiencies in OnePlus's discovery, some of which could have been addressed through representative products. *See, e.g.*, Ex. 9 (Jul. 13, 2023 Letter from Miller to Gass) (identifying, *e.g.*, missing technical documentation for accused products as well as missing component data); Ex. 10 (Aug. 11, 2023 Letter from Miller to Gass) (same).

While initially seeming open to the idea, OnePlus's counsel shifted gears on August 28, 2023, and declined to agree to the use of representative products in a terse statement: "With respect to representative products, we have inquired with OnePlus as to whether they are willing to stipulate to the products proposed by Pantech. They are not willing to stipulate to the limited set of products proposed by Pantech at this time." Ex. 11 (Aug. 28, 2023 Email from Gass to Miller). OnePlus provided no other reasons for its decision. *Id.* Pantech's subsequent attempts to get OnePlus to reconsider (or explain the basis for its refusal) were for naught. *See, e.g.*, Ex. 12 (Sept. 15, 2023 Letter from Miller to Kopinski).

As the case progressed, it appeared that the only explanation for OnePlus's refusal was to increase the litigation costs for Pantech. ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████ (*see, e.g.*, Ex. 13 (Peng 09.06 dep. excerpts) at 81:17-24, 83:2-11, 89:21-24; Ex. 14 (Zhu 9.23 dep. excerpts) at 88:10-16, 97:7-11). OnePlus's technical experts likewise identified no product-specific differences material to determining infringement for the accused OnePlus products. These failures indicate a lack of good faith basis for OnePlus's refusal to agree to the use of representative products.

At trial, because this issue was still in dispute, Pantech was forced to spend time showing why all accused products operated the same way with respect to the accused functionality (at least

PUBLIC VERSION

███████████████████████████████████████████████

Trial Tr. (March 25) 345:2-349:8 (Cooklev), Trial Tr. (March 26) 496:2-500:8 (Mauro), Trial Tr.

(March 26) 588:7-590:19 (Stevenson)). OnePlus did not ask a single question about this on cross-

examination, or provide any criticism from its own experts. It ignored the issue in both opening

and closing statements. The jury's time, and certainly a substantial portion of Pantech's time

(including of Pantech's limited time available for examination at trial), was wasted on what was

essentially an uncontested issue.[1]

 The costs to Pantech were substantial. Pantech's experts and attorneys spent considerable

time in the expert discovery phase proving that the accused products operated the same way, which

they ultimately were able to do ***according to OnePlus's own documents*** (undercutting any

argument that this information was unknown to OnePlus). As just one example, Dr. Cooklev

needed to prepare a chart for each SEP patent, cross-referencing pincites from thousand-page

testing reports (to the extent OnePlus had produced them) for each accused product finding the

exact citations that showed conformance with the accused portions of 3GPP standards. ████

██████████████████████████████████████ *See, e.g.,* Ex. 15 (Cooklev

infringement rep. excerpts) at App'x A ¶¶ 28-29, App'x B ¶¶ 60-62, App'x C ¶¶ 22-23 ████

████████████████). Dr. Stevenson and Mr. Mauro likewise needed to each review the

underlying materials for each accused product—this information was *condensed* into a 115-page

chart appended to each of their infringement reports. *See*, *e.g.*, Ex. 16 (Appendix C to Mauro

Report). Pantech's experts necessarily prepared for questions about any given accused product

during deposition and trial, then needed to present the consistency of their findings across products

---

[1] At trial, Pantech's witnesses justified as representative the same products as were initially proposed by Pantech in August 2023 (the OnePlus 9 5G for SEPs and OnePlus 10T 5G for non-SEPs). *Compare* Ex. 8 (Aug. 3, 2023 Email from Fussell to Gass) *with* Trial Tr. 345:2-349:8, 496:2-500:8, and 588:7-590:19.

PUBLIC VERSION

to the jury while being prepared to discuss any given product on cross examination. Trial Tr. (March 25) 345:2-349:8 (Cooklev), Trial Tr. (March 26) 496:2-500:8 (Mauro), Trial Tr. (March 26) 588:7-590:19 (Stevenson). This effort and substantial expense were unnecessary.

Ultimately, OnePlus's refusal to agree to the use of representative products was without basis, served no legitimate purpose, increased costs, and consumed precious time during trial. Such refusal supports an award of fees under 35 U.S.C. § 285. *See, e.g.*, *Optis Wireless*, 421 F. Supp. 3d at 414-15; *Elbit Sys. Land*, No. 2:15-cv-37-RWS at 50. It also demonstrates a larger pattern of fee-supporting behavior.

b. Failure to Prepare Rule 30(b)(6) Witnesses and Unreasonable Instructions to those Witnesses During Deposition.

Mere days after refusing to agree to representative products, OnePlus proffered Rule 30(b)(6) witnesses who were then wholly unprepared to answer questions on their designated (and unobjected to) topics, including on any differences between OnePlus's products relevant to infringement. Pantech could not determine from these depositions any possible reasoning for OnePlus's refusal to agree to representative products.

Key, but by no means comprehensive, examples are as follows:[2]

**Shaohua Peng (excerpts at Ex. 13 at 81:17-24, 83:2-11, 89:21-24)**

Designated for Topic 2 (*The design, structure, development, operation, and functionality of the Accused Features or Functions of the Accused Products and Implicated Components, and the Persons with knowledge thereof*) and Topic 7 (*Any differences between the design, operation, and/or functionality of the Accused Features or Functions as they are implemented on the various Accused Products, and the Persons with knowledge thereof*):

---

[2] Further examples are too voluminous to list here but were highlighted in Pantech's subsequent motion to compel. *See* Dkt. 65 (motion to compel) at Ex. A (excerpts of unprepared deposition testimony juxtaposed with designated topics).

PUBLIC VERSION



**Luming Xue (excerpts at Ex. 17 at 25:16-18, 31:12-18, 49:5-50:12, 63:10-12, 69:5-10)**

Designated for Topic 40 (*Defendant's licensing practices, policies or strategy, including any licensing practices, policies, or strategy with respect to payment of FRAND royalties and the Persons with knowledge thereof*) and Topic 43 (*Defendant's licensing policies, practices, or procedures relating to intellectual property from 2016 to present, and the Persons with knowledge thereof*), yet provided the following testimony:



Designated for Topic 52 (*All facts related to the process by which orders of Accused Products in the United States, whether made through distributors or directly through Defendant (e.g., through https://www.oneplus.com/us/store), are processed and fulfilled*); Topic 57 (*All facts related to the importation of the Accused Products into the United States from 2016 to present*); Topic 58 (*All facts related to Defendant's sales, revenues, income, and profits generated by or realized from the licensing, sales or distribution of the Accused Products in the United States from 2016 to present*);

---

[3] This answer is in spite of Ms. Xue's testimony that "███████████████████████████████
██████████████████████████████" *See* Ex. 17 (Xue dep. tr.) at 46:4-14.

10

PUBLIC VERSION

█████████████████████████████████████████

and Topic 71 (*The relationship between Defendant and any other subsidiaries, affiliates, or related Entities as they relate to the Accused Products*), yet provided the following testimony:



It became abundantly clear from further questions that neither witness had undergone any preparation necessary to fulfill their obligations as corporate representatives. *See* Ex. 13 (Peng) at 82:1-4, 83:15-17, 96:5-11; Ex. 17 (Xue) at 31:12-18, 48:26-50:12, 86:25-87:22; *see also* Dkt. 65 (motion to compel) at Ex. A (detailing further examples). Furthermore, OnePlus had previously designated Zhonghua Zhu as the corporate representative for SEP technical issues, but Pantech was informed at the last minute that he had scheduling issues, forcing the parties to file an agreed motion to take the deposition out of time (*see* Dkt. 57) mere days before the end of discovery. More than two weeks after moving for leave, **OnePlus retracted its earlier agreement and declined to make Mr. Zhu available for a deposition**, simply declaring that he did not have relevant information so "there would be no reason for Pantech to seek further deposition testimony

---

[4] Ms. Xue could not explain some blatant discrepancies in this spreadsh███████████████████████ ████████████████████████████████████████████████████████████████████ ████████████). Ex. 17 at 63:13-18; *see also id.* at 63:19-25 ████████████████████████████████████████████████████████████████████ ███), 64:14 ███████████████"), 66:6 ("████████████████████████"), 67:9-10 ███ ███████████████"), 69:16-70:1 (████████████████████).

PUBLIC VERSION

████████████████████████████████

from OnePlus on technical topics regarding SEP issues." *See* Ex. 18 (Sept. 22, 2023 Letter from Kopinski to Fussell) at 2.

As a result of this conduct, Pantech diligently pursued the motion to compel process, including the requisite meet and confer sessions, during which time Pantech offered to narrow the scope of deposition topics and address certain topics through a stipulation. But OnePlus's participation in the Court-mandated meet and confer was merely nominal; it offered no compromises or middle ground. Pantech was therefore forced to file a motion to compel. *See* Dkt. 65. It appeared that only after Pantech filed its motion did OnePlus truly consider the merits of Pantech's positions, because OnePlus agreed to the ***very same compromise*** that Pantech offered before filing its motion to compel. *Compare* Ex. 12 (Sept. 15, 2023 Letter from Miller to Kopinski) (outlining compromise) *and* Dkt. 65 at 6 n.3 *with* Dkt. 68 (withdrawing motion to compel and outlining OnePlus's agreements to stipulate and provide knowledgeable witnesses). This incident illustrates OnePlus's pattern of increasing costs through gamesmanship, including refusing to meaningfully meet and confer process until Pantech had invested considerable time and expense in preparing to present the matter to the Court (detailed further below).

Despite the agreement reached, OnePlus continued to obstruct discovery. Notably, the replacement witnesses were unprepared on multiple topics. Furthermore, OnePlus obstructed pertinent lines of questioning by repeatedly and unjustifiably invoking privilege. This is illustrated in the deposition transcript of Mr. Yori Xiao (excerpts at Ex. 19 at 97:4-10:6, 110:9-111:23)):



PUBLIC VERSION



…

*See also* Ex. 20 (Peng 11.02 dep. excerpts) at 56:5-12, 121:19-124:2; Ex. 14 (Zhu dep. excerpts) at 116:19-121:2; Ex. 19 (Xiao dep. excerpts) at 109:24-110:4, 112:6-23. At OnePlus's request, the depositions occurred during business hours in China, and therefore the Court's discovery dispute hotline was not available, and Pantech had no immediate recourse when privilege was claimed.

Given that expert reports had already been served by this point (mid-October), experts had been deposed, and summary judgment was imminent, Pantech was forced to choose between proceeding on the case schedule or risk delaying trial to obtain the discovery it was entitled to from

██████████████████████████████████████████

yet more depositions. OnePlus's conduct, and the resulting dilemma, were prejudicial and unnecessarily added to litigation costs.[5]

      c.   <u>Production of Inaccurate Sales Data and Attempts to Exploit its Own Failings.</u>

Further demonstrating a pattern of misconduct, OnePlus produced what its own witness admitted was inaccurate (and correctable) revenue data and provided misleading deposition testimony about it, obstructing Pantech's efforts to establish an accurate measure of damages. OnePlus then attempted to use its own failings to its advantage in *Daubert* motion practice before the Court.

OnePlus's revenues relating to the sales of the accused products in the United States between January 1, 2014, and June 30, 2023 were produced in the form of a spreadsheet with Bates number ONEPLUS0145481 and became trial exhibit PX-175. ████████████████████████ ████████████████████████████████████ (Ex. 17 at 55:19-20), ████████████ ████████████████████████████████████████████████ ████████████████████ " (*id.* at 57:3-6). ████████████████████████████████ ██████████████████████████████████████ *Id.* at 57:7-11.

OnePlus then resisted providing any other Rule 30(b)(6) testimony, requiring Pantech to file a motion to compel; but OnePlus's eventual second Rule 30(b)(6) witness on these topics, Yori Xiao, then contradicted Ms. Xue's earlier testimony. For example, Mr. Xiao stated that, in fact,

---

[5] OnePlus's failures and obfuscation relating to Rule 30(b)(6) witnesses would be independent grounds for awarding fees; it is therefore also reasonable to consider them within the overall pattern of conduct relevant to an award of fees. *See Foster v. Ocwen Loan Servicing*, No. 1:09-cv-701, 2011 U.S. Dist. LEXIS 174287 at *16-17 (E.D. Tex. June 15, 2011) (ordering that the defendant is responsible for the cost of the subsequent deposition and plaintiffs' attorneys' fees incurred); *see also Resolution Tr. Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 197-98 (5th Cir. 1993); *Netsales, Inc. v. FesteCapital Management, LLC*, No. A-07-CV-496 LY, 2007 WL 9710173, at *4 (W.D. Tex. July 5, 2007).

████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████  ███████████

██████████████████████. *See* Ex. 19 at 55:11-22.[6] The meaningful difference in testimony is

illustrated below (using a modified version of Pantech's closing demonstratives to show the

contradiction in the answers):



Given that PX-175 was a basis for Pantech's damages (*see* Trial Tr. (March 26) at 646:5-11

(Putnam); Trial Tr. (March 26 sealed) at 4:9-5:10, 52:20-53:25 (Putnam)), this discrepancy was

critically important. Pantech should not have needed to insist upon additional discovery to discover

these inaccuracies, and OnePlus should not have resisted such discovery.

Additionally, when faced with the same blatant discrepancies in this spreadsheet that Ms.

Xue was confronted with and could not explain (*see above* at Section II.B.1.b), Mr. Xiao agreed

---

[6] OnePlus never repudiated Ms. Xue's testimony. While Mr. Xiao argued that, in reference to Ms.
Xue's testimony, "████████████████████████████████████████████
████████████████████████████" (Ex. 19 (Xiao) at 55:23-56:14), this
argument is implausible: Ms. Xue was clear that ████████████████████████
█████████████████████████████████████████████████████████████
████████████████████████ Ex. 17 (Xue) at 57:3-11.

PUBLIC VERSION

███████████████████████████████████████████

███████████████████████████████████ (Ex. 19 at 63:2-67:4) and ████████████████

████████████ (*id.* at 68:23-69:3). But OnePlus **never** provided any corrections.

Instead, OnePlus filed a *Daubert* motion attacking Dr. Putnam's alternative reliance on sales data from the IDC as supposedly inaccurate (which was necessary in part because of the uncertainty caused by OnePlus's admitted errors). *See* Dkt. 85. The Court rightly sided with Pantech (Dkt. 178), in part because "Pantech persuasively argues there are potential issues with OnePlus's sales data," but this was a dispute of OnePlus's own making and would never have existed had OnePlus complied with its discovery obligations and produced accurate revenue data.

Pantech's damages expert was forced to submit an expert report addressing the incorrect and incomplete information provided by Ms. Xue about OnePlus's produced revenues and had to undergo the added expense of also looking to an alternative, public source of data in view of OnePlus's untrustworthy data production. And Mr. Xiao's later trial testimony only confirmed that there were correctable errors, but OnePlus then did not provide any corrections. In sum, OnePlus not only hid its actual revenues but also added to the challenges facing Pantech's expert in assessing damages, and then tried to use its own failings in motions practice. In short, OnePlus opted not to correct its admittedly unreliable sales data, but to gamble on the confusion it created, forcing Pantech to spend considerable expense and trial time establishing reliable sales numbers.

This combination of actions taken by OnePlus is particularly troubling:

- Deliberate concealment: producing admittedly inaccurate revenue data;

- Misleading testimony: inadequate and intentionally misleading deposition testimony regarding the revenue data;

- Expert obstruction: hindering Pantech's expert from delivering an opinion on damages;

- Failure to correct: failing to properly correct the data and misleading testimony when called into question; and

16

PUBLIC VERSION

- Manipulative tactics: inappropriately turning to motions practice in a calculated attempt to exploit its own misconduct.

The cumulative effect of these actions—each compounding the last—underscores OnePlus's persistent holdout (attempting to manipulate the value of the case to drive settlement discussions) and strongly supports the classification of this case as exceptional.

      d.   <u>Pursuit of Fact and Expert Discovery Long Past Procedural Deadlines.</u>

Discovery in this matter ended on September 8, 2023. And aside from certain follow-up related to deficiencies in the preparation of OnePlus's 30(b)(6) witnesses and their subsequent testimony, noted above, Pantech abided by this discovery deadline. OnePlus did not.

Rather, for **months** after the close of fact discovery—and even into the days before trial—OnePlus attempted to conduct fact discovery and supplement its disclosures for various issues, severely undercutting the purpose of the Docket Control Order to provide an orderly disposition of issues.

For example, immediately after discovery ended, OnePlus wrote Pantech on September 11, 2023, blatantly mirroring Pantech's allegations about unprepared 30(b)(6) witnesses. *See* Ex. 21. Pantech investigated and prepared for a meet and confer to address these unfounded accusations, but OnePlus did not raise these issues on the meet and confer, so Pantech considered the matter dropped. *See* Fussell Decl. at ¶ 2. But on October 26, more than 6 weeks later, OnePlus re-raised the same issues. *See* Ex. 22. Despite this inquiry being well out of time, Pantech again provided a substantive response to OnePlus's questions, resolving the matter. *See* Ex. 23 (Oct. 31, 2023 Email from Miller to Kopinski).

Then, on December 29, 2023, OnePlus raised a new discovery demand, insisting that Pantech investigate and "make available a witness with the requisite knowledge regarding [the Ericsson and Nokia] licensing efforts." *See* Ex. 24 (Dec. 29, 2023 Letter from Gass to Fussell).

PUBLIC VERSION

████████████████████████████████████████

OnePlus also demanded the production of several categories of documents related to the Ericsson and Nokia licenses. *Id.* Pantech responded, noting that the Ericsson materials were produced prior to Mr. Jung's deposition, and thus that OnePlus had already had the full opportunity to question a Pantech witness regarding the license and negotiations (the Nokia license was not produced during fact discovery because it was not yet executed at that time; but it was produced shortly after execution, months before OnePlus's letter). *See* Ex. 25 (Jan. 5, 2024 Letter from Fussell to Gass). Ultimately, OnePlus narrowed the scope of its demands and Pantech, to avoid motions practice, made a limited production. *See, e.g.*, Ex. 26 (Jan. 21, 2024 Email from Fussell to Gass).

Days later, on January 23, 2024 (when fact discovery had been completed for over three months), OnePlus raised another belated demand for discovery. *See* Ex. 27 (Jan. 23, 2024 Email from Gass to Fussell) ("We further note an additional discovery issue that has come to our attention…"). Pantech explained that the "additional discovery issue" was directly tied to a patent transfer agreement that had been produced more than six months prior (on July 12, 2023) and thus could have been raised by OnePlus during the fact discovery period, the demand was untimely. *See* Ex. 28 (Jan. 24, 2024 Email from Fussell to Gass).

The requests continued—OnePlus even emailed lead counsel for Pantech days before trial, asking "did Pantech Corp. ever '████████████████████████████ ████████' of the ███████████████████ (DTX 005) as required by ██████████ of that agreement?'" *See* Ex. 29 (March 23, 2024 email from Airan to Fussell). Such a discovery request, two days before opening statements, was inappropriate, untimely (the referenced agreement was produced during discovery in the case), and again prompted a burdensome investigation.[7]

---

[7] Unbeknownst to Pantech at the time, this request was apparently tied to OnePlus's intention to belatedly raise a new standing defense during trial. *See* Section II(B)(1)(i), *infra.*

OnePlus's disregard of case discovery deadlines in furtherance of its own belated investigations placed an ongoing and inappropriate burden on Pantech. To be clear, Pantech does not contend that any particular instance of these "expanded discovery attempts" be considered an independently sanctionable event, but rather requests that this disregard of case deadlines be considered by the Court within and alongside the broader pattern of conduct outlined herein, which unfairly expanded the proceedings past reasonable case management safeguards. If these were the only instances of OnePlus's litigation misconduct, this case might not be exceptional. But there is more.

      e.   <u>Untimely Raising New Defenses Through Expert Reports and Pre-Trial Filings</u>

OnePlus's disregard for deadlines expanded beyond seeking untimely fact discovery. Indeed, OnePlus also repeatedly attempted to inject new theories and defenses into the case during the expert discovery and pre-trial periods. For example, OnePlus's experts rendered opinions concerning alleged non-infringing alternatives and prosecution history estoppel that exceeded what had been disclosed during fact discovery. Pantech was forced to move to strike such opinions (Dkt. 78). The Court struck the non-infringing alternative arguments "because OnePlus failed to disclose these noninfringing alternatives in its interrogatory responses and initial reports," and struck the prosecution history estoppel arguments in part. Dkt. 178 at 8-13. The Court was also required to address OnePlus's late injection of the declaration and proposed trial testimony of Friedhelm Rodermund (as he had not been disclosed during fact or expert discovery). *See* Dkt. 178 at 18. The Court held it would be prejudicial to allow Mr. Rodermund's declaration or testimony, holding, "[e]ven with the knowledge that this was an important issue for which OnePlus bears the burden, OnePlus never moved for leave to supplement its report nor did it provide Pantech with notice it intended to rely on a new witness's declaration." *Id.* at 20.

OnePlus also unilaterally served a "supplemental rebuttal" expert report, without leave of Court or even a meet and confer between the parties, forcing Pantech to move to strike this too. *See* Dkt. 100. OnePlus should have moved for leave to supplement if it truly thought that leave was warranted, but instead placed the burden on Pantech to move to strike. That the Court partly struck OnePlus's attempt (Dkt. 178 at 13-17) and offered Pantech a further supplemental report merely mitigates, but does not erase, the expense caused by OnePlus's improper discovery tactic.

Even with respect to patent exhaustion, OnePlus again went beyond what it disclosed during fact discovery, relying on a new license as an additional basis for its defense. *See* Dkt. 179 at 8. The Court likewise struck OnePlus's reliance on the new license, finding that "OnePlus's failure to timely disclose its belief that the [] license exhausts the asserted SEPs caused substantial prejudice to Pantech." *Id.*

OnePlus's attempts to raise new defenses continued through motions *in limine*. For example, OnePlus attempted to twist the words of the Court's ruling on a printed publication into an opportunity to insert an abandoned and never-developed obviousness theory back into the case; forcing Pantech to file a contested MIL on the issue. *See* Dkt. 211 at Pantech's MIL 6.

Again, while an errant untimely opinion by an expert or position by a party may not be an independently sanctionable event, OnePlus's systematic disregard of deadlines and attempts to inject new issues into the case, in turn causing Pantech to engage in costly and unnecessary motions practice, is.

   f.   Raising Patent Misuse During Pretrial Order Phase.

As had to be addressed in the context of the pretrial order and motions *in limine*, OnePlus inserted—with no warning—a twelve-page summary of an alleged patent misuse defense into the parties first Joint Pretrial Order. *See* Dkt. 188 (first joint final pretrial order) at 17-29; *see also* Dkt.

PUBLIC VERSION

211 (granting-as-modified Pantech's 8th MIL). This was a major disruption in the pretrial proceedings.

Between OnePlus introducing this alleged issue for the first time about a month before trial and the Court's order confirming it was an impermissible defense,[8] Pantech was forced to both investigate a significant range of alleged facts and prepare for the first time to defend itself from a charge of patent misuse. This was a misdirection and a waste of Pantech's resources at a critical time in the litigation.

A party raising issues for the first time on the eve of trial, as OnePlus did, causes confusion and burden on the responding party, and can support an award of fees. *See Eagleview Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 65 (D.N.J. 2021) ("And so, a trial within a trial, with no discovery having been done on this issue, would have ensued. Defendants' efforts to sneak in a non-infringement theory that had not been disclosed would have created confusion to say the least. The Court saw it then, and sees it now, as an underhanded tactic by Defendants.") (awarding fees).

      g.   Refusal to Identify Grounds of Invalidity Until Pantech's Expert Witnesses Had Already Testified.

OnePlus also engaged in inexcusable gamesmanship by refusing, despite repeated requests from Pantech, to identify which invalidity defenses its experts would set forth at trial—and then dropping many of those defenses during trial, including all defenses as to the SEPs. Ultimately, for each asserted patent, Pantech only learned what invalidity defenses (if any) would be presented by OnePlus *after* its experts had testified on infringement. OnePlus's blatant tactic of obfuscation

---

[8] Even after the Court held that "OnePlus has not preserved or presented a defense of patent misuse (or other unasserted equitable defenses) as disclosed in the pretrial order," (Dkt. 211 at 6), OnePlus still tried to keep the defense in the case. *See* Dkt. 217, Amended Joint Final Pretrial Order, at 4.

PUBLIC VERSION

resulted in a substantial waste of trial time, as Pantech presented dependent claims to the jury that were redundant once invalidity was no longer being contested, and an even larger waste of Pantech's attorney and expert time on the eve of and after trial had already begun, as they prepared for defenses that would never be raised.

The parties' correspondence on this issue demonstrates that OnePlus unreasonably delayed in narrowing its defenses. Pantech upheld its own obligations: it informed OnePlus that it would provide its final election of claims after the Court ruled on outstanding summary judgement and motion *in limine* issues, and true to its word, provided its final list of claims on March 8, exactly a week after the Court's March 1 Order on motions *in limine*. *See* Ex. 30 (March 8, 2024 email from Bakewell to Schubert). In fact, Pantech proceeded to trial asserting only 10 asserted claims.

Pantech had requested that OnePlus promptly respond with notice of the invalidity grounds that it intended to proceed on—as OnePlus was of course entitled to preserve all grounds, but Pantech did not want to waste time on invalidity grounds that would not be presented. A reminder of this request was stated succinctly in a March 18th email to OnePlus:

> To be clear, Pantech has now provided OnePlus exactly those claims that it intends to present at trial, exactly as we said we would. Pantech's request, that OnePlus likewise "confirm[s] [] what invalidity positions you intend to present at trial," is not unduly burdensome or indeed anything out of the standard, minimum expectations of parties entering a jury trial. If OnePlus plans on presenting every invalidity ground that it has preserved, it has the right to do so, but based on your email it does not appear that this is OnePlus's plan. And a rolling narrowing process during the week before trial is highly prejudicial as Pantech prepares its case.

Ex. 31 (March 18 email from Fussell to Gass). All Pantech sought was to avoid gamesmanship, but this was denied.[9]

---

[9] OnePlus dropped certain references (albeit subject to unilateral conditions) and blandly informed Pantech on March 17th that it was "in the process of considering whether to further narrow the defenses that will be presented," but even at this stage, a week before trial, OnePlus was depriving Pantech of notice of what it would ***actually*** be disputing. *See* Ex. 32.

PUBLIC VERSION

Instead, Pantech entered trial having prepared for every remaining invalidity ground, and only learned on a rolling basis during trial what defenses OnePlus would present. For example, OnePlus first informed Pantech on the evening of March 25th—after Dr. Cooklev had already testified as to infringement of the dependent claims of the '247, '839, and '954 Patents—that "OnePlus provides notice that it will not present invalidity defenses to any of the SEP patents." *See* Ex. 33. Moreover, at best, Pantech could only ***infer*** starting on the evening of Tuesday, March 26th (after Mr. Mauro and Dr. Stevenson had testified) that OnePlus would not be presenting any invalidity theories based on the Sugiyama, Kim, and Kinoshita references for the non-SEP patents, because these exhibits were not disclosed for use with Dr. Kia in OnePlus's nightly disclosures. *See* Ex. 34 (providing list of exhibits for use with Dr. Kia). In fact, OnePlus ***never*** explicitly confirmed that it was dropping such prior art defenses. And Pantech only learned that Dr. Kia would not be presenting a written description challenge to the '654 Patent on Wednesday, March 28th, in the context of OnePlus's objections to Mr. Mauro's rebuttal demonstrative slides (OnePlus objected on the basis that Dr. Kia would not present this defense). *See* Ex. 35.

In sum, Pantech spent substantial time during and before trial preparing for invalidity defenses that were never presented to the jury, and the jury spent time hearing evidence relating to dependent claims that were superfluous in view of OnePlus not raising any invalidity defense. In retrospect, the absence of these invalidity theories from OnePlus's opening arguments and OnePlus's general insistence to the Court that the proposed trial time allocated to each party would be sufficient were indications that OnePlus had already decided not to present these defenses, but Pantech did not know this at the time that it had to prepare its case and present its own witnesses.

This additional gamesmanship wasted resources, supporting a finding that this case was exceptional. *See Optis Wireless*, 421 F. Supp. 3d at 415 ("Delay in withdrawing claims (or defenses thereto) can support a finding that a case is exceptional").

      h.   <u>Raising Trial Disputes before Dropping Prior to Argument; Shifting Objections.</u>

In several instances during this litigation, including during trial, OnePlus maintained baseless disputes, forcing Pantech to brief the issues, only to capitulate after Pantech (and often the Court) had spent considerable time addressing them. Such behavior also supports an exceptional case. *See, e.g.*, *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2018 U.S. Dist. LEXIS 34908, *14 (E.D. Tex. March 5, 2018) ("the record is replete with instances of Innolux engaging in improper or wasteful discovery conduct, including waiting until moments before hearings to resolve disputes").

For example, OnePlus attempted to belatedly raise new indefiniteness grounds through the expert report of Dr. Kakaes. Pantech accordingly moved to exclude such opinions. Pantech then proposed a reasonable compromise in its Reply, once OnePlus's position was known: "If Dr. Kakaes wishes to *only* explain to the jury that his understanding of the claim language is based on the grammatical tweaks he lists at ¶¶ 67, 68, and 70, without any further discussion of 'ambiguities,' 'errors,' 'not making sense,' or similar pejorative characterizations of the claims, Pantech has no objection." *See* Dkt. 116 at 5. But OnePlus rejected this, arguing that "Dr. Kakaes should be permitted to provide the basis for both his understanding of the claim language and the reason he offers the corrections to the claims." *See* Dkt. 133 at 4. Yet the morning of oral argument, OnePlus capitulated to Pantech's compromise offer, and the parties explained that: "Dr. Kakaes [can] testify as to what grammatical tweaks he made to understand the claims but he cannot say that the claims are uncertain 'or any of the reasons behind it.'" *See* Dkt. 178 at 26. This compromise could have been reached at a meet and confer.

PUBLIC VERSION

Continuing its pattern of failing to meaningfully meet and confer, OnePlus did not meaningfully participate in the nightly, Court-ordered meet and confers during trial until the Court's admonishment of the parties on the evening of Tuesday, March 26th.

For example, despite the intervening meet and confer where Pantech provided support and reasoning for its positions, OnePlus filed ***exactly the same*** objections to the Court at 10pm as it provided to Pantech at 8:30pm. *Compare* Ex. 36 (8:30pm objections) *with* Ex. 37 (10pm objections). Only after Pantech submitted its response to the Court at midnight (Ex. 38), OnePlus withdrew its objections at 7:30am (Ex. 39). This happened again the next night: OnePlus filed exactly the same objections to the Court at 10pm (Ex. 40) as it provided to Pantech at 8:30pm (Ex. 41), despite the intervening meet and confer, and only withdrew those objections (Ex. 42) after Pantech briefed the issues at midnight (Ex. 43).[10] While the trial management timelines were necessarily tight, the volume of dropped OnePlus objections over the first two days paired with the Court's admonishment stopping the behavior establishes that most of OnePlus's objections were baseless and could have been resolved through productive meet and confers.

While OnePlus's conduct was seemingly curtailed by the Court's subsequent admonishment of the parties on the evening of Tuesday, March 26th, they are also part of a larger pattern. OnePlus wasted Pantech's time and judicial resources diverting Pantech's and the Court's attention to disputes that should not have been contested in the first place. Meet and confer should not be just a Court-ordered time to entrench, but rather to seek compromise so that issues do not need to be brought before the Court.

---

[10] For its damages objections, OnePlus did not drop the dispute, but instead presented entirely different objections (with no notice to Pantech) at oral argument, surprising both Pantech and the Court. *See* Trial Tr. (March 26) at 408:15-409:19.

█████████████████████████████████

OnePlus's pattern of only agreeing to Pantech's offered compromises moments before arguing the issues before the Court strongly suggests that OnePlus didn't take its meet and confer obligations seriously, but rather sought to maintain disputes wherever possible without compromise. This, too, was part of a pattern of conduct that is exceptional in the aggregate.

i.  Raising Issues of Standing During Trial.

OnePlus also played another, highly disruptive card for the first time during trial, in an echo of its earlier attempt to inject patent misuse into the case. On Wednesday, March 27th, two days into trial, OnePlus surprisingly raised a supposed issue of Constitutional standing before the Court and that OnePlus would raise the issue in a motion for JMOL later that day. *See* Fussell Decl. at ¶ 4. Given the gravity posed by such an argument, Pantech spent significant attorney time on Wednesday to researching both the facts and the law regarding this issue so that it could be prepared to respond when the motion was raised. *See id.* at ¶ 5.

OnePlus could have raised this issue nearly a year earlier. OnePlus possessed the agreement on which this argument appears to be based by April 11, 2023, and had the opportunity to ask about any surrounding circumstances during discovery but did not do so. Ex. 44 (Apr. 11, 2023 email from Cannom to Miller). And it appears that OnePlus was aware of this issue heading into trial: on Saturday, March 23, OnePlus asked by email "did Pantech Corp. ever '████████
███████████████████████████████████' of the ████████████
████████ (DTX 005) as required by ████████ of that agreement?" (*See* Ex. 29 (email from Airan to Fussell)). This email did not raise or even suggest standing as an issue, but in retrospect suggests that OnePlus was considering a new defense of standing by at least this time. Indeed, when OnePlus raised the issue to the Court on the morning of March 28th, OnePlus first suggested that the issue had been "raised Saturday or Sunday" with Pantech (*see* Trial Tr. (March 28 sealed) at 4:2-4), presumably referring to this oblique email, before quickly pivoting to admitting that "I'm

26

PUBLIC VERSION

raising [standing] now" (*id.* at 4:4-9). In fact, at no point prior to the morning of Wednesday, March 27th, after Pantech's witnesses had testified, did OnePlus identify to Pantech any standing issue or suggest that standing would be raised during trial. The only logical explanation was that OnePlus was intending to raise the issue by surprise.

This disruption should not have been brought during trial. As the Court stated, "I very carefully reviewed… the pretrial order that the parties had proposed, and… issues like this that are raised at the eleventh hour literally on the last day of evidence puts us all in a difficult position." Trial Tr. (March 27 sealed) at 6:3-8. While the Court deferred the issue to post-trial briefing, the full day between OnePlus alleging an issue of Constitutional standing and bringing a motion for JMOL diverted much of Pantech's trial team during this time to researching this issue and preparing a detailed response, instead of focusing on OnePlus's witnesses' testimony. Even assuming the distraction at such a critical time was not intentional, the tactic was incredibly prejudicial.

At absolute best, OnePlus's behavior fits the same pattern of delay, surprise, and obfuscation outlined in the other parts of this motion.

      2.    *OnePlus Litigated a Weak Case.*

A case can be found to be exceptional either in view of litigation misconduct or a weakness of litigation position: here, OnePlus's pattern of wasteful litigation misconduct should be considered alongside the weak merits of its litigation positions, as ultimately presented to the jury during trial.

PUBLIC VERSION

Despite nominally preserving nine prior art-based invalidity arguments based on seven alleged prior art references going into trial (along with two written description arguments),[11] OnePlus only elected to present the jury with two invalidity grounds: based on Tannenbaum for the '052 Patent and Goren for the '654 Patent. And even these supposedly best prior art references were not particularly close to the claimed inventions. Despite the '052 Patent relating to a GUI invention for mobile terminals (as was acknowledged by the Court as early as its claim construction Order, *see* Dkt. 51 at 42 ("The '052 Patent concerns the increasing frequency with which users run numerous applications on a mobile terminal")), Tannenbaum dated to 1991, before the introduction of modern mobile terminals, and was primarily intended for use on an IBM desktop computer. *See* DTX 050 (Tannenbaum). And for the '654 Patent, Goren (DTX 052) was an invention directed to a keyboard, not to clarifying any user touch in a "touch region," as was core to the invention of the '654 Patent and required by claim 1. *See generally*, PX 003 ('052 Patent). Neither reference was reasonably capable of satisfying OnePlus's burden to show anticipation by clear and convincing evidence.[12]

The weaknesses in OnePlus's noninfringement arguments were also substantial. OnePlus did not move for summary judgment of noninfringement of any SEP, and its non-waived arguments regarding the non-SEPs have already been deemed by the Court to be flawed as they overlooked circumstantial evidence proffered by Pantech (Dkt. 196 at 11-12) and merely raised disputes of fact (*id.* at 24). In trial, OnePlus elected to not even present most of the noninfringement

---

[11] These totals do not include the several references and written description arguments only dropped by OnePlus the week before trial. *See* Ex. 32.

[12] The weaknesses of OnePlus's invalidity arguments were so substantial that Pantech even felt confident not petitioning the Court for extra time at the end of trial to present rebuttal validity testimony concerning the '654 Patent, and accordingly did not present any rebuttal expert for the '654 Patent's validity.

PUBLIC VERSION

arguments from its experts' reports (*see, e.g.*, Trial Tr. 3.27 at 791:18-25 (Dr. Kakaes surprisingly admitting that "I proposed not making this argument in this case")), and the arguments that it did make were contradicted by the evidence shown by Pantech.

OnePlus also attempted to make an improper claim construction-based non-infringement argument on the grounds that, allegedly, the "processing unit" must be a separate unit from the "control unit." *See, e.g.*, Trial Tr. 3/26 at 525:21-526:3, 527:18-531:18 ("So why didn't you do that if these are two different -- control unit and processor are two different things in the claims, why didn't you do that investigation?"). When challenged early in the line of questioning, OnePlus told the Court that "this was addressed by the claim construction order, and the order says they're separate processors… It's right in the claim construction order" (*see* Trial Tr. 3/26 at 526:13-527:1) and was temporarily allowed to proceed. ***But this was not the case***: the Court's claim construction order said no such thing, and the Court had to provide a corrective instruction to the jury. *See* Trial Tr. 3.26 (sealed) at 57:15-22. OnePlus's attempts at trial to make belated claim construction arguments further underscores the weakness of its case.

Finally, the Court may even look to OnePlus's own apparent lack of confidence in noninfringement or invalidity for evidence of the weakness of OnePlus's litigation position. In opening arguments, ***OnePlus did not provide a single reason*** why its phones did not meet any of the asserted claim limitations. *See, e.g.*, Trial Tr. 3/25 at 270:15-271:4 (simply stating that there was no infringement and that "I won't preview it for you now"). OnePlus likewise did not discuss a single prior art reference or invalidity ground. *See id.* at 271:15-18 (offering just a single sentence about invalidity in general). While OnePlus did devote a short statement during closing to noninfringement of each patent (and invalidity of the non-SEPs), at no point were these issues of

29

infringement or validity seriously in dispute. Indeed, that OnePlus did not prevail on any disputed issue undercuts any argument that this was a particularly close case.[13]

OnePlus also cannot blame the shortness of trial time for its failure to present a more robust defense. Although time was indeed short, OnePlus declined to join Pantech's pretrial request for more time. *See* Trial Tr. (March 21) at 164:5-20. OnePlus even had about an hour of allocated trial time which it never used. It appears that OnePlus knew that it had only weak defenses to present, and opted not to present many defenses that it insisted upon preserving heading into trial (*see supra* Section I(B)(1)(g), regarding dropping invalidity defenses after Pantech's witnesses had testified) and attempted to just run out the clock on Pantech and limit trial time—this behavior does not indicate any strength of OnePlus's litigating position.

*     *     *

Zealous advocacy has a rightful place within litigation, but the same cannot be said for OnePlus's tactics of delaying resolution of straightforward matters, refusing to prepare witnesses or provide notice of issues it intends to contest, providing inaccurate sales data without correction, and consistently seeking to reopen fact and expert discovery and introduce new issues into the litigation on the eve and during trial, among other conduct detailed above.

When taken in the context of OnePlus's willful infringement and the weakness of the case presented at trial, OnePlus's litigation behavior fully justifies the award of Pantech's attorneys' fees incurred after August 28, 2023, the date on which OnePlus finally rejected without basis Pantech's request for representative products and began a pattern of consistently engaging in

---

[13] Pantech understands that OnePlus intends to move for JMOL several issues, including infringement, validity, exhaustion, and damages. Each specific substantive argument that OnePlus chooses to make is best addressed in the context of the rebuttal to any such argument. The evidence does not support JMOL in favor of OnePlus on any of these issues; rather, it shows that this was not a particularly close case.

███████████████████████████████████████████

dilatory tactics,[14] making this, in aggregate, an exceptional case. *See generally*, *Georgetown Rail Equip. Co. v. Holland L.P.*, No. 6:13-CV-366-RWS, 2016 U.S. Dist. LEXIS 78365, at *70 (E.D. Tex. 2016) (a finding of willfulness "is a 'compelling' indication that this is an exceptional case"); *Elbit Sys. Land*, No. 2:15-cv-37-RWS at 50 (awarding fees because "Hughes's litigation strategies unnecessarily complicated the proceedings and needlessly increased costs"); *Monolithic Power Sys., Inc. v. O2 Micro Intern. Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013) ("litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285").

## III.    REQUEST FOR ENHANCED DAMAGES

Following four days of evidence, the jury delivered a verdict of willful infringement as to each asserted patent. *See* Dkt. 259 at 7. This verdict was supported by substantial evidence. The jury and Court heard extensive evidence of OnePlus committing holdout from Pantech's efforts to license its patent portfolio and refusing to analyze Pantech's patents in good faith—██████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████. This behavior was egregious and supports enhanced damages.

Here, OnePlus's holdout was particularly egregious, and it was combined with litigation misconduct that unreasonably raised Pantech's litigation costs. █████████████████████

████████████████████████████████████████████

████████████████). ████████████████████████████

---

[14] Indeed, based on OnePlus's indications that it will raise the waived issue of standing in post-trial briefing, despite the Court referring the parties to, *inter alia*, the recent analogous decision at *Fall Line Pats., LLC v. Zoe's Kitchen, Inc.*, No. 6:18-CV-00407-RWS (E.D. Tex. July 11, 2023) (*see* Trial Tr. (March 28 sealed) at 9:20-10:7), this pattern appears to be continuing after trial as well.

████████, but rather attempted to leverage the significant risks and expense of litigation (which it unnecessarily increased through its litigation behavior) to unfairly obtain a license rate far below market value.

In view of the jury's finding of willful infringement, in view of OnePlus's egregious holdout, and further in view of the additional factors supporting enhancement discussed below, OnePlus's behavior was inappropriate as a participant in the SEP ecosystem and the Court should enhance the damages as provided for by 25 U.S.C. § 284. Pantech submits that the enhancement should be at least $5 million.[15]

## A.    Legal Standard

Section 284 of the Patent Act provides that, in a case of infringement, courts "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. The decision to enhance a damage award is committed to the Court's discretion. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 579 U.S. 93, 103 (2016).

There is "no precise rule" for determining whether to enhance damages. *Id.* at 1927. The Supreme Court has held that the decision is appropriate in "cases typified by willful misconduct" (*id.* at 1934) or by "willful or bad-faith infringement" (*id.* at 1930). Ultimately, "subjective willfulness alone—*i.e.*, proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer,' []—can

---

[15] Pantech submits the suggested enhancement as a dollar figure rather than as a percentage in view of OnePlus's stated intention of challenging the amount of the jury's damages award. *See* Trial Tr. 3/29 at 1116:7-14; *see also Georgetown Rail Equip. Co. v. Holland LP,* Cause No. 6:13-cv-366, 2016 WL 3346084, at *21 (E.D. Tex. June 16, 2016) (Schroeder, J.) (enhancement of $1 million rather than a percentage of the jury's award). As requested, the enhancement is slightly less than 50% of the jury's award, but any reduction of the jury's award would not change the egregiousness of OnePlus's conduct, OnePlus's size, or any other pertinent factor, and thus enhancement of at least $5 million is warranted regardless of the damages ultimately assessed (subject to the statutory cap of 35 U.S.C. § 284).

PUBLIC VERSION

support an award of enhanced damages." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (citing *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016)). Nevertheless, this discretionary determination on enhancement requires the court to "take into account the particular circumstances of each case" and "consider all relevant factors." *Polara Eng'g Inc v. Campbell Co.,* 894 F.3d 1339 (Fed. Cir. 2018).

This Court has frequently turned to the *Read* factors as guideposts for the exercise of this discretion. *See e.g.*, *VirnetX*, 324 F. Supp. 3d at 863-64 (Schroeder, J.); *Georgetown Rail Equip. Co. v. Holland LP,* Case No. 6:13-cv-366, 2016 WL 3346084, at *17 (E.D. Tex. June 16, 2016) (Schroeder, J.). These non-mandatory, non-exclusive factors include (1) whether the infringer deliberately copied the ideas of another, (2) whether the infringer investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition, (5) the closeness of the case, (6) the duration of the defendant's misconduct, (7) remedial action by the defendant, (8) the defendant's motivation for harm, and (9) whether the defendant attempted to conceal its misconduct. *Read Corp. v. Portec Inc.,* 970 F.2d 816, 827 (Fed. Cir. 1992); *see also Polara Eng'g*, 894 F.3d 1339, 1355 (endorsing the optional use of the *Read* factors); *Georgetown Rail Equip. Co. v. Holland L.P.,* 867 F.3d 1229, 1244 (Fed. Cir. 2017) (same).

The ultimate decision to enhance damages need not rest on any particular factor, and not all relevant factors must favor enhancement. *See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1469 (Fed. Cir. 1997). Rather than any "rigid, mechanical assessment," the "touchstone for determining an award of enhanced damages" is the defendant's "egregious infringement behavior." *VirnetX*, 324 F. Supp. 3d at 864. Thus, while subjective willfulness alone is a sufficient basis to enhance damages, "[t]he paramount determination in deciding to grant enhancement and

33

PUBLIC VERSION

the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read,* 970 F.2d at 826.

### B. Enhanced Damages are Appropriate

OnePlus's holdout, litigation misconduct, and the merits of this case together make each of the nine *Read* factors favor enhancement (or at worst weigh as neutral). These factors are discussed below:

### 1. Whether OnePlus copied the ideas of another.

The first *Read* factor is whether OnePlus copied the ideas of Pantech. Here, the evidence establishes that OnePlus utilized chipsets and software originating from Qualcomm and Google. PX-231; PX-233; Trial Tr. (March 25-26) at 346:5-10, 425:5-12, 461:1-7, 570:7-19, 572:4-12. However, copying need not be direct: where a party copies or utilizes products that themselves were copied from the patentee, this *Read* factor is satisfied. *See, e.g.*, *VirnetX Inc. v. Apple Inc.*, No. 6:12-CV-00855-RWS, 2018 U.S. Dist. LEXIS 230877, *61-62 (E.D. Tex. Aug. 30, 2018); *Georgetown Rail*, 2016 U.S. Dist. LEXIS 78365, at *55-56.

The record is devoid of evidence of whether Qualcomm or Google themselves copied the ideas of the inventors. Nevertheless, the record is also devoid of any attempts by OnePlus to *avoid* copying the ideas of others by implementing products from Qualcomm and Google. This is critically important, especially with regard to the SEPs—Pantech had *declared* them essential to LTE and 5G wireless standards (Trial Tr. (March 25) at 316:4-9); therefore, implementers such as OnePlus who use chipsets that implement these standards are at least on notice of the risk that these chipsets incorporate the inventions of others (as was the case here).

OnePlus undertakes no modifications to Android code relevant to the accused functionalities for its own operating system (Trial Tr. (March 26) at 461:1-7) and apparently does not attempt to analyze Qualcomm's chipsets to make sure that they do not implement ideas from

████████████████████████████████████████

others (*id.* at 458:22-459:2). Indeed, OnePlus prevented discovery into whether it looks for patents

from others, inexplicably claiming attorney-client privilege. *See* Ex. 19 (Xiao Dep. Tr. excerpts)

at 110:9-111:23.

"[R]ecklessness towards copying alone merits some enhancement," and OnePlus was

certainly at least reckless with its implementation of Google and Qualcomm products. *See Barry*

*v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 112 (E.D. Tex. 2017). But even if this factor does not

favor enhancement, it is at best neutral according to the reasoning set forth by this Court in *VirnetX*,

given that OnePlus has not shown any behavior that would seek to mitigate the risk of copying:

> As to Factors 1 and 8, VirnetX has not presented any evidence of
> copying or motivation for harm. The parties disagree about the
> weight this lack of evidence should be given… The Court finds that
> these factors are neutral. Courts often find these factors neutral when
> there is no evidence of copying or motivation to harm. *See, e.g.*,
> [collecting cases]. Apple has not shown any behavior on its part
> relating to these factors that mitigates against an award of enhanced
> damages. Accordingly, Factors 1 and 8 are neutral.

*VirnetX Inc. v. Apple Inc.*, 324 F. Supp. 3d at 868-69. Accordingly, this first *Read* factor either

slightly favors enhancement or else is neutral.

2.    *Whether OnePlus investigated the scope of the patent and formed a good-faith*
      *belief that it was invalid or that it was not infringed.*

The second *Read* factor strongly favors enhancement in view of OnePlus's holdout and

slow-walk of any investigation of Pantech's patents.████████████████████████████

████████████████████ (*see* PX 025),████████████████████

███████████████████████████████████████. *See* Trial Tr. 710:4-711:1.

███████████████████████

███████████████. *See* Trial Tr. 293:3-294:16, 293:12-16, 299:1-6; 714:4-22. This investigation

did not move the ball forward.███████████████████████

████████████████████████████████████████



s. *See* DTX 248. OnePlus then blocked further discovery into any other form of investigation made by OnePlus into the scope of Pantech's patents, unreasonably claiming privilege. *See* Ex. 19 (Xiao Dep. Tr. excerpts) at 109:24-110:4 ("

Especially in view of OnePlus's weak and shifting theories at trial, the only conclusion supported by the evidence is that OnePlus did not come to any good faith belief in noninfringement or invalidity sufficient for this inquiry.[16] In fact,

, shows that OnePlus actively resisted performing any such inquiry in an attempt to holdout in its negotiations with Pantech. This behavior strongly favors enhancement.

*3.    OnePlus's behavior as a party to the litigation.*

OnePlus's unreasonable litigation tactics (coupled with holdout) have already been detailed with respect to Pantech's request to declare this case exceptional for the purpose of awarding attorneys' fees. *See* Section II(B)(1). These same tactics of delay and obfuscation additionally support enhancement of damages under this third *Read* factor, as these are the tactics of a party seeking to avoid an adjudication on the merits of patent infringement by any means necessary—*i.e.*, in combination with the holdout, they are the behavior of a party flouting the rules to bring the costs of litigation to bear against an owner of SEPs.

---

[16] Merely contesting infringement in some way during litigation is not enough to satisfy this factor—nearly every case features at least some argument of noninfringement. There is no evidence of any meaningful investigation of patent scope by OnePlus.

36

PUBLIC VERSION

Litigation misconduct bearing on enhancement includes "discovery abuses" and "acts that unnecessarily prolong litigation." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010). OnePlus's litigation misconduct fits these categories as well.

For example, as detailed in Sections II(B)(1)(a)-(d), OnePlus committed the discovery abuses of unreasonably refusing the use of representative products, failing to prepare Rule 30(b)(6) witnesses and unreasonably asserting privilege to prevent certain answers from being given, producing inaccurate sales data without correction, and pursuing fact and expert discovery long past procedural deadlines for doing so. This misconduct supports enhancement. *See, e.g.*, *Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 851 (E.D. Tex. 2012) (enhancing damages after noting that "Samsung also refused to agree to representative phones, making the presentation of evidence regarding 54 different models significantly more difficult, time consuming, and complicat[ing] the issues for the jury.")

As detailed in Sections II(B)(1)(e)-(i), OnePlus unnecessarily expanded and prolonged the parties' disputes by repeatedly injecting new defenses, theories, and arguments, requiring briefing to the Court to resolve what should never have occurred (even when OnePlus relented after Pantech briefed the issue). This too supports enhancement. *See Eidos Display*, 2018 U.S. Dist. LEXIS 34908 at *14 ("the record is replete with instances of Innolux engaging in improper or wasteful discovery conduct, including waiting until moments before hearings to resolve disputes… This sort of conduct favors enhancement."). And OnePlus's shifting-sands approach to its defenses at trial (refusing to even provide Pantech notice of what invalidity defenses would be presented to the jury) easily "cross[ed] the line from zealous advocacy into gamesmanship," also supporting enhancement. *See Barry*, 250 F. Supp. 3d at 117.

37

PUBLIC VERSION

OnePlus's litigation misconduct also stands out when considered with the weakness of its litigation positions, as detailed above at Section II(B)(2). Accordingly, this *Read* factor favors enhancement. *See Georgetown Rail*, 2016 WL 3346084, at *18 ("In sum, when considered individually, none of Holland's actions warrants a finding that Holland engaged in litigation misconduct. However, when considered collectively, and in light of the weakness of Holland's defenses, Holland's actions reveal an attempt to needlessly multiply proceedings and prolong the case. Accordingly, this factor slightly favors enhancement.").

    4.    *OnePlus's size and financial condition.*

"There is no dispute that [OnePlus] is a large company with billions in revenue. Thus, this factor favors enhancement." *See Eidos Display*, U.S. Dist. LEXIS 34908 at *14; *see also* PX-227; DTX 253.0046, .0048; Trial Tr. at 665:11-15. Indeed, the case law recognizes that "[p]unishing a larger company in a stronger financial condition may call for higher damages." *Pavo Sols. LLC v. Kingston Tech. Co.*, No. 8:14-cv-01352, 2021 U.S. Dist. LEXIS 139185, *31 (C.D. Cal. Feb. 16, 2021).

    5.    *The closeness of the case.*

This was not a close case. This can be seen in the jury's award of substantial damages and its decision in favor of Pantech on every disputed issue. It is also seen in OnePlus's failure to contest validity for the SEPs or strongly contest many other issues. *See also* Section II(B)(2) (detailing OnePlus's litigation weaknesses); *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-01528-JRG, 2018 U.S. Dist. LEXIS 52833, *20 (E.D. Tex. March 29, 2018) ("That a defendant's position on various defenses 'may have required resolution at trial . . . does not dictate that the case was close.'").

As established above, Pantech's demands going into litigation were not unreasonable. Pantech simply wished for OnePlus to take a patent portfolio license at the same FRAND rate

PUBLIC VERSION

███████████████████████████████████████

agreed to by other entities ████████████████████████ (*see* Trial Tr. (March 25 sealed)
at 10:4-18:20), or else negotiate in good faith, rather than drawing out negotiations and using the
threat of litigation costs to extract an unfairly low portfolio rate. The jury clearly found Pantech's
licensing position to be reasonable. *See* Dkt. 259 (jury verdict).

Instead, OnePlus forced Pantech to litigate through an expensive jury trial, making this
*Read* factor strongly favor enhancement. *See Georgetown Rail*, 2016 WL 3346084, at *19 ("this
was not a close case and given the reasonable relief Georgetown requested, it could have been
resolved in a more efficient manner. Accordingly, this factor favors enhancement.").

6.    *The duration of OnePlus's misconduct.*

OnePlus's misconduct had commenced at least by the time that Pantech provided OnePlus
a term sheet and list of patents on January 21, 2021 (DTX 238; Trial Tr. (March 25) at 291:2-
292:6),[17] and has continued thereafter. But even before damages commenced, Pantech had sent an
introductory letter and patent listing (*see* PX 025 (████████████████)), and OnePlus
had already declined a meeting (DTX 251; *see also* Trial Tr. (March 25) at 288:17-20). While an
allowance could be made for a period of reasonable, good faith negotiations, this is not what
occurred.



.[18] Trial Tr. 710:4-711:1. ████████████

████████████████████████████████████████

---

[17] The jury found that OnePlus's accused products were infringing all asserted patents at least as
of this date. *See* Dkt. 259 (jury verdict).

[18] ████████████████████████████████████████
████████████████. DTX 239. ████████████████████████████
████████████████████████████ Trial Tr. 709:15-19.

PUBLIC VERSION

██████████████████████████████████████████

███████████████████████ *See* Trial Tr. 293:3-294:16, 293:12-16, 299:1-6; 714:4-22 ██████

████████████████████████████████████████). ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████. *See* Trial Tr. 298:2-4, 301:15-302:25.

As an implementer of an adopted standard, OnePlus was obligated to "negotiate in good faith" if it wished to take advantage of FRAND protections with regard to Pantech's SEPs. *See G+ Commc'ns, LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00078-JRG, 2024 U.S. Dist. LEXIS 10789, at *18-19 (E.D. Tex. Jan. 22, 2024) (findings of French law pursuant to Fed. R. Civ. P. 44.1 relevant to FRAND framework); DTX 215 (correspondence from Yori Xiao repeatedly reiterating a desire to adhere to the FRAND framework but failing to provide an offer despite numerous requests). As even OnePlus will acknowledge, a technology-implementing company such as OnePlus must negotiate in good faith as a part of the FRAND framework. *See, e.g.,* Trial Tr. (March 27) at 704:9-15. OnePlus has never done so; it instead wished to have things both ways, wielding FRAND provisions against Pantech while not itself engaging in good faith and instead holding out for a sub-market license.

Thus, OnePlus's misconduct has lasted from at least January 21, 2021, to the present day, with no apparent end in sight, weighing in favor of enhancing damages. *See Broadcom Corp. v. Qualcomm Inc.*, No. 5-cv-467, 2007 U.S. Dist. LEXIS 99068, at *14 (C.D. Cal. Aug. 10, 2007) (finding that infringement for "approximately two years" favored enhancement); *Eidos Display*, 2018 U.S. Dist. LEXIS 34908, at *17 (finding that infringement "for several years" favored

PUBLIC VERSION

████████████████████████████████████████

enhancement); *Tinnus Enters.*, 369 F. Supp. 3d at 744 (noting cases establishing that "continuing to sell the infringing products after notice of infringement and during the course of litigation supports enhancement" under this factor).

    7.    *Remedial action by the defendant.*

OnePlus took no remedial action after learning of the Asserted Patents. In fact, ████████



*See* Xiao Dep. Tr. 109:24-110:4.[19] ████████████████████████████████

████ the only demonstrated intent of OnePlus has been to largely disregard Pantech and its patents. *See* Trial Tr. 293:3-294:16, 293:12-16, 299:1-6; 714:4-22.

As OnePlus undertook no remedial action, or apparently even investigated the Pantech patents, this factor weighs in favor of enhancement.

    8.    *OnePlus's motivation for harm.*

OnePlus's motivation for harm is no secret. As a technology-implementing company, OnePlus has an incentive to holdout and drive down the rates provided to owners of SEPs, such as Pantech. ████████████████████████████████████████

████████████████████████████████████████████████

████ Trial Tr. (3.27 sealed) at 71:1-13.

---

[19] As noted in the context of an award of fees, this deposition occurred in the morning China time, and therefore far outside of the "business hours" for which the Eastern District of Texas provides a hotline to address such improper objections. Pantech therefore had no real time recourse and was forced to choose between proceeding with the case deadlines or pausing the case to file another motion to obtain discovery. Pantech chose to proceed with the trial schedule.

PUBLIC VERSION

Mr. Xiao claimed not to know what it meant to holdout as a potential licensee, or that "the point of holding out is to drive down the price of the license by driving up the cost of enforcement" (*see* Trial Tr. 705:8-24), but then admitted that he knew that OnePlus was found to engage in exactly this conduct in litigation with Nokia in the United Kingdom (*id.* at 726:8-21). While denying knowledge of such behavior, OnePlus has engaged in a pattern of holding out in negotiations with patent holders. OnePlus's denials that it was engaging in this behavior are simply not credible.

Absent sufficient judicial checks on its behavior, which can be provided through enhanced damages and an award of fees, OnePlus has a clear financial motivation to continue its behavior to lower rates paid to standard essential patent holders, using a supposed FRAND cap on damages to holdout for better rates from Pantech in order to affect its dealings with the industry at large. This goes beyond a standard adversarial negotiation generally present between a licensor and licensee; OnePlus was motivated to improperly holdout from negotiations with Pantech beyond the merits of this case to harm holders of "older patents" generally and thereby reduce the royalty stack applied to its products. *See* Trial Tr. 705:8-24.

This motivation to harm Pantech as an SEP owner explains OnePlus failing to provide reasonable offers for a license and favors enhancement.

    9.    *Whether OnePlus attempted to conceal its misconduct.*

OnePlus repeatedly tried to stymie discovery into relevant facts on the basis that the accused functionality was supposedly implemented only by Google or Qualcomm. *See, e.g.*, Ex. 18 (Sept. 22, 2023 Letter from Kopinski to Miller) (withdrawing prior agreement to provide deponent because "the only entity with relevant technical information regarding these non-SEP-topics is Google… there would be no reason for Pantech to seek further deposition testimony from OnePlus on technical topics regarding non-SEP issues" and "the only entity with relevant technical

42

PUBLIC VERSION

information regarding the SEP-related topics is Qualcomm… there would be no reason for Pantech to seek further deposition testimony from OnePlus on technical topics regarding SEP issues").

But it turns out that this was not the case. Pantech stipulated that "[i]t is an uncontested fact that the features accused of infringing the '654 patent and '052 patent are implemented by standard Android that are not changed by OnePlus" (Trial Tr. (March 25-26) at 461:1-4) in order to keep the case moving according to its schedule, but OnePlus's engineers had testified that, more accurately, OnePlus implements its own operating system based on Android (*see id.* at 461:4-5 ("To the extent that OnePlus has modified some aspects of standard Android…"); Ex. 20 ("Oxygen OS is the operating system of the Accused Products")). Moreover, the major source of LTE and 5G compliance relied upon by Pantech was ***OnePlus's own testing reports***, which OnePlus undoubtedly had access to. *See* PX 052 to PX 070.

OnePlus also produced inaccurate revenue figures in this case. OnePlus's corporate representative testified that the spreadsheet produced as ONEPLUS0145481 (trial exhibit PX-175) had numerous errors (*see* Ex. 19 (Xiao dep. tr.) at 63:2-67:4) and that "we could make a correction" (*id.* at 68:23-69:3). Pantech immediately requested "accurate sales data for sales of the Accused Devices in the United States" to correct these errors (*see* Ex. 45 (Oct. 20, 2023 Letter from Miller to Gass) at 2-3), but no corrections were ever provided.

Furthermore, Pantech repeatedly requested that OnePlus produce these certain OnePlus SEP licenses. *See, e.g.*, Ex. 45 (Oct. 20, 2023 Letter from Miller to Gass). During Mr. Xiao's deposition, however, it was made clear that OnePlus had withheld relevant license agreements. *See id.* (discussing Mr. Xiao's deposition). Pantech explicitly requested those agreements, but OnePlus responded they involved OPPO, not OnePlus, and thus OnePlus was unable to produce the agreements. Ex. 46 (Oct. 24, 2023 Letter from Kopinski to Miller) at 2. But OnePlus's

corporate representative, at deposition and trial, was an employee of OPPO. Trial Tr. 679:10-15. Indeed, Mr. Xiao is Senior IP Counsel who handles patent licensing. *Id.* at 689:16-23. If OnePlus's patent licensing is handled by OPPO, and an OPPO representative appeared on behalf of OnePlus at trial, it defies belief that OnePlus could not obtain OPPO license agreements for production in this case. It is clear that OnePlus was selectively choosing when it would and would not hide behind corporate formalities to best suit its needs.

Accordingly, OnePlus tried to both conceal relevant technical information concerning the accused functionalities and its true revenues from sales of the accused products in the United States. This was an attempt to conceal its infringing conduct and confuse resolution of the parties' disputes, which weighs in favor of enhancement. *See Dominion Res. Inc. v. Alstom Grid, Inc.*, No. 15-224, 2016 U.S. Dist. LEXIS 136728, *69-70 (E.D. Pa. Oct. 3, 2016) ("being less than fully candid" with respect to discovery obligations weighs in favor of enhancement at this factor).

*      *      *

In sum, each of the nine *Read* factors either supports damages or else is at worst neutral. This exceeds any threshold for enhanced damages by way of comparisons to other cases from this district. *See VirnetX*, 324 F. Supp. 3d at 870 (awarding 50 percent enhancement in a case where only four factors were met); *Georgetown Rail Equipment*, 2016 WL 3346084 at *21 (awarding 65 percent enhancement in a case where six *Read* factors were satisfied).

Pantech requests enhancement of at least $5 million as appropriately punitive for the dual (and complimentary) tactics committed by OnePlus of holding out from the license offered by Pantech while simultaneously raising litigation costs and stymying discovery. Left unchecked, such behavior would be highly detrimental to owners of SEPs, as their FRAND-capped damages

PUBLIC VERSION

ceilings are played against litigation costs in a downward spiral as each implementer would be able to holdout and secure a lower portfolio rate than the preceding licensee.

An award in the range of the requested damages would be comparable on a percentage basis with the awards from *VirnetX* and *Georgetown Rail* and is also calibrated as meaningful to an entity with the significant revenues and market clout of OnePlus. *See* Trial Tr. at 665:11-15. As the purpose of enhanced damages is essentially punitive and to deter similar conduct in the future (*see Halo,* 579 U.S. at 97-100), the enhancement should not be affected by any hypothetical change to the amount of the jury award—the award should remain significant to deter such conduct in the future from an entity the size of OnePlus. *See* Bowman Heiden & Matthew Rappoprt, *How Weak are Strong Patents: Patent Holdout & Small(er) Technology Firms*, 38 BERKLEY TECH. L. J. 349, 393 (2023) (discussing the economic harm of holdout and suggesting that "U.S. district courts could add enhanced damages based on willful infringement that could overcome the total economic impact of the cost and delay of litigation") (Ex. 47).

Accordingly, for the foregoing reasons, enhancement is squarely supported in this litigation and should be used to deter holdout-type conduct combined with unreasonably raising litigation costs by implementers of standard essential patents. Such conduct abuses the FRAND framework and unreasonably uses the Court as a tool to attempt to extract unfairly low licensing rates. Pantech respectfully submits that the amount of enhancement, squarely within the discretion of the Court, should be at least $5 million.

Dated: April 26, 2024                              Respectfully submitted,

                                                   */s/ James A. Fussell, III*
                                                   Geoffrey Culbertson
                                                   Kelly Tidwell
                                                   PATTON TIDWELL & CULBERTSON, LLP
                                                   2800 Texas Blvd. (75503)

Post Office Box 5398
Texarkana, TX 75505-5398
(P) (903) 792-7080
(F) (903) 792-8233
gpc@texarkanalaw.com
kbt@texarkanalaw.com

James A. Fussell, III
Jamie B. Beaber
Saqib J. Siddiqui
Tiffany A. Miller
Baldine Paul
Clark S. Bakewell
Tariq Javed
Seth W. Bruneel
Courtney Krawice
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000
jbeaber@mayerbrown.com
jfussell@mayerbrown.com
ssiddqui@mayerbrown.com
tmiller@mayerbrown.com
bpaul@mayerbrown.com
cbakewell@mayerbrown.com
tjaved@mayerbrown.com
sbruneel@mayerbrown.com
ckrawice@mayerbrown.com

Graham (Gray) M. Buccigross
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
(650) 331-2000
gbuccigross@mayerbrown.com

Gregory J. Apgar
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
gapgar@mayerbrown.com

Luiz Miranda

PUBLIC VERSION

MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
lmiranda@mayerbrown.com

*Counsel for Plaintiffs Pantech Corporation and Pantech Wireless, LLC*

PUBLIC VERSION

███████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 26th day of April, 2024, with a copy of this document via email.

*/s/ Clark S. Bakewell*
Clark S. Bakewell


## CERTIFICATE OF CONFERENCE

I hereby certify that Plaintiffs Pantech Corporation and Pantech Wireless, LLC have complied with the requirements of Local Rule CV-7(h) governing this case. Specifically, the parties held a telephonic meet and confer on April 25, 2024, regarding the relief requested in this Motion. Counsel for Defendant indicated that Defendant opposes this Motion.

*/s/ Clark S. Bakewell*
Clark S. Bakewell

████████████████████████████

██████████████████████████████████████

███████████████████

██████████████

███████████████

1