PUBLIC VERSION

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

PANTECH CORPORATION and PANTECH
WIRELESS, LLC,

        *Plaintiffs*,

    v.

ONEPLUS TECHNOLOGY (SHENZHEN) CO.,
LTD.,

        *Defendants*.

Case No. 5:22-cv-00069-RWS

# PLAINTIFFS' OPPOSITION TO ONEPLUS'S MOTION TO DISMISS FOR <u>LACK OF STANDING</u>

PUBLIC VERSION

████████████████

## TABLE OF CONTENTS

I.   FACTUAL BACKGROUND........................................................................ 1

II.  LEGAL STANDARDS ............................................................................... 3

III. ARGUMENT ............................................................................................. 4

   A.  Pantech Inc., GoldPeak, and Pantech Corp. Have Satisfied the Conditions of the
████████████████............................................................... 4

      1. Pantech Corp. Executed an Agreement Expressly Taking Assignment of the
Patents Subject to the ████████████. ........................................... 5

      2. Pantech Corp. Executed an Agreement Implicitly Taking Assignment of the
Patents Subject to the ████████████. ........................................... 5

      3. OnePlus's Cited Cases Do Not Support a Conclusion That The Assignment to
Pantech Corp. Is Void. ................................................................... 7

   B.  OnePlus Cannot Enforce the ████████████ .................................. 9

   C.  OnePlus's Challenge to Standing Has Been Waived. ........................... 13

IV. CONCLUSION ....................................................................................... 15

PUBLIC VERSION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3ʳᵈ Eye Surveillance, LLC v. e-Watch Corp.*,
   2017 WL 11630485 (E.D. Tex. June 19, 2017).......................................................10

*Alarm.com Inc. v. Vivint, Inc.*,
   2023 WL 6319348 (E.D. Tex. Spt. 6, 2023)............................................................3

*Am. Dirigold Corp. v. Dirigold Metals Corp.*,
   125 F.2d 446 (6th Cir. 1942) ................................................................................6

*Au New Haven, LLC v. YKK Corp.*,
   210 F. Supp. 3d 549 (S.D.N.Y. 2016).....................................................................8

*Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc., et al.*,
   2021 WL 8441748 (E.D. Tex. Dec. 22, 2021)........................................11, 14, 15

*Bd. of Trs. of Leland Stanford Jr. Un. v. Roche Molecular Sys., Inc.*,
   563 U.S. 776 (2011)..............................................................................................15

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*,
   773 F.3d 110 (2d Cir. 2014)..................................................................................10

*Datatreasury Corp. v. Wells Fargo & Co.*,
   522 F.3d 1368 (Fed. Cir. 2008).............................................................................5

*Dorr-Oliver, Inc. v. United States*,
   432 F.2d 447 (Ct. Cl. 1970) .................................................................................11

*Ensley v. Cody Resources, Inc.*,
   171 F.3d 315 (5th Cir. 1999) ..........................................................................13, 15

*Focus Prods. Group Int'l, LLC, et al. v. Kartri Sales Co., Inc.*,
   2021 WL 1946756 (May 14, 2021) .......................................................................13

*GEM Holdco, LLC v. RDX Techs. Corp.*,
   167 A.D.3d 491 N.Y.S.3d 170 (2018) ..................................................................12

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*,
   137 S. Ct. 1523 (2017)...........................................................................................12

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   568 U.S. 519 (2013)...............................................................................................13

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
  925 F.3d 1225 (Fed. Cir. 2019)....................................................................3, 14

*Lone Star Tech. Innovations, LLC v. ASUSTEK Computer Inc.*,
  2022 WL 1498784 (E.D. Tex. Mar. 18, 2022) ........................................15

*Mendel v. Henry Phipps Plaza West Inc.*,
  6 N.Y.3d 783, 811 N.Y.S.2d 294, 844 N.E.2d 748 (2006)....................10

*NAMA Holdings, LLC v. Related World Market Center*,
  LLC, 922 A.2d 417 (Del. Ch.2007) ........................................................11

*Nat'l Football League Players' Concussion Inj. Litig.*,
  923 F.3d 96 (3d Cir. 2019)........................................................................8

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*,
  320 F.3d 1354 (Fed. Cir. 2003)...............................................................15

*Rajamin v. Deutsche Bank Nat. Tr. Co.*,
  757 F.3d 79 (2d Cir. 2014)......................................................................10

*Renfrew Ctr. v. Blue Cross & Blue Shield of Cent. New York, Inc.*,
  1997 WL 204309 (N.D.N.Y. Apr. 10, 1997) ...........................................8

*Sanitec Indus. v. Micro-Waste Corp.*,
  2006 WL 3455000 (S.D. Tex. Nov. 28, 2006) ..........................................5

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
  959 F.3d 1065 (Fed. Cir. 2020)..........................................................3, 14

*Spinex Laby's Inc. v. Empire Blue Cross & Blue Shield*,
  622 N.Y.S.2d 154 (N.Y. App. Div. 1995) ................................................8

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings*,
  LLC, 127 F. Supp. 3d 156 (S.D.N.Y. 2015) ..........................................13

*In re Woodbridge Grp. of Cos., LLC*,
  606 B.R. 201 (D. Del. Sept. 11, 2019)......................................................8

**Statutes**

35 U.S.C. § 100(d) .........................................................................................3

35 U.S.C. § 261.............................................................................................12

**Other Authorities**

Restatement (Second) of Contracts § 315 (1981) ........................................11

PUBLIC VERSION

OnePlus's motion to dismiss is the latest in its long line of attempts to raise defenses well after the time to do so has passed and should be denied. Worse, this defense is not even OnePlus's to raise. OnePlus's motion flows solely from contractual provisions between Pantech Inc. and GoldPeak, on the one hand, and ███████████ on the other. If there were any breach of those provisions (there is not), that breach and any related consequences are for ███████ ███ alone to enforce (and they have not). OnePlus is merely a third-party who has no rights stemming from ███████████████ yet is trying to benefit from them nonetheless.

Had OnePlus raised this issue in discovery, as it should have, Pantech could have clarified the facts and OnePlus would have seen that there is actually no issue at all, without having to involve the Court. Specifically, Pantech Corp. executed an agreement through which it took assignment of the Pantech Inc. and GoldPeak patents both expressly and implicitly subject to the ████████████████████████. Both ████████████ have been made aware of the assignment to Pantech Corp., and neither have asserted there to be any breach of their ██████ or otherwise attempted to void the assignment.

This case is nearing its end. The facts have been presented to the jury, who across the board found in favor of Pantech. At this point, the parties and the Court should be focusing on appropriate post-trial issues rather than having to dedicate time to issues that never should have been raised, but certainly not at this stage. Neither timing nor facts support OnePlus's motion to dismiss. OnePlus's motion thus should be denied.

## I.     FACTUAL BACKGROUND

Pantech Inc. and GoldPeak Innovations Inc. ("GoldPeak") are prior owners of the asserted '052, '654, '839, and '954 Patents. *See, e.g.,* Ex. C (Excerpts of PX-014 (Patent Assignments)). Prior to assigning the patents to Pantech Corp., Pantech Inc. and GoldPeak sought to license their

PUBLIC VERSION

██████████████████

patent portfolios, which included the identified asserted patents. As a result of such efforts, they

entered into ████████████████████████████████.

██████████████████████████████████████████████████████

████████████████████████████████████████████ Mot. Ex. 1. The

████ was one of several agreements entered into between the parties. ████████████████

██████████████████████████████████████████████████████

████████████ *Id.* ████████████████████████████████

████████████████████████████████████. Mot. Ex. 1 at Section 7.1.

████████████████████████████████████████████████

██████████████████████████████████. Mot. Ex.

██████████████████████████████████████████████████████

*Id.* The ████████████████████████████████. Mot. Ex. 2 at 9-10. ████████

██████████████████████████████████████████████████████

████████████████. *Id.*

In March 2020, Pantech Inc. and GoldPeak each executed a Patent Assignment Agreement

with Pantech Corp. through which they assigned their patent portfolios, including the identified

asserted patents, to Pantech Corp. Ex. A (Translation of Pantech Inc. Assignment); Ex. B

(Translation of GoldPeak Assignment). Each Assignment contained a provision ████████████

██████████████████████████████████████████████████ Ex. A at Art.

5, Ex. B at Art. 5. This provision addressed the presence of constraints that may bind the assigned

intellectual property and impede Pantech Corp.'s ability to exercise rights with respect to such

intellectual property. *Id.* The provision ████████████████████████████████

██████████████████████████████████████████. Ex. A at Art. 5(1)(iv) (identifying

PUBLIC VERSION

Annex 3); Ex. B at Article 5(1)(iv) (identifying Annex 2). The referenced annexes each specifically identified the ██████████████████. Ex. A at Annex 3; Ex. B at Annex 2.

As set forth in more detail herein, after the assignment of patents to Pantech Corp., Pantech Inc. sent letters to ██████████████ with notification of the assignment. Kim Decl. at ¶¶ 3-4. Mayer Brown has also reached out to ████████████ in connection with production of the ████ in litigation. Miller Decl. at ¶¶ 12-13. Neither ██████████████ challenged the Pantech Corp. assignment in response to such correspondence or otherwise attempted to void such assignment.

## II.    LEGAL STANDARDS

"In patent cases, there are two separate requirements: (1) Constitutional standing under Article III, which establishes when a plaintiff may invoke judicial power and implicates the Court's subject matter jurisdiction; and (2) the statutory prerequisite (*i.e*., "statutory standing" formerly referred to as "prudential standing") under 35 U.S.C. § 281, which establishes when a party may obtain relief under the patent laws and does not implicate subject matter jurisdiction." *Alarm.com Inc. v. Vivint, Inc.*, 2023 WL 6319348, at *1 (E.D. Tex. Spt. 6, 2023) (citing *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp*., 925 F.3d 1225, 1235 (Fed. Cir. 2019) (citations omitted)).

"To satisfy the statutory requirement to pursue an infringement action, a party must show that it possesses the necessary rights as a "patentee" under 35 U.S.C. § 281." *Id.* at *2. A "patentee" may include successors in title to the patentee to whom the patent issued. *Id.* (quoting 35 U.S.C. § 100(d)). "[W]hether one qualifies as a patentee under 35 U.S.C. § 281 is a statutory prerequisite to the right to relief in a patent infringement action, but does not implicate the district court's subject matter jurisdiction." *Schwendimann v. Arkwright Advanced Coating, Inc*., 959 F.3d 1065, 1071 (Fed. Cir. 2020)(citing *Lone Star*, 925 F.3d at 1299).

3

PUBLIC VERSION

## III.    ARGUMENT

OnePlus's Motion to Dismiss should be denied on several grounds. First and foremost, Pantech Corp. has complied with the Assignability clauses in the ████████████████. Given such compliance, there is no breach of the ██████ and no basis on which ████████████ could seek to void Pantech Inc./GoldPeak's assignment to Pantech Corp. ████████████ ████████████    ████████████████████████████████████    █ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

OnePlus is not a party to the ██████, nor is it a beneficiary of the ██████. As such, it cannot attempt to stand in the place of the parties to those agreements and enforce the agreements, particularly where ████████████ have not. In view of these grounds, Pantech Corp. is the rightful owner of the identified asserted patents and has both Article III and statutory standing. Finally, OnePlus's challenge to standing has been waived.

### A.  Pantech Inc., GoldPeak, and Pantech Corp. Have Satisfied the Conditions of the ████████████████:

████████████████████    ████████████████████ were set forth in full in Section I, *supra.* ████████████████████████████████████

████████████████████ as OnePlus posits. *See* Mot. at 6. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ Mot. Ex. 1 at Section 7.1.

████████████████████████████████████████████████

████████████████████ Mot. Ex. 2 at 10. As set forth herein, Pantech

4

PUBLIC VERSION ████████

Corp. has executed agreements to be bound by the terms and conditions (including the license, covenant, release, and other obligations) of the ████████████████████ .

## 1. Pantech Corp. Executed an Agreement Expressly Taking Assignment of the Patents Subject to the ████████████████████ .

In connection with the assignment of the patents at issue to Pantech Corp., Pantech Inc., and Goldpeak each entered into an Assignment Agreement wherein Pantech Inc.'s and GoldPeak's patent and trademark rights were assigned to Pantech Corp. in exchange for ██████████ ███████████████████████████████████████ Ex. A at Art. 6; Ex. B at Art. 6. Pursuant to the Assignments, Pantech Corp. took assignment of the patents at issue subject to any existing licenses. Specifically, in Article 5 of each of the Assignments, Pantech Inc. or GoldPeak, respectively, ████████████████████████████████████ ████████████████████ with respect to the assigned patents. In doing so, Pantech Inc. **expressly excludes Annex 3 to the Assignment** ██████████ and **expressly excludes Annex 2 to the Assignment** ██████████ Ex. A at Art. 5(1)(iv); Ex. B at Art. 5(1)(iv). Annex 3 to the Pantech Inc. Assignment and Annex 2 to the GoldPeak Assignment, in turn, expressly identify the ████████████████ . Ex. A at Annex 3; Ex. B at Annex 2. Pantech Corp. thus entered into a written agreement wherein it took assignment of the patents expressly subject to the ████████████████ .

## 2. Pantech Corp. Executed an Agreement Implicitly Taking Assignment of the Patents Subject to the ████████████████████ .

Pantech Corp.'s execution of the Assignment containing an express recitation of the ████ ████████████ constitutes a sufficient agreement to be bound by those Licenses. Further, the law is clear that an assignee of a patent takes that patent subject to the patent's legal encumbrances, including any previously-issued licenses. *See Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008); *Sanitec Indus. v. Micro-Waste Corp.*, 2006 WL

5

PUBLIC VERSION

3455000, at *40 (S.D. Tex. Nov. 28, 2006) ("A party 'acquiring by assignment or license an interest in an invention ... takes title from the assignor subject to prior assignments or licenses of which the assignee must inform himself as best he can and at his own risk ....' ") (quoting *Am. Dirigold Corp. v. Dirigold Metals Corp.*, 125 F.2d 446, 452 (6th Cir. 1942)).



Mot. Ex. 1, Section 7.1.

Mot. Ex. 2, at 10. Thus, when Pantech Corp. executed an assignment agreement, it was executing an agreement that bound itself to the licenses, covenants, releases, and other obligations set forth in the ▮▮▮▮▮▮▮▮▮▮.

The foregoing establishes that Pantech Corp. has agreed to be bound by the licenses, covenants, releases, and other obligations of the ▮▮▮▮▮▮▮▮▮▮. And since entering into the Assignments, Pantech Corp. has honored its agreement to be bound by the ▮▮▮▮▮▮▮▮▮▮. Pantech Corp. has not approached ▮▮▮▮▮▮ to license the patents, has not sued ▮▮▮▮▮▮ for infringement or threatened any such suit, and Pantech Corp. has consistently taken the position in this case that the ▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, Ex. D, Pantech Response to Interrogatory No. 11. Furthermore, as set forth in Section III(B), both ▮▮▮▮▮▮ have been made aware of the assignment and neither has asserted breach of their license or attempted

6

PUBLIC VERSION

to void the assignment. Thus, Pantech Corp. has both Article III and statutory standing to assert the identified patents.

This conclusion is not changed by the trial testimony of witnesses for Pantech Inc. and Pantech Corp. Even OnePlus's briefing admits that these witnesses did not state that no agreement was completed. *See* Mot. at 4 ("During trial, witnesses for Pantech Inc. and Pantech Corp. testified that they <u>could not recall or did not remember</u> executing any agreement to be bound as required by the licenses." (emphasis added)). That the witnesses could not recall these facts only reflects that they were not prepared to address on the fly an issue that OnePlus had not raised prior to trial. Had OnePlus identified the issue during discovery, Pantech Inc. and Pantech Corp. could have prepared their representatives with the knowledge held by each entity. Because the issue had not been identified, however, the witnesses could only provide testimony based on their own personal knowledge and memory. And what the witnesses did or did not personally remember is irrelevant where there is documentary evidence of Pantech Corp.'s agreement.

### 3. OnePlus's Cited Cases Do Not Support a Conclusion That The Assignment to Pantech Corp. Is Void.

OnePlus willfully conflates two very different types of contractual provisions in an effort to convince this Court that two contracts to which it is a total stranger—the ███████████ ███████—somehow insulate it from Pantech Corp.'s patent rights. In particular, OnePlus cites in support of its motion case law addressing provisions that preclude a party to a contract from assigning its <u>contractual</u> rights to a third party. Here, the original licensor parties to the ███████ ███████████ (*i.e.*, Pantech Inc. and GoldPeak) have not effected, nor sought to effect, an assignment of those licenses to Pantech Corp. (although for the reasons noted in Section III(A)(1)-(2), Pantech Corp. has agreed to honor the ████████████████████). ████ ██████████████████████████████    ████████████

PUBLIC VERSION

████████

████, ████████████████████████████████████████████████

████████████████████████████████████████████████████. By mixing

up those two concepts, OnePlus suggests that its position follows directly from black letter law,

when in fact the relief it seeks would be an extraordinary over-reading of the contractual provisions

at issue.

Even a cursory examination of OnePlus's citations reveals the weakness of its argument.

OnePlus cites *In re Woodbridge Grp. of Cos., LLC*, 606 B.R. 201, 205-07 (D. Del. Sept. 11, 2019),

for the proposition that Delaware law recognizes the rights of parties to "limit assignability." But the

provision at issue in *Woodbridge* was a prohibition on the assignment of a contract and the party

seeking to enforce that prohibition was a successor (in bankruptcy) to that very contract. OnePlus's

other citations fare no better. *Renfrew Ctr. v. Blue Cross & Blue Shield of Cent. New York, Inc*.,

1997 WL 204309, at *1-2 (N.D.N.Y. Apr. 10, 1997), involved a health insurer enforcing a

prohibition on assigning contractual rights under a health insurance contract, as did *Spinex Laby's*

*Inc. v. Empire Blue Cross & Blue Shield,* 622 N.Y.S.2d 154, 155 (N.Y. App. Div. 1995). Likewise

*Nat'l Football League Players' Concussion Inj. Litig.*, 923 F.3d 96, 110-11 (3d Cir. 2019), is readily

distinguishable on the basis that it involved an attempt to assign rights to a settlement payout. In

these cases, none of the contracts at issue purported to prohibit the assignment of any underlying

property. Furthermore, in each case the party enforcing the contractual non-assignment provision

was the contracting party itself.

The only case that OnePlus cites that does involve an attempt to assign underlying property,

*Au New Haven, LLC v. YKK Corp*., 210 F. Supp. 3d 549 (S.D.N.Y. 2016), held that a contractual

non-assignment clause (like those in the cases discussed above) <u>does not</u> limit the assignability of

the underlying patent. *Id.* at 554 ("The express language of this provision [the anti-assignment

PUBLIC VERSION

provision] does not limit transfers of the '214 Patent or render them void."). Furthermore, as in the other cases on which OnePlus relies, in *Au New Haven* the non-assignment provision was being enforced by the contract party itself (the patent licensee YKK), not some stranger to the license.

**B. OnePlus Cannot Enforce the** ████████████████

OnePlus cannot enforce the ████████████ that it advances to void the assignment of patents from Pantech Inc. and GoldPeak to Pantech Corp.

████████████████████████████████████████

████████████████████████████████████████

████████████████ Mot. Ex. 1 at Section 7.1. ████████████████

████████████████████████████████████████

██████████ ██████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████: 

████████████████████████████████████████
████████████████████████████████████████
███

Mot. Ex. 2 at 10. ████████████████████████████

████████████████████████████████████. *Id.* ████

████████████████████████████████████████

████████████████████████████████████████

████████████████. *Id.*

████████████████████

PUBLIC VERSION

████████████

OnePlus was not a party to either license and is not an affiliate of, or otherwise related in any way to, any party to the ████████████████ . ████████████████████████

████████████████████████████████████████████████ .

This conclusion is bolstered by the clear intent of the Licenses as determined by their four corners. *See 3rd Eye Surveillance, LLC v. e-Watch Corp.*, 2017 WL 11630485, at *4–5 (E.D. Tex. June 19, 2017)(under Delaware law, "the parties' intent is determined by the four corners of the contract and extrinsic evidence may only be used if the Court finds the contract ambiguous."); *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 113–14 (2d Cir. 2014)(stating that, when interpreting a contract under New York law, the court's "primary objective ... is to give effect to the intent of the parties as revealed by the language of their agreement."). The intent of the parties in entering into the ████████████████ was clearly to ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████ . Strangers to the licenses or to any party to the licenses—like OnePlus—are granted no rights, duties, or benefits, under the licenses and thus have no need for protection against assignments.

████████████████████████████████████████

That should end the inquiry of OnePlus's (lack of) standing to enforce the ████████████████ to void the patent assignment to Pantech Corp. The governing law supports this conclusion. Both Delaware and New York law, which govern the ████████████████ respectively, provide that the terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries. *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014)(citing *Mendel v. Henry Phipps Plaza West Inc.*, 6 N.Y.3d 783, 786, 811 N.Y.S.2d 294, 297, 844 N.E.2d 748

PUBLIC VERSION ▮▮▮▮▮

(2006) (incidental beneficiaries of a contract are not allowed to maintain a suit for breach of the contract); Restatement (Second) of Contracts § 315 (1981) ("An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee."); *NAMA Holdings, LLC v. Related World Market Center*, LLC, 922 A.2d 417, 434 (Del. Ch.2007) ("…only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions.").

In similar situations, courts have questioned attempts to adjudicate a third party's contractual rights with a motion to dismiss based on standing. *Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc., et al.*, 2021 WL 8441748 (E.D. Tex. Dec. 22, 2021). In *Barkan*, the Court denied a motion to expedite briefing for a motion for lack of standing in part because the defendants provided no authority or basis that they could assert a claim based in contract against the plaintiff on a third-party's behalf. *Id.* at * 2 (citing *Dorr-Oliver, Inc. v. United States*, 432 F.2d 447, 451 (Ct. Cl. 1970) ("In patent litigation between private parties, equitable rights of ownership of strangers to the suit cannot be raised as defenses against the legal titleholder of a patent.")).



In view of the foregoing, it is clear that the only entities who could enforce the ▮▮▮▮▮ ▮▮▮▮▮ and nullify the assignment to Pantech Corp., are ▮▮▮▮▮ and their successors and assigns. Despite being placed on direct notice of the assignment to Pantech Corp., neither ▮▮▮▮▮ have done so.

In connection with assignment of the patents, Byeong Jin Kim sent letters to each of ▮▮▮ ▮▮▮▮▮ regarding the ▮▮▮ Kim Decl. at ¶¶ 3-4. In the letter to ▮▮▮ Pantech Inc. stated that patents had been assigned to Pantech Corp. and that the necessary terms and conditions of the ▮▮▮▮▮ had been provided. *Id.* at ¶ 3. Pantech Inc. also invited ▮▮▮ to provide an agreement for Pantech Corp. to execute regarding the terms and conditions of the ▮▮▮▮▮ *Id.* ▮▮▮ did not request Pantech Corp. sign a separate agreement. *Id.* In the letter to ▮▮▮,

PUBLIC VERSION

Pantech Inc. stated that the obligations of the ████████████ had been shared with Pantech

Corp., who had agreed to be bound by such obligations. *Id.* at ¶ 4. Pantech Inc. further requested

permission to provide a full copy of the ██████ to Pantech Corp. *Id.* ████████ did not respond. *Id.*

Additionally, in connection with this case and Pantech Corp.'s case against LGE, Mayer

Brown reached out via letter to both ███████████████ on behalf of Pantech Inc. Miller Decl. at

¶¶ 12-13. In the letters, Mayer Brown noted the assignment of patents to Pantech Corp. and sought

permission to produce the ████████████████ in the cases. *Id.* As a result of Mayer Brown's

reaching out, ████████ counsel has regularly checked in on the cases to ensure that ████████

confidential information is being protected. *Id.* at ¶ 12.

The foregoing establishes that both ██████████████ have been aware of the assignment

of the licensed patents to Pantech Corp. Yet, neither has questioned the assignment or asserted

breach of their ████████, let alone declared the assignments null and void. *See, e.g., GEM Holdco,*

*LLC v. RDX Techs. Corp.,* 167 A.D.3d 491, 89 N.Y.S.3d 170 (2018)(holding that defendants

waived right to enforce approval condition by ratifying the agreement). This only further supports

that the events here have fully satisfied both the letter and intent of the ███████████████, as

well as the futility of OnePlus to try to assert its interests in place of ███████████████.

Furthermore, it would be an extraordinary limit on the alienability of patents to allow

OnePlus to assert ████████████████████ alleged contractual rights here. Under the Patent Act,

patents are treated as personal property, 35 U.S.C. § 261 ("Subject to the provisions of this title,

patents shall have the attributes of personal property."), and common law has long recognized a

public policy disfavoring restraints on alienability of property. *Impression Prods., Inc. v. Lexmark*

*Int'l, Inc.*, 137 S. Ct. 1523, 1531–36 (2017) (recognizing "the common law's refusal to permit

PUBLIC VERSION

restraints on the alienation of chattels" in the context of the patent first sale doctrine) (quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013)).

### C. **OnePlus's Challenge to Standing Has Been Waived.**

OnePlus did not raise a standing defense in its Answer (Dkt. No. 15), did not address standing in its original or amended initial disclosures (Exs. E, F), did not describe the defense in response to Pantech's interrogatory seeking the basis for all defenses (Ex. G at OnePlus Response to Rog No. 6), and did not identify it as a pending issue in the Joint Pre-Trial Order or Amended Joint Pre-Trial Order (Dkt. Nos. 188, 217). In fact, OnePlus stipulated to Pantech's ownership of each of the Patents-at-issue. *See* Dkt. No. 217 at Section E, ¶¶ 11-14. OnePlus raised standing with Pantech on the morning Pantech was going to rest its case-in-chief, and waited another day to raise it with the Court. *See, e.g.*, Dkt. No. 303 (Fussell Decl. at ¶ 4). This last-ditch effort is out of time and must fail. The standing defense has been waived.

While issues of constitutional standing cannot be waived, issues of statutory standing can be: "Challenges to standing must be raised in a party's answer or pre-answer motion to dismiss." *Focus Prods. Group Int'l, LLC, et al. v. Kartri Sales Co., Inc.*, 2021 WL 1946756 (May 14, 2021) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings*, LLC, 127 F. Supp. 3d 156, 169 (S.D.N.Y. 2015)). OnePlus did not raise standing as a defense until the middle of trial. Thus, there is no question this issue has been waived. *See, e.g.*, *Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 318 (5th Cir. 1999)(holding that an objection that implicated prudential standing that was made after a plaintiff's case-in-chief was waived). OnePlus could and should have raised the defense sooner. ███ produced the ██████ on April 11, 2023. *See* ████████████████ Pantech Inc. produced the ██████ on August 25, 2023. *See* Ex. I (Pantech Inc. Production Letter). Instead of raising this issue during fact discovery, and providing Pantech the opportunity to then respond, OnePlus sprung it upon Pantech Corp. and Pantech, Inc.'s corporate witnesses at

trial, when there was no opportunity to prepare for such questioning and no opportunity for Pantech to seek to clarify the record.[1] As set forth in Section III(A), Pantech Inc., GoldPeak, and Pantech Corp. have in fact satisfied the obligations of the ██████████████.

OnePlus tries to escape its clear waiver by improperly conflating Article III constitutional standing with statutory standing. But recent cases has clarify that "whether a party possesses all substantial rights in a patent does not implicate constitutional standing or subject-matter jurisdiction." *Lone Star*, 925 F.3d at 1235-36. Rather, it implicates statutory standing, which is an affirmative defense. "Whether one qualifies as a patentee under 35 U.S.C. § 281 is a statutory prerequisite to the right to relief in a patent infringement action, but does not implicate the district court's subject matter jurisdiction.... As long as a plaintiff alleges facts that support an arguable case or controversy under the Patent Act, the court has both the statutory and constitutional authority to adjudicate the matter." *Schwendimann*, 959 F.3d at 1071; *see also Barkan*, 2021 WL 8441748, at *2 (citing *Schwendimann*, "[i]t is unclear that a motion to dismiss for lack of standing is the proper vehicle for Defendants to pursue under these disputed facts, and if any such relief can be properly sought by Defendants based on alleged rights vested in a non-party not before this Court."). Indeed, the Court in *Barkan* rejected the argument OnePlus makes here, that this is an Article III issue. There, when defendants argued that the patents were owned by a learning institution rather than the inventor through operation of Intellectual Property Regulations, the

---

[1] Contrary to OnePlus's assertion that "[a]ny prejudice that Pantech may claim is a result of its own lack of diligence to inquire into its own claim for standing" (Mot. at 10), Pantech's actual prejudice from OnePlus's untimely and unwarranted filing is this inability to have clarified the record during discovery or at trial, forcing it to address the issue now during post-trial briefing when discovery is closed. The only lack of diligence here is on OnePlus's part.

PUBLIC VERSION

████████████████

Court stated "[a]lthough it is framed in terms of Article III standing, Defendants' Motion to Dismiss clearly asks this Court to adjudicate the contractual rights of a third party…." *Id*. at *2.

Pantech Corp. has established constitutional standing here. It produced and entered into evidence assignments filed with the USPTO establishing transfer of the patents from the inventor to Pantech Corp.[2] *See* Ex. C (relevant excerpts of USPTO assignment records). "When a plaintiff establishes ownership of a patent through assignment, it satisfies the requirements of Article III standing." *Lone Star Tech. Innovations, LLC v. ASUSTEK Computer Inc*., 2022 WL 1498784, at *4 (E.D. Tex. Mar. 18, 2022)(citing *Pandrol USA, LP v. Airboss Ry. Prods., Inc*., 320 F.3d 1354, 1368 (Fed. Cir. 2003)). "Ownership of a patent by someone other than the inventor is established by showing a chain of title from the inventor to the plaintiff." *Id.* (citing *Bd. of Trs. of Leland Stanford Jr. Un. v. Roche Molecular Sys., Inc*., 563 U.S. 776, 785 (2011)). OnePlus is asking the Court to adjudicate the rights of ████████████ That is a matter of statutory standing and has been waived. *Barkan*, 2021 WL 8441748, at *2; *Ensley*, 171 F.3d at 318. To the extent it is not waived, Pantech Corp. has established that its assignments are valid and thus that it has both constitutional and statutory standing. Section III(A).

## IV.    CONCLUSION

In view of the foregoing facts and governing law, OnePlus's motion should be denied.

Dated: May 17, 2024            By:    */s/ James A. Fussell, III*
                                      Geoffrey Culbertson
                                      Kelly Tidwell
                                      PATTON TIDWELL & CULBERTSON, LLP
                                      2800 Texas Blvd. (75503)

---

[2] This is more than a bare assertion that Pantech Corp. "is the rightful owner of" the patents, which OnePlus wrongly asserts is "the lone thread supporting Plaintiffs' claim to standing." Mot. at 5.

Post Office Box 5398
Texarkana, TX 75505-5398
(P) (903) 792-7080
(F) (903) 792-8233
gpc@texarkanalaw.com
kbt@texarkanalaw.com

James A. Fussell, III
Jamie B. Beaber
Alan M. Grimaldi
Saqib J. Siddiqui
Tiffany A. Miller
Baldine Paul
Clark S. Bakewell
Tariq Javed
Seth W. Bruneel
Courtney Krawice
MAYER BROWN LLP
1999 K Street, N.W.
Washington D.C. 20006
(202) 263-3000
jfussell@mayerbrown.com
jbeaber@mayerbrown.com
agrimaldi@mayerbrown.com
ssiddiqui@mayerbrown.com
tmiller@mayerbrown.com
bpaul@mayerbrown.com
cbakewell@mayerbrown.com
tjaved@mayerbrown.com
sbruneel@mayerbrown.com
ckrawice@mayerbrown.com

Graham (Gray) M. Buccigross
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
(650) 331-2000
gbuccigross@mayerbrown.com

Gregory J. Apgar
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
gapgar@mayerbrown.com

Luiz Miranda
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
lmiranda@mayerbrown.com

*Counsel for Plaintiffs Pantech Corporation and
Pantech Wireless, LLC*

PUBLIC VERSION

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 17th day of May, 2024, with a copy of this document via email.

*/s/ James A. Fussell, III*
James A. Fussell, III

1