IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| PANTECH CORPORATION and PANTECH WIRELESS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., <br><br> Defendant. | C.A. No. 5:22-cv-00069-RWS <br><br> **JURY TRIAL DEMANDED** |

**REPLY IN SUPPORT OF ONEPLUS'S
MOTION TO DISMISS FOR LACK OF STANDING**

██████████████████████████████████████████

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1
II.  PANTECH DID NOT EXECUTE THE REQUISITE WRITTEN AGREEMENT ...........2
III. THE ███████████████████ WERE EFFECTIVE ..........................................4
IV.  PANTECH'S LACK OF STANDING IS A PROBLEM OF ITS OWN MAKING...........7

## TABLE OF AUTHORITIES

### Cases

*Abraxis Bioscience, Inc. v. Navinta LLC*,
    625 F.3d 1359 (Fed. Cir. 2010) ................................................................................................ 5

*Askanase v. LivingWell, Inc.*,
    45 F.3d 103 (5th Cir. 1995) ................................................................................................. 5, 6

*Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*
    No. 2:21-cv-00034-JRG, 2021 WL 8441748 (E.D. Tex. Dec. 22, 2021) .................................. 7

*Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys.*,
    583 F.3d 832 (Fed. Cir. 2009) ................................................................................................ 5

*Goldin v. Bartholow*,
    166 F.3d 710 (5th Cir. 1999) ............................................................................................. 5, 6

*In re Black Elk Energy Offshore Operations, LLC*,
    No. 15-34287, 2020 WL 4940806 (Bankr. S.D. Tex. Aug. 21, 2020) ................................. 5, 6

*In re Shared Memory Graphics LLC*,
    659 F.3d 1336 (Fed. Cir. 2011) .............................................................................................. 2

*Intell. Tech LLC v. Zebra Techs. Corp.*,
    No. 2022-2207, 2024 WL 1897130 (Fed. Cir. May 1, 2024) .............................................. 1, 6

*IpVenture, Inc. v. Prostar Computer, Inc.*,
    503 F.3d 1324 (Fed. Cir. 2007) .............................................................................................. 5

*JP Morgan Chase Bank, N.A. v. Ballard*,
    213 A.3d 1211 (Del.Ch. July 9, 2019) ................................................................................... 5

*JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*,
    79 F. Supp. 3d 643 (E.D. Tex. Feb. 5, 2015) ..................................................................... 5, 6

*Leane v. UnifiedOneline, Inc.*,
    No. 3:20-CV-3097-B, 2020 WL 6683106 (N.D. Tex. Nov. 12, 2020) ................................... 7

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019) .............................................................................................. 6

*Lurco Health & Beauty, LLC v. Tran*,
    No. 4:19-CV-51-SDJ, 2020 WL 2747233 (E.D. Tex. May 27, 2020) .................................... 6

*Matter of Linn Energy, L.L.C.*,
    927 F.3d 350 (5th Cir. 2019) ................................................................................................. 2

*NAMA Holdings, LLC v. World Mkt. Ctr. Venture, LLC*,
   948 A.2d 411 (Del. Ch. July 20, 2007) ................................................................................ 2

*Nat'l Football League Players' Concussion Inj. Litig.*,
   923 F.3d 96 (3d Cir. 2019) ................................................................................................... 4

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
   No. A-12-CA-773-SS, 2015 WL 11251772 (W.D. Tex. Feb. 17, 2015,
   *aff'd in relevant part, vacated in part, remanded*,
   676 F. App'x 967 (Fed. Cir. 2017) ................................................................................... 5, 6

*Ormond Realty v. Ninnis*,
   491 A.2d 169 (Pa. Super. (1985) ...................................................................................... 5, 6

*Propat Int'l Corp. v. Rpost, Inc.*,
   473 F.3d 1187 (Fed. Cir. 2007) ............................................................................................ 6

*PVP Aston, LLC v. Financial Structures, Ltd.,*
   No. 21C-09-095, 2022 WL 1772247 (Del. Super. May 31, 2022) ....................................... 5

███████████████████████████████████████████████████████████

I.  INTRODUCTION

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████. Pantech Corp. ("Pantech") does not dispute this requirement, at least for the ████████. Nor has Pantech produced any evidence that it executed such a written agreement. It thus does not own the patents-at-issue. The Federal Circuit's recent decision in *Intellectual Tech LLC v. Zebra Technologies Corp.* confirms that Pantech's lack of any ownership, and hence lack of an exclusionary right, presents an Article III constitutional standing issue, "which is incurable if absent at the initiation of suit." No. 2022-2207, 2024 WL 1897130, at *4–5 (Fed. Cir. May 1, 2024). Because Pantech did not obtain any exclusionary rights in the patents-at-issue before this suit was brought, it lacks constitutional standing, which Pantech concedes is not waivable. Dkt. 310 at 13.

Pantech's efforts to show constitutional standing are unavailing. Its argument that the attempted assignments between Pantech Corp. and Pantech Inc./GoldPeak "expressly" comply with the ████████████████████████████████████ is unsupported. Pantech relies on the warranties provided by the *assignors* (i.e., Pantech Inc. and GoldPeak)—not an agreement by the *assignee* (Pantech Corp.) to be bound by the terms and conditions of the ██████ *Id.* at 5. Conceding the weakness of this argument, Pantech also argues "implicit" compliance with the ███████████████, that only ███████████████ could enforce the provisions, and that the provisions are ineffective. These arguments are legally and factually unsupported. ████

████████████████████████████████████████████████████████████ the absence of such agreement, which is the case here, the ██████████ ████████ rendered the attempted assignments void *ab initio*.

1

## II.   PANTECH DID NOT EXECUTE THE REQUISITE WRITTEN AGREEMENT

Pantech wrongly argues that the attempted assignments from Pantech Inc. and GoldPeak to Pantech Corp. ("Attempted Assignments") "expressly or implicitly" satisfy the requirement for a written agreement to be bound. Dkt. 310 at 5 (citing Dkt. 310-3 (Ex. A); Dkt. 310-4 (Ex. B)). In particular, Pantech relies on Article 5 of each of these Attempted Assignments to argue that Pantech Corp. agreed to be bound by the terms and conditions of the ▮▮▮▮▮▮▮▮. *Id*. However, Article 5 warranties that the *assignor* (i.e., Pantech Inc. or GoldPeak) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 310-3 (Ex. A, Annex 3); Dkt. 310-4 (Ex. B, Annex 2). The Attempted Assignments do **not** indicate that the purported *assignee* (i.e., Pantech Corp.) agreed to be bound by the terms and conditions of the identified licenses.

There is also no "implicit" basis to support Pantech's theory that it executed an agreement to be bound. Pantech cites to language in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 310 at 5–7. Under Pantech's erroneous interpretation, however, *any* assignment would satisfy this requirement thereby improperly rendering the ▮▮▮▮▮▮▮▮▮▮▮▮▮ for a separate written agreement entirely superfluous. *See, e.g.*, *In re Shared Memory Graphics LLC*, 659 F.3d 1336, 1341 (Fed. Cir. 2011) ("[W]e look to the document as a whole, being careful to avoid an interpretation that would render any part of the Agreement superfluous."); *see also NAMA Holdings, LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 418 (Del. Ch. July 20, 2007); *Matter of Linn Energy, L.L.C.*, 927 F.3d 350, 354 (5th Cir. 2019). Pantech provides no authority that would justify ignoring the express requirements of the ▮▮▮▮▮▮▮▮▮ at issue.

2

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ This ensured that it (or any assignee) was fully aware of all terms and conditions and would comply with them. Any argument of implicit compliance is therefore particularly problematic. Pantech Corp.'s representative, Mr. Jung, testified at trial that Pantech Corp. had never seen the ███████ ██████ and was unaware of their substance. *See* Sealed Tr. (3/25/24) 310:15–315:22. Indeed, he had to leave the courtroom while details of those agreements were discussed at trial. *Id*. Thus, Pantech Corp. was not in a position to comply with the terms and conditions of the ██████ and could not have even been under the mistaken impression it had agreed to be bound by their terms.

Pantech provides two declarations, one from Mr. Kim, Pantech Inc.'s representative who testified at trial, and another from an attorney that represented both Pantech Corp. and Pantech Inc. throughout this litigation. Mr. Kim declares—for the first time—he has "personal knowledge" of a never-produced letter allegedly sent to ██████ in May 2021, stating he provided notice of "necessary terms and conditions" of the ████████ to Pantech and asking if ██████ wanted to provide an agreement for Pantech Corp. to execute. Dkt. 310-1 ¶¶ 2–3. Mr. Kim also declares—for the first time—that he provided notice to ████████ of the assignment to Pantech Corp., contending that "obligations" from the ████████ were shared with Pantech Corp., and that Pantech Corp. had agreed to be bound. *Id*. ¶ 4. By contrast, Mr. Kim testified at trial that he did not know whether Pantech Corp. ever complied with the ██████████████████████ and made no reference to the unproduced letters that are the subject of his new declaration. Sealed Tr. (3/25/24) 52:3–23. Putting aside these inconsistencies, including in combination with Mr. Jung's testimony discussed above, and a failure to *ever* produce the alleged letters, Mr. Kim's declaration is irrelevant even if accepted as true. █████████████████████████████

3

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ No such written agreement is referenced in Mr. Kim's declaration. Moreover, the alleged letters were sent long after the attempted assignments to Pantech Corp. and would not save them from being null and void.

Pantech's counsel refers to letters sent to ▓▓▓ and ▓▓▓▓▓ on August 3, 2023, providing notice that Pantech Inc., represented by the same counsel as Pantech Corp., was going to produce the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (that should have been produced months earlier). Dkt. 310-2 ¶ 12–13. Nothing in those letters concerns an agreement to be bound. Further, constitutional standing must be present at the time the lawsuit was filed and later sent letters from Pantech's counsel could not cure the defect. *Intellectual Tech LLC*, 2024 WL 1897130, at *4–5. Nor does any action or inaction on behalf of ▓▓▓▓▓▓▓▓▓ alter the express contractual requirement for a *written* agreement to be bound. ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Dkt. 299-1 (Ex. 1 to Mot.) ¶ 10.6; Dkt. 299-2 (Ex. 2 to Mot.) at 12. No evidence of any modification to the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ has ever been produced that alter the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

### III.   THE ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ WERE EFFECTIVE

Pantech's alternative theories, namely, that OnePlus cannot enforce the ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ as a third party and/or that the provisions do not render the assignments void are equally without merit. OnePlus is not seeking to "enforce" the ▓▓▓▓▓▓▓▓▓▓▓▓. Rather, OnePlus is pointing to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Dkt. 299 at 3–4 (emphasis added). *See, e.g.*, *Nat'l Football League Players' Concussion Inj. Litig.*, 923 F.3d 96, 110-11 (3d Cir. 2019) (attempted assignment in contravention of anti-assignment clause void *ab initio*); *In re Black Elk*

4

*Energy Offshore Operations, LLC*, No. 15-34287, 2020 WL 4940806, at *6 (Bankr. S.D. Tex. Aug. 21, 2020) (clause stating that a trust instrument "'shall terminate' after three years" was automatic and self-executing) (citing *Goldin v. Bartholow*, 166 F.3d 710, 715 (5th Cir. 1999); *Askanase v. LivingWell, Inc.*, 45 F.3d 103, 106 (5th Cir. 1995)); *Ormond Realty v. Ninnis*, 491 A.2d 169, 170, 172 (Pa. Super. (1985) (finding clause in agreement "*shall be* NULL AND VOID" to be self-executing); *PVP Aston, LLC v. Financial Structures, Ltd.,* No. 21C-09-095, 2022 WL 1772247, at *12-16 (Del. Super. May 31, 2022) (anti-assignment clause voided assignment *ab initio*); *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.,* 79 F. Supp. 3d 643, 650 (E.D. Tex. Feb. 5, 2015); *JP Morgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1217-20 (Del.Ch. July 9, 2019). It is irrelevant that ▓▓▓▓▓▓▓▓ did not intervene or attempt to "enforce" these provisions, as Pantech argues. Dkt. 310 at 11–12.

Pantech incorrectly argues that OnePlus, as a non-party, cannot "enforce" the ▓▓▓▓▓▓▓▓▓▓▓▓ to challenge standing. *Id*. at 10. Courts have dismissed Pantech's very argument as "baseless":

> [Alleged patentee] flaccidly contends [accused infringer] does not have "standing" to challenge the meaning of the [relevant agreement] because "[o]nly parties to a contract can dispute the rights conveyed in a contract, unless a non-party can prove they are a third party beneficiary." . . . This Court has an obligation to address standing, *sua sponte* if necessary, as it goes to the heart of whether jurisdiction exists. . . . **There is no requirement [the accused infringer] be a third party beneficiary to raise the issue of whether the [relevant agreement] actually transferred the patent-in-suit,** and the Federal Circuit regularly addresses similar challenges brought by non-parties to a contract. *See, e.g., Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363–68 (Fed. Cir. 2010); *Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 583 F.3d 832, 841–42 (Fed. Cir. 2009); *IpVenture, Inc. v. Prostar Computer, Inc.*, 503 F.3d 1324, 1325–27 (Fed. Cir. 2007). **[Alleged patentee's] argument is baseless**.

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, No. A-12-CA-773-SS, 2015 WL 11251772, at *3 n.2 (W.D. Tex. Feb. 17, 2015) (emphases added), *aff'd in relevant part, vacated*

5

██████████████████████████████████████████████████

*in part, remanded*, 676 F. App'x 967 (Fed. Cir. 2017); *see also Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1192–93 (Fed. Cir. 2007) (considering statutory standing in light of provisions in agreement between purported patentee and non-party); *Lurco Health & Beauty, LLC v. Tran*, No. 4:19-CV-51-SDJ, 2020 WL 2747233, at *8–9 (E.D. Tex. May 27, 2020) (analyzing Article III standing in view of agreement between plaintiff and non-party). Indeed, in *Intellectual Tech,* the Federal Circuit considered an options clause of a security agreement between a parent of the alleged patentee, OnAsset, and non-party, Main Street. 2024 WL 1897130, at *1. The accused infringer, Zebra, was not a party or third-party beneficiary to that agreement. Yet, the court considered whether the agreement deprived plaintiff, IT, of ownership.[1] *Id*. at *4–7.

Pantech also argues that the ████████████████ are somehow ineffective because they relate to "underlying property" and not the contract itself. Dkt. 310 at 8. Pantech, however, provides no legal authority to support this distinction. The case law is, in fact, to the contrary. *Lone Star*, for example, concerned a transfer agreement containing anti-assignment clauses that restricted assignment of underlying patents in addition to the transfer agreement itself. *Id*. (citing *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1232–33 (Fed. Cir. 2019)). And, contrary to Pantech's argument, *Au New Haven* does not support its position. In that case, an anti-assignment provision was found ineffective to void an assignment of patents because the anti-assignment clause did not state such an assignment would be void. *Au New Haven, LLC v. YKK Corp.*, 210 F. Supp. 3d 549, 554-55 (S.D.N.Y. 2016)). It was not found to be ineffective because it was directed to underlying property as Pantech argues. ████████████████

---

[1] The Federal Circuit concluded that an *unexercised option to assign* did not divest the patent owner of its exclusionary rights. *Id*. at *7. Unlike the *unexercised option* in *Intellectual Tech*, the ████████████████████████████████████████████ are mandatory. *See Black Elk*, 2020 WL 4940806, at *6; *Goldin*, 166 F.3d at 715; *Askanase*, 45 F.3d at 106; *Ormond Realty*, 491 A.2d at 172; *JP Morgan*, 79 F. Supp. 3d at 650.

6

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ and, under the analysis in *Au New Haven*, ████████████████. *Id.* (recognizing effectiveness of anti-assignment clauses that expressly state an assignment "would be invalid or void")(citations omitted); *see also Leane v. UnifiedOneline, Inc.*, No. 3:20-CV-3097-B, 2020 WL 6683106, at *5 (N.D. Tex. Nov. 12, 2020) (finding anti-assignment provision of interest sale agreement ("ISA") relevant to ownership of patents).

Pantech's reliance on *Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.* is also misplaced. *Barkan* concerned a motion for expedited briefing. No. 2:21-cv-00034-JRG, 2021 WL 8441748, at *1 (E.D. Tex. Dec. 22, 2021). The court did not address an anti-assignment clause, did not reach any decision on the merits with respect to ownership, and merely concluded that expedited briefing was not warranted given the procedural posture of the case. *Id.* at *2.

## IV. PANTECH'S LACK OF STANDING IS A PROBLEM OF ITS OWN MAKING

Pantech knew of the ████████████████ when it attempted to purchase the patents-at-issue from Pantech Inc. It willfully blinded itself to the terms of those ████ to extract non-FRAND royalties from licensees. Dkt. 311 at 6 (citing Tr. 309:7–10, 311:7–312:22; Sealed Tr. (3/25/24) 36:8–37:4), 44. Now, to salvage standing, Pantech alleges "it took assignment of the patents expressly subject to the ████████████████," which Pantech has never seen. Dkt. 310 at 5. Pantech cannot have it both ways. It had an obligation to quiet this issue with ████ ████ when it attempted to purchase the patents-at-issue, but did not. Dkt. 299 at 10.

7

| | |
|---|---|
| Date: May 31, 2024 | Respectfully submitted,<br><br>/s/ David M. Airan<br>David M. Airan (lead counsel)<br>Wesley O. Mueller<br>Robert T. Wittmann<br>Paul J. Filbin<br>Leonard Z. Hua<br>Christopher J. Gass<br>John K. Winn<br>Nicole E. Kopinski<br>Pei Chen<br>Michael J. Schubert<br>James W. Sanner<br>LEYDIG, VOIT & MAYER, LTD.<br>Two Prudential Plaza, Suite 4900<br>180 North Stetson Avenue<br>Chicago, IL 60601<br>Telephone: (312) 616-5600<br>Facsimile: (312) 616-5700<br>dairan@leydig.com<br>wmueller@leydig.com<br>bwittmann@leydig.com<br>pfilbin@leydig.com<br>lhua@leydig.com<br>cgass@leydig.com<br>jwinn@leydig.com<br>nkopinski@leydig.com<br>rchen@leydig.com<br>mschubert@leydig.com<br>jsanner@leydig.com<br><br>Richard L. Rainey<br>COVINGTON & BURLING LLP<br>One CityCenter<br>850 Tenth Street NW<br>Washington, DC 20001<br>Telephone: (202) 662-5565<br>Facsimile: (202) 778-5565<br>RRainey@cov.com |

        **G. Blake Thompson**
State Bar No. 24042033
Blake@TheMannFirm.com
**J. Mark Mann**
State Bar No. 12926150
Mark@TheMannFirm.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 657-8540
Facsimile: (903) 657-6003

*Attorneys for Defendant,*
*OnePlus Technology (Shenzhen) Co., Ltd.*

██████████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on May 31, 2024, and Defendant served a true and correct copy of the foregoing document on Plaintiffs' counsel of record by electronic mail.

                                            */s/ G. Blake Thompson*
                                            **G. Blake Thompson**

████████████████████████████
████████████████████████████████████
███████████████████
                               ██████████