# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| PANTECH CORPORATION and PANTECH WIRELESS, LLC, *Plaintiffs*, v. ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., *Defendants*. | Case No. 5:22-cv-00069-RWS  FILED UNDER SEAL |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO ONEPLUS'S MOTION TO <u>DISMISS FOR LACK OF STANDING</u>**

OnePlus's arguments in reply do not change the facts or the law as set forth in Pantech's Opposition. Pantech has established its ownership of the patents (Opp. at 15, Ex. C), its compliance with the ▮▮▮ (Opp. at 4-7), and that neither ▮▮▮ have sought to void the assignment (Opp. at 4-9). There are thus no questions of either Article III or statutory standing. This District has held that, where plaintiff is the record assigned and owner, legal title presumptively rests with plaintiff "and Defendants must overcome this presumption to defeat [] standing." *Kaist IP US LLC v. Samsung Elecs. Co.*, 2018 WL 10498168, at *4 (E.D. Tex. Sept. 6, 2018)(citing cases). OnePlus has not overcome the presumption.

## I. PANTECH HAS COMPLIED WITH THE ▮▮▮

First, Pantech Corp. has shown that it entered into Assignment Agreements with both Pantech Inc. and GoldPeak, wherein it agreed to be bound by the ▮▮▮. Opp. at 4-9. OnePlus now seeks to add an additional requirement that this agreement must have taken some specific form, which OnePlus argues the Assignments failed to take.[1] Reply at 2. ▮▮▮ Mot. Ex. 1 at §7.1, Mot. Ex. 2 at 9-10. ▮▮▮ *Id*. The Assignment Agreements satisfy this requirement. Thus, Pantech Corp. owned these patents at the time of filing suit, and now, and therefore has standing.

Specifically, Pantech Corp. executed written agreements, which clearly provide that it relinquished the ability to enforce the assigned patent rights against both ▮▮▮. *See* Opp. at 4-5. That the relevant section is styled as a warranty does not render this untrue. Pantech Corp. took the patents subject to the warranty and exceptions thereto. Given that ▮▮▮

---

[1] OnePlus also argues throughout its Reply that Pantech Corp.'s agreement must be written. There is no such requirement in the ▮▮▮. Mot. Ex. 1 at §7.1.

1

███████ ████████████████ (as to Pantech Inc. and GoldPeak at least) are a restriction of exercise of rights against the licensees, Pantech Corp.'s execution of the Assignments are an explicit agreement to be bound by the ██████ No magic language was required and OnePlus's argument to the contrary should be rejected.

Second, though OnePlus argues there is no "implicit" basis to support Pantech's theory, OnePlus ignores the fact that Pantech's argument is not based on an assumed understanding but is anchored in an actual written agreement. The Assignments signed by Pantech Corp. explicitly acknowledge the ████████████████. To the extent there is any doubt whether Pantech Corp.'s execution of the Assignment, which clearly acknowledges these ██████ constitutes a sufficient agreement to be bound by those ██████ such doubt would be resolved in Pantech Corp.'s favor under governing law. Opp. at 5-7. Accordingly, this argument does not render the ████████████████ superfluous.

Third, OnePlus's argument, raised for the first time in Reply, that Pantech Corp. has not seen the ████████████████, is irrelevant. Pantech Corp. was not assigned rights or delegated duties to those ██████ outside of the licenses, covenants, releases, and other obligations that run with the assigned patents. That an assignee could comply with the ████████████ ██████████ without being privy to the agreements in their entirety was in fact contemplated by the ██████ themselves. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████ Mot. Ex. 1 at § 8.1 (emphasis added). ████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

2



).” Mot. Ex. 2 at 10 (emphasis added). Thus, ▮▮▮▮ both clearly contemplated potential purchasers agreeing to be bound by the terms and conditions of the ▮▮ based on limited knowledge of the agreements. This is exactly what was provided to Pantech Corp. during licensing negotiations and the terms to which Pantech Corp. agreed to adhere.

## II. EVEN IF TRIGGERED; ▮▮▮▮▮▮ CANNOT BE ENFORCED BY ONEPLUS.

Pantech has not asserted that a defendant cannot put at issue agreements to which it is not a party (Reply at 4-5) but rather that a defendant cannot assert a contractual claim against a plaintiff on a third-party's behalf. *See* Opp. at 9-13. The cases raised by OnePlus do not contradict this stance (Reply at 5-6), with perhaps the exception of *Intellectual Tech LLC v. Zebra Techs. Corp.*, 2024 WL 1897130 (Fed. Cir. May 1, 2024), which actually reinforces Pantech's position. In *Intell. Tech*, the patents as issue were subject to a security agreement that, in event of default, provided the secured party (Main Street) the option of enforcing or assigning the patents. *Id*. at *2. Because default had occurred, the defendant asserted plaintiff no longer had standing. The Court, however, held that "[n]othing in the agreement indicates that, without further action by Main Street, the mere triggering of [its] options [ ] automatically deprived [plaintiff] of all its rights. *Id*. at *5. Because Main Street had not exercised such rights, constitutional standing was not impacted. *Id*. at *5, 7 The Court did not find that defendant could stand in the shoes of Main Street and enforce the options where Main Street had not, just as OnePlus cannot stand in the shoes of ▮▮▮▮ and seek to enforce their right to nullify the patent assignment where ▮▮▮▮ themselves have not (though unlike in *Intell. Tech*, Pantech does not agree that the triggering event has happened). Opp. at 4-7.

OnePlus is incorrect that that ▮▮▮▮▮▮▮▮ do not require enforcement or

3

that the assignments are void *ab initio*. Reply at 4-5. None of the cases cited by OnePlus on this point involve anti-assignment clauses related to the assignment of patents and none are controlling here. The Federal Circuit has held that "whether the language of a contract creates an assignment of future rights, federal law—as opposed to state law—controls." *Kaist*, 2018 WL 10498168 at *4. The situation here, of potential reversionary assignment, is akin to assignment of future rights. In evaluating such contracts, the Federal Circuit has rejected "shall be" language as requiring automatic assignment. *See id*. at *5. "[U]se of 'shall' implies a requirement of some future action. The Federal Circuit and courts in this district have found contracts with provisions using "shall" require a transfer at some future date." *Id*. at *6. If Pantech Corp. had failed to satisfy the ▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬ (it has not), then ▬▬▬▬▬▬▬▬ could attempt to take action to nullify GoldPeak's assignment. No such action has occurred.[2] Given "that assignment must be evaluated based on the actual transfer of rights, not mere ability" (*Intell. Techs*, 2024 WL 1897130 at *7), it is clear Pantech Corp. has ownership.

### III.  ONEPLUS'S CHALLENGE TO STANDING HAS BEEN WAIVED.

OnePlus's only discussion of waiver in its Reply is that an argument regarding constitutional standing is not waivable. But the issue here is not one of constitutional standing; which Pantech Corp. has established through its assignments filed with the USPTO. *See* Opp. at 15, Ex. C. The issue here is thus one of statutory standing and OnePlus does not attempt to argue that it has not waived its ability to raise statutory standing.

---

[2] Pantech did not provide the declarations of Mr. Kim and counsel to prove Pantech Corp. had agreed to be bound by the ▬▬▬▬▬ that was evidenced from the Assignments. The declarations establish that ▬▬▬▬▬▬▬▬ know of the assignments and never sought to void them. OnePlus should not be heard to complain about the timing of these declarations given that OnePlus never raised this issue prior to trial, particularly because Mr. Kim represents a foreign third-party who was not subject to any discovery obligations in this case.

Dated: June 7, 2024					By:	/s/ James A. Fussell, III
							Geoffrey Culbertson
							Kelly Tidwell
							PATTON TIDWELL & CULBERTSON, LLP
							2800 Texas Blvd. (75503)
							Post Office Box 5398
							Texarkana, TX 75505-5398
							(P) (903) 792-7080
							(F) (903) 792-8233
							gpc@texarkanalaw.com
							kbt@texarkanalaw.com

							James A. Fussell, III
							Jamie B. Beaber
							Alan M. Grimaldi
							Saqib J. Siddiqui
							Tiffany A. Miller
							Baldine Paul
							Clark S. Bakewell
							Tariq Javed
							Seth W. Bruneel
							Courtney Krawice
							MAYER BROWN LLP
							1999 K Street, N.W.
							Washington D.C. 20006
							(202) 263-3000
							jfussell@mayerbrown.com
							jbeaber@mayerbrown.com
							agrimaldi@mayerbrown.com
							ssiddiqui@mayerbrown.com
							tmiller@mayerbrown.com
							bpaul@mayerbrown.com
							cbakewell@mayerbrown.com
							tjaved@mayerbrown.com
							sbruneel@mayerbrown.com
							ckrawice@mayerbrown.com

							Graham (Gray) M. Buccigross
							MAYER BROWN LLP
							Two Palo Alto Square, Suite 300
							3000 El Camino Real
							Palo Alto, CA 94306
							(650) 331-2000
							gbuccigross@mayerbrown.com

							Gregory J. Apgar
							MAYER BROWN LLP

1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
gapgar@mayerbrown.com

Luiz Miranda
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
lmiranda@mayerbrown.com

*Counsel for Plaintiffs Pantech Corporation and Pantech Wireless, LLC*

6

### CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 7th day of June, 2024, with a copy of this document via email.

*/s/ James A. Fussell, III*
James A. Fussell, III