**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| PANTECH CORPORATION and PANTECH WIRELESS, LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CASE NO. 5:22-CV-00069-RWS |
| ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., | § § § § | |
| Defendant. | § | |

## <u>ORDER</u>

Before are the Court are the parties' post-trial motions. Docket Nos. 299, 300, 302, 303, 308. The motions are fully briefed. Docket Nos. 309–12, 316, 319, 321–24, 334–37. The Court heard argument on these motions (Docket No. 350), and subsequent briefing was submitted (Docket Nos. 352, 353). For the reasons set forth below,

- Defendant OnePlus Technology (Shenzhen) Co., Ltd.'s Motion to Dismiss for Lack of Standing (Docket No. 299) is **DENIED**;

- Defendant OnePlus Technology (Shenzhen) Co., Ltd.'s Omnibus Motion for Judgment as a Matter of Law (Docket No. 300) is **GRANTED-IN-PART** and **DENIED-IN-PART**; and

- Plaintiffs Pantech Corporation's and Pantech Wireless, LLC's Motions for Entry of Judgment (Docket No. 302), Award of Attorneys' Fees and Enhancement (Docket No. 303), and Bill of Costs (Docket No. 308) are **DENIED-WITHOUT-PREJUDICE** as premature.

# BACKGROUND

On March 21, 2024, the Court empaneled a jury, and trial commenced on March 25, 2024. Docket Nos. 260, 262. Plaintiffs Pantech Corporation and Pantech Wireless, LLC (collectively "Pantech") asserted that Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("OnePlus") willfully infringed Claim 1 of U.S. Patent No. 10,869,247 ("the '247 patent"), Claims 6 and 9 of U.S. Patent No. 11,012,954 ("the '954 patent"), Claims 9 and 11 of U.S. Patent No. 9,548,839 ("the '839 patent"), Claims 1, 6, and 10 of U.S. Patent No. 9,063,654 ("the '654 patent), and Claims 10 and 17 of U.S. Patent No. 8,893,052 ("the '052 patent"). *See* Docket No. 258. OnePlus denied that it was liable for infringement, asserted that the '839 and '954 Patents are exhausted, and argued that the '654 and '052 patents are invalid. *See id.*; *see also* Docket No. 228 at 10.

The jury returned a unanimous verdict, finding all the asserted claims were willfully infringed, the asserted claims of the '654 and '052 patents were not invalid, and that the licensed base stations did not substantially embody the '839 or '954 patents. Docket No. 258. The jury awarded $7.41 million in damages for the infringement of the standard essential patents (the '247, '839, and '954 patents, collectively the "SEPs") and $2.85 million in damages for the non-essential patents (the '654 and '052 patents, collectively the "NEPs"). *Id.* at 6.

# LEGAL STANDARDS

## I. Constitutional Standing

"Article III standing is a jurisdictional requirement, which is incurable if absent at the initiation of suit." *Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir. 2024) (citations omitted). "At least one plaintiff must have [Article III] standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). Article III standing "requires: (1) an injury in fact; (2) traceability; and (3) redressability." *Intell. Tech.*, 101 F.4th at 813 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"An injury in fact is an 'actual or imminent' 'concrete and particularized' 'invasion of a legally protected interest.' " *Id.* (citing *Lujan*, 504 U.S. at 560).

There is a "jurisdictional and substantive distinction" between Article III standing and the statutory requirements of 35 U.S.C. § 281. *See id.* at 814. First, Article III standing is a jurisdictional requirement that is "incurable if absent at the initiation of the suit" while § 281 is a statutory requirement that is not jurisdictional and is curable by joinder. *Id.* Second, the § 281 inquiry and the Article III injury-in-fact inquiry are distinct. *Id.* (citing *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234–35 (Fed. Cir. 2019)*,* and then citing *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1324 (Fed. Cir. 2021)). The Article III inquiry questions "whether a party has *an* exclusionary right." *Id.* (citing *Univ. of S. Fla. Rsch. Found.*, 19 F.4th at 1323). The § 281 inquiry questions whether a party has "*all* substantial rights in the asserted patents." *Lone Star*, 925 F.3d at 1234–35.

## II.     Rule 50 Judgment as a Matter of Law

A renewed motion for judgment as a matter of law under Rule 50(b) may only raise arguments previously made in a motion for judgment as a matter of law under Rule 50(a). *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016). A court's review of a jury's verdict is "especially deferential." *Id.* at 675 (citation omitted). The jury's verdict may not be overturned "unless the jury's factual findings are not supported by substantial evidence, or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." *See E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 452 (5th Cir. 2013) (citations omitted). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."

*Nelson v. Sunbeam Prods, Inc.*, 579 F. Supp. 3d 857, 864 (E.D. Tex. 2022) (quoting *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000)).

## III.    New Trial

A new trial may be granted on all or some of the issues on which there has been a trial by jury for "any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). Notwithstanding the broad sweep of Rule 59, in the Fifth Circuit[1] "district courts 'do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial.' " *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) (citing *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir.1999)); *see also Core Wireless Licensing S.a.r.l. v. LG Elecs., Inc.*, 344 F. Supp. 3d 890, 894 (E.D. Tex. 2018). For example, a new trial may be granted "if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Core Wireless*, 344 F. Supp. 3d at 894 (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985)).

## ANALYSIS

## I.    OnePlus's Motion to Dismiss for Lack of Standing

At trial, OnePlus challenged Pantech's standing for the first time. Given that trial was the first time OnePlus raised the issue, OnePlus has waived the ability to contest whether Pantech has satisfied the § 281 inquiry (previously referred to as statutory standing). Accordingly, the only question currently before the Court is whether Pantech "demonstrated the irreducible constitutional

---

[1] In considering a motion for a new trial, the Federal Circuit applies the law of the regional circuit. *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007).

minimum of an injury in fact," which only requires Pantech "to show that it retained *an* exclusionary right" in the asserted patents. *See Intell. Tech.*, 101 F.4th at 813–14.

Here, OnePlus asserts that Pantech Corp. has no constitutional standing because the assignment of the asserted patents from Pantech Inc. ("PI") and GoldPeak Innovations, Inc. ("GoldPeak") (PI and GoldPeak collectively, "prior owners") to Pantech Corp. is void. Docket No. 299 at 5–6. OnePlus argues the assignment was void *ab initio* because the prior owners and Pantech Corp. did not comply with the "Assignability" clauses of the ███████████████████, which encumbered the prior owners' power to assign the asserted patents:



Specifically, OnePlus argues the prior owners' assignment was automatically "null and void" because "Pantech Corp. did not execute an agreement to be bound by either license." Docket No. 299 at 5; *see also* Docket No. 321 at 7. OnePlus explains Pantech's reliance on the warranties of the patent purchase agreements ("PPAs") does not show Pantech Corp. agreed to be bound by the ███████████████, either explicitly or implicitly. Docket No. 321 at 6. OnePlus argues these are instead warrants by the *prior owners* that disclose that the patents subject to the PPA are encumbered by the ███████████████. *Id.* OnePlus cites Delaware and New York law to argue that these anti-assignment clauses are enforceable and that the prior owners' assignment was void from the beginning because the assignment clauses contain clear language that assignment in contravention with the terms of the clause "shall be null and void." *Id.* at 8–9; Docket No. 299 at 10–11. Accordingly, OnePlus asserts Pantech Corp. never had Article III standing because it was never assigned the asserted patents. Docket Nos. 299 at 11–12, 321 at 5.

Pantech responds that OnePlus would not have filed its motion if OnePlus had properly raised this issue. Docket No. 310 at 9. Pantech explains the PPAs expressly and implicitly satisfy the Assignability clauses of the ███████████████. *Id.* at 9–11. Pantech contends that OnePlus's arguments rely on a misreading of the Assignability clauses because the Assignability clauses allowed the prior owners "to freely assign their patents" subject to certain conditions. *Id.* at 8–9. Pantech dismisses OnePlus's reliance on witness testimony at trial, arguing that such testimony at most showed those witnesses could not remember executing an agreement to be bound by those licenses. *Id.* at 10–11. Pantech blames its witnesses' testimony on OnePlus's belated Article III standing argument. *Id.* Pantech further argues that only ███████████████ may enforce and adjudicate the contractual rights within their respective license agreements. *Id.* at 13–15. Pantech explains that PI sent ███████████████ notice of the assignment of the asserted

'052, '654, '839, and '954 patents[2] and that both ███████ have been communicating

with Plaintiffs in connection with these licenses and ongoing litigation but neither ███████

██████ has challenged the validity of the PPA or the assignment of the asserted patents. *Id.*

Finally, Pantech argues that the case law cited by OnePlus is inapplicable because those cases

involved a contracting party enforcing its own rights and focus on the assignability of *contracts*,

not the assignability of *patents*. *Id.* at 11–12.[3]

   "[Q]uestions of patent ownership are determined by state law." *Larson v. Correct Craft,*

*Inc.*, 569 F.3d 1319, 1327 (Fed. Cir. 2009); *see also Schwendimann v. Arkwright Advanced*

*Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020) ("[T]he plaintiff must have the legal title to

the patent or patent application, which is determined by state law."). There is no dispute that the

███████ is subject to Delaware law (*see* Docket Nos. 299 at 10, 299-1 at ¶ 10.10, 310 at 14)

and the ███████ is subject to New York law (Docket No. 299 at 10, 299-2 at 13, 310 at

14). Delaware and New York contract law are similar as to this issue. Under both Delaware and

New York law, assignability clauses may render an assignment void *ab initio*—but such clauses

are construed and enforced narrowly. *See In re Woodbridge Grp. of Co., LLC*, No. BR 17-12560-

BLS, 606 B.R. 201, 205–6 (D. Del. 2019) (applying Delaware law); *see also Au New Haven, LLC*

*v. YKK Corp.*, 210 F. Supp. 3d 549, 553–54 (S.D.N.Y. 2016) (applying New York law). For

example, in *Au New Haven* the assignment of patents was not void *ab initio* because the

---

[2] At the hearing OnePlus conceded that the '247 patent is not subject to the Assignability clause "[u]nder the current state of the record." Docket No. 350 at 21:6–9.

[3] Pantech also argues that precedent shows the adjudication of the contractual rights of a third party is not a constitutional question. Docket No. 310 at 18–19. This argument is without merit. "The interpretation of an unambiguous contract is a legal issue" and courts frequently interpret third party contracts to confirm validity of title. *See, e.g.*, *Intell. Tech.*, 101 F.4th at 811–13; *see also, Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, No. A-12-CA-773-SS, 2015 WL 11251772, at *3 n.2 (W.D. Tex. Feb. 17, 2015), *aff'd in relevant part, vacated in part, remanded*, 676 F. App'x 967 (Fed. Cir. 2017).

assignability clause did not explicitly limit the transfer of the patent at issue or render such assignment void. 210 F. Supp. 3d at 554. In *National Football League Players' Concussion Injury Litigation* ("*NFL Players' Litigation*"), the appellate court found that even though an agreement was formed in violation of an assignability clause, the district court erred by voiding the entire agreement because "something less than a true assignment would not violate the anti-assignment agreement." 923 F.3d 96, 110–11 (3d Cir. 2019) (applying New York law).

While this is a close issue, ultimately the Court determines that there is constitutional standing. Pantech persuasively argues that there is sufficient compliance with the Assignability clause such that the assignment is not void *ab initio*. The PPAs exclude █████████ █████ from the warranty provision and disclose that ████████████ had non-exclusive licenses for the lifetime of the patents. Docket No. 310-3 at 5, 36; *see also* Docket No. 310-4 at 4, 25. By accepting the PPAs with these warrants, Pantech signed a written agreement that acknowledged that ██████████████ licenses. *See* Docket Nos. 310-3, 310-4. Thus, at the very least, Pantech's signing of the PPAs created a written agreement acknowledging that █████████████ have the right to use these patents ████████████. *See Sanitec Indus. v. Micro-Waste Corp.*, No. CIV.A. H-04-3066, 2006 WL 3455000, at *40 (S.D. Tex. Nov. 28, 2006), *aff'd sub nom. Sanitec Indus., Inc. v. Micro-Waste Corp.*, 296 F. App'x 44 (Fed. Cir. 2008) ("A party 'acquiring by assignment or license an interest in [an] invention. . . takes title [from the assignor] subject to prior assignments or licenses of which the assignee must inform himself as best he can and at his own risk.").

OnePlus correctly points out that the license information disclosed in the PPAs is not coextensive with the terms of the ████████████. Given Delaware's and New York's narrow interpretation and enforcement of void *ab initio* provisions, however, OnePlus fails to

convincingly argue that this issue renders the patent assignment void *ab initio*.[4] Both ███████ ████████████ have strict confidentiality provisions that limit what can be disclosed—even to bona fide purchasers. Docket Nos. 299-1 at ¶¶ 8.1–8.3, 299-2 at 11–12. For example, the ███ █████ allows disclosures to "████████████████████████████████████ ████████████████████████████████" Docket No. 299-1 at ███. The ██████████ is even more explicit, stating a disclosure may be made "████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████" Docket No. 299-2 at 11.

When read in the context of the confidentiality clauses, the Assignability clauses support a looser compliance requirement than OnePlus's proposal. As discussed above, the PPAs' disclosure that ████████████████████████ licenses is consistent with the information that *could* be disclosed to a bona fide purchaser pursuant to the confidentiality clauses of the ████████████ ████████████. Pantech executed a written agreement accepting the assignors' warrants with the knowledge that it could not interfere with ████████████ rights to use these patents ████████████ Accordingly, as Pantech acknowledges, Pantech's decision to execute the PPA resulted in a written agreement that bound it to the reasonably necessary terms of the ████████ ████████████—at the very least implicitly.

---

[4] At most OnePlus has shown that this contract is *voidable* by ████████████. This does not affect Pantech's constitutional standing because there has been no showing that any party has exercised a right to divest Pantech of its exclusionary rights. *See Intell. Tech.*, 101 F.4th at 817. Pantech's argument that ████████████ have long been aware of these patent assignments, however, bears less weight because, based on the evidence before the Court, it is unclear whether ████████████ has seen the language of the PPAs. *See* Docket Nos. 310-3 at Art. 18, 310-4 at Art. 15. Accordingly, this order has no bearing on ████████████ right to enforce their respective license agreements.

Moreover, even if the assignment was void *ab initio*, the central question here is whether Pantech obtained *an* exclusionary right, not *all* exclusionary rights. The Court is not convinced that Pantech would be divested of *all* its exclusionary rights even if the assignment of the asserted patents was void. Based on the parties' briefing, the language of the PPAs, and the scope of the assignability provisions, case law suggests that Pantech would still retain *an* exclusionary right in the affected patents even if the assignment of the asserted patents was void *ab initio*. *See NFL Players' Litigation*, 923 F.3d at 110 (finding something less than a true assignment would not violate the assignability clause).[5]

For these reasons, OnePlus's motion to dismiss for lack of standing (Docket No. 299) is **DENIED**.

## II.    OnePlus's Motion for Judgment as a Matter of Law

OnePlus moves for judgment as a matter of law ("JMOL") on direct infringement, inducement, willfulness, invalidity of the '052 and '654 patents, exhaustion of the '839 and '954 patents, and damages.[6] Docket Nos. 300, 322. Pantech opposes, arguing the Court should uphold the jury's verdict on all these issues. Docket Nos. 312, 337. The Court addresses each issue in turn.

---

[5] The subject language "[a]ny such assignment, or attempt to assign, to any person or entity other than the NFL Parties *any rights or claims* relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action" is like the language of the ▮▮▮▮▮▮ and broader than the language of the ▮▮▮▮▮▮▮▮. *Compare id.* at 102 *with* Docket Nos. 299-1 at ¶ 7.1, 299-2 at 10–11. The language of the assignability clause in *NFL Players' Litigation*, however, is only directed towards the agreement itself, while the provisions in the ▮▮▮▮▮▮▮▮ are directed towards both the assignment of the agreement and ownership of the patents.

[6] OnePlus also maintains its position that the '052 and '654 patents cover unpatentable subject matter. *See* Docket No. 300 at 31. The Court already addressed this argument at the summary judgment phase and need not address this conclusory argument, which is made for the purposes of preserving OnePlus's rights on appeal. *See id.*

### A.   OnePlus's JMOL on Direct Infringement

#### 1.  OnePlus's JMOL on Direct Infringement of the '052 Patent

OnePlus argues that Pantech failed to offer substantial proof for claims 10 and 17 of the '052 patent. Docket Nos. 300 at 11–18, 322 at 8–12. First, OnePlus contends that the "downward swipe" identified as the "application selection gesture" and the "diagonal swipe" identified as the "target application control gesture" do not meet the requirements of the '052 patent. Docket Nos. 300 at 11–14, 322 at 8–9. Second, OnePlus argues Pantech's concession that its expert, Dr. Robert Stevenson, did not identify an "event table" structure is fatal because Stevenson's conclusory testimony that the structure must be present because of how the phone works cannot satisfy a means-plus-function claim. Docket Nos. 300 at 15–17, 322 at 9–11. Finally, OnePlus argues that Pantech's position that the phone bubble icon is not a "control interface" conflicts with Pantech's invalidity position and ignores evidence that the phone bubble icon controls the application. Docket Nos. 300 at 17–18, 322 at 11–12.

Pantech responds that there is substantial evidence to satisfy all the elements of the asserted claim. Docket Nos. 312 at 11–19, 337 at 4–5. First, Pantech contends that OnePlus is incorrectly reading the claim language to (1) improperly limit it to a single target application control gesture and (2) require the application control gesture to *cause* the application executing unit to determine the first application as the target application when the claim only requires selection *based on* the gesture. Docket No. 312 at 11–14 (emphasis added). Second, Pantech represents that its expert met the burden of showing the structure of an event table by observing the function and using his knowledge and experience to infer the presence of an event table. Docket Nos. 312 at 14–15, 337 at 4. Finally, Pantech argues that there is no inconsistency between its interpretation of a "control interface" for its infringement and non-invalidity opinions because the call bubble "is not an

interface that provides control of any features of that application." Docket Nos. 312 at 17–19, 337 at 4–5.

OnePlus persuasively argues there are many issues with Pantech's infringement read. The most problematic is Pantech's reliance on Dr. Stevenson's *ipse dixit* testimony to show the presence of the required structure. The Court's claim construction requires a processor that is programmed to "identify, in an event table in which at least one gesture had been registered, a gesture corresponding to the analyzed outline, shape, or path within an allowable range." Docket No. 51 at 58. At trial, Dr. Stevenson testified:

> The second piece, identifying an event table in which at least one gesture has been registered, a gesture corresponding to this particular gesture, the way, you know, these devices -- kind of the limitations of the hardware, what the hardware is and what the software can do, this is necessarily there. The -- when you have multiple apps like this that can accept all sorts of gestures, when they start up, they have to tell the operating system. The operating system is the lower parts of the soft -- of the software that interacts with the user. So when you're -- when you're using a smartphone, kind of all the general screens when you're not running applications, when you're going to start things up, those are all – that's part of the operating system. That handles all the input and output, all the user input and all the screen displays is the operating system, the apps, the things you download, you know, the weather app or the -- you know, the -- or the music app.
>
> Those are the applications, right? And so the fact that we can download, you know, literally thousands of applications on there, all of which can accept all sorts of gestures, the only way the operating system knows where things go is when you start up these apps, you know, they keep a record of where these gestures are going, what applications they go. And so that's being held in an event table.

Docket No. 264 at 602:7–603:8. This is *ipse dixit*. Dr. Stevenson's opinion is not based on the specific inputs, outputs, or specific functionality of the accused devices—it is a high-level assumption that could be made for any electronic device that runs multiple applications. But a means-plus-function claim must be satisfied through both structure and function because different structures may perform the same functions. *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991); *see also*, *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1178

(Fed. Cir. 2005) ("[I]t is insufficient for the patent holder to present testimony 'based only on a functional, not a structural, analysis.' ").

Furthermore, Dr. Stevenson admitted he did not look at the source code to determine whether the claimed event table was present. Docket No. 264 at 603:13–604:1. He opined that for the specific target application control gesture the event table stored the "beginning point and the ending point of the gesture." *Id.* at 620:17–25. And when asked whether he knew the structure of the table, Dr. Stevenson responded:

> *I don't know that -- the details of exactly what is stored for every -- every possible gesture that you can make.* You can -- you can go look at the software if you want. It's -- but that's -- I don't need to know that in order to determine infringement.

*Id.* at 622:21–623:2 (emphasis added). In other words, Dr. Stevenson conceded that his testimony about the target application control gesture was speculative because he would need to look at the software to determine "the details of exactly what is stored."

It was Pantech's burden to show the accused products possess the infringing structure, including an "event table" that registers the allegedly infringing "gesture[s] corresponding to the analyzed outline, shape, or path within an allowable range." *See* Docket No. 51 at 58. At most Dr. Stevenson provided *ipse dixit* testimony that relied on a phone's general functionality to impute the claimed structure. This is not enough. *See Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1129 (Fed. Cir. 2021) (affirming finding of noninfringement because the expert "discussed the accused technology at only a generalized level and didn't at all discuss [the structure]—focusing on function and results but eliding the way those results are achieved").

For these reasons, OnePlus's judgment as a matter of law for non-infringement of the '052 patent is **GRANTED**.

### 2. OnePlus's JMOL on Direct Infringement of the '654 Patent

OnePlus argues judgment as a matter of law should be granted for noninfringement of claims 1, 6, and 19 of the '654 patent. Docket Nos. 300 at 18–22, 322 at 12–13. OnePlus contends that there is no evidence that the "inactivity timer" is a reference period of time for displaying a second object because both sides' experts agree that the inactivity timer initiates a process of generating a new display, not the removal of the second object. Docket Nos. 300 at 18–20, 322 at 12–13. OnePlus also re-raises its belated claim construction argument that was struck at trial—that the processing unit and control unit were satisfied by the same structure but the plain and ordinary meaning requires that these units use separate processors. Docket Nos. 300 at 20–22, 322 at 13.

Pantech responds that it provided substantial circumstantial evidence that the second object is removed at the expiration of the inactivity timer. Docket Nos. 312 at 19–21, 337 at 5. Pantech also notes that the Court's construction does not prohibit the device from using the "reference period of time" (*i.e.*, the inactivity timer) to execute other actions. Docket Nos. 312 at 19–21, 337 at 5. In response to OnePlus's second argument, Pantech maintains that OnePlus's control and processing unit argument is waived because it was raised for the first time at trial. Docket Nos. 312 at 21–22, 337 at 5. Moreover, Pantech argues that OnePlus's interpretation is not supported or created by the Court's claim construction order. Docket Nos. 312 at 21–22, 337 at 5.

First, Pantech persuasively argues it provided sufficient circumstantial evidence that the accused products meet the "reference period of time" requirement. Pantech's experts, Charles Mauro and Dr. Martin Walker, provided substantial circumstantial evidence, including videos, that the removal of the second object coincides with the expiry of the inactivity timer. *See, e.g.*, Docket No. 264 at 468:3–469:7, 503:8–506:16. The Court's claim construction, however, holds that "merely having the screen go off or idle after an arbitrary amount of time would not, *by itself*, fall within this claim scope." Docket No. 51 at 53. Here, Mr. Mauro provided circumstantial evidence

that non-accused pop-ups in the accused products remained on the screen after the expiry of the inactivity timer. *See, e.g.*, Docket No. 264 at 503:8–506:16. Pantech persuasively argues that a reasonable jury could rely on this testimony to understand that something more is happening than the screen going off or idle after an arbitrary amount of time by contrasting the alleged infringing function (*i.e.*, when the second object remains removed after the screen is reactivated) with the non-infringing action (*i.e.*, when the second object remains after the screen is reactivated). *See id.* OnePlus's other argument—that there can be no infringement because the activity timer removes "all displayed objects"—is unpersuasive. The Court has already rejected OnePlus's position that the "reference period of time" is "selectively" linked to removal of only the second object. *See* Docket No. 51 at 52–54.

Second, OnePlus fails to convincingly argue the Court's decision concerning the "processing unit" and "control unit" claim construction warrants reconsideration. As discussed at trial, Pantech reasonably argues OnePlus's position is a claim construction argument. *See HTC Corp. v. Cellular Commc'ns. Equip., LLC*, 701 F. App'x. 978, 982 (Fed. Cir. 2017). Accordingly, the argument that the control unit and the processing unit require separate processors should have been raised at the *Markman* hearing, and it was not. *See* Docket Nos. 40 at 31–32, 51 at 50–52. OnePlus misrepresents the Court's order because nothing in the Court's construction addresses this unraised issue. *See* Docket No. 51 at 50–52. Allowing OnePlus to raise this new claim construction argument so late in this litigation would be highly prejudicial to Pantech—especially because OnePlus fails to show that anything in the intrinsic record precludes Pantech's interpretation of the plain and ordinary meaning either literally or under the doctrine of equivalents. Accordingly, the Court maintains its trial ruling that OnePlus's belated claim construction argument is waived.

For these reasons, OnePlus's motion for judgment as a matter of law of no direct infringement of the asserted claims of the '654 patent is **DENIED**.

### 3. OnePlus's JMOL on Direct Infringement of the '954 Patent

OnePlus argues that Pantech cannot show direct infringement of the asserted claims of the '954 patent because of Dr. Todor Cooklev's testimony that the mobile device can *randomly* select *any* of the component carriers as the delegate component carrier ("delegate CC"). Docket Nos. 300 at 24–25, 322 at 14. OnePlus contends this interpretation reads out an aspect of the asserted claims because the delegate CC *must* be selected from the group of component carriers based on some technical characteristics. Docket Nos. 300 at 24–25, 322 at 14. Pantech responds that Dr. Apostolos Kakaes's requirement that selection must be "based on some characteristics" is inapposite with the claim language and a reasonable jury could have credited Dr. Cooklev's testimony that "random" selection satisfies this claim term. Docket Nos. 312 at 24, 337 at 6.

Upon review of the parties' arguments and the experts' testimony, the Court is not convinced that Dr. Cooklev's interpretation of the plain and ordinary meaning is precluded by the '954 patent.[7] OnePlus points to nothing in the specification that would preclude infringement if the selection of the delegate CC was random (*e.g.*, randomly selecting a number between 1 and 10 is still selecting a number). Nor does OnePlus convincingly argue that the claim language itself

---

[7] The Court allowed Dr. Kakaes to present his testimony because it was consistent with the specification. Docket No. 178 at 24–25. The parties' pretrial motions, however, focused on Dr. Kakaes's testimony, not Dr. Cooklev's. *Id.* At the dispositive motion hearing, Pantech's counsel could not explain how Dr. Cooklev's broader interpretation was supported by the specification. At trial, however, Dr. Cooklev emphasized that his interpretation is supported by the specification because it only provides examples wherein the delegate CC *may* be selected based on certain characteristics. Docket No. 262 at 384:16–385:18. OnePlus points to nothing in the specification that requires that a delegate CC "must" be selected based on specific technical characteristics. The jury considered both parties' positions and reasonably credited Dr. Cooklev's testimony.

precludes random selection or setting of the delegate CC because the specification provides examples wherein the delegate CC *may* be selected based on certain characteristics.

Accordingly, OnePlus's motion for judgment as a matter of law of no direct infringement of the asserted claims of the '954 patent is **DENIED**.

### 4. OnePlus's JMOL on Direct Infringement of the '247 Patent

OnePlus argues judgment as a matter of law is warranted for claim 1 of the '247 patent because the parties' experts agree that the 5G standard requires a New Data Indicator (NDI) bit to retransmit. Docket Nos. 300 at 23–24, 322 at 13–14. OnePlus contends that Dr. Kakaes opined that an NDI works using the exact same functionality as a negative acknowledgement ("NACK") and Dr. Cooklev testified that a "NACK is an indication that whatever has been sent was not decoded successfully." Docket Nos. 300 at 23–24, 322 at 13–14. Accordingly, OnePlus posits Claim 1 is not infringed because the NDI's decision not to retransmit is the same as a NACK. Docket Nos. 300 at 23–24, 322 at 13–14.

Pantech responds that the jury heard substantial testimony that 5G uses substantially different technology than 4G—specifically that 5G does *not* use NACKs. Docket Nos. 312 at 23–24, 337 at 5–6. Pantech specifically credits Dr. Cooklev's testimony about the differences between NDIs and NACKs to provide support that there was substantial evidence of infringement. Docket Nos. 312 at 23–24, 337 at 5–6.

OnePlus fails to show judgment as a matter of law is warranted. The jury heard substantial testimony that 5G technology does not use a NACK and a reasonable jury could have disagreed with Dr. Kakaes's opinion that an NDI is equivalent to a NACK. *See, e.g.*, Docket No. 262 at 353:10–355:19, 360:23–361:16; *see also* Docket No. 264 at 459:14–16.

Accordingly, OnePlus's motion for judgment as a matter of law of no direct infringement of claim 1 of the '247 patent is **DENIED**.

### 5. OnePlus's JMOL on Direct Infringement of the '839 Patent

OnePlus also argues that there is no direct infringement of claim 9 of the '839 patent because Pantech failed to show that the indexes are determined according to the claimed ratios. Docket Nos. 300 at 22–23, 322 at 14. OnePlus argues that the fact that Pantech did not evaluate the source code is fatal because, as Pantech's expert Dr. Cooklev conceded, the standards may be implemented in ways that would not use the claimed ratios. Docket Nos. 300 at 22–23, 322 at 14. Pantech responds that there is substantial evidence that the accused products use the claimed ratios. Docket Nos. 312 at 22–23, 337 at 6. Specifically, Dr. Cooklev considered the relevant ratios in the mandatory provisions of 3GPP TS 36.211 V8.9.0, which aligned with asserted patents. Docket No. 312 at 22. Dr. Cooklev showed that OnePlus's conformance tests rely on clause 6.9 of the 3GPP TS 36.211 standard, which requires the use of the claimed ratios. *Id.*

Here, OnePlus's own documents show that the accused products are tested and shown to be in conformance with clause 6.9 of the 3GPP TS 36.211 standard—which requires the claimed ratios. *See, e.g.*, PX-079; PX-063; PX-098. Consistent with Dr. Cooklev's testimony, this is sufficient circumstantial evidence to show the accused products implement the standard using the claimed ratios. *See, e.g.*, Docket No. 262 at 369:11–371:14, 376:12–23. OnePlus's motion for judgment as a matter of law of no direct infringement of the '839 patent is **DENIED**.

### B. OnePlus's JMOL on Inducement

OnePlus contends judgment as a matter of law is warranted because no reasonable jury could conclude that OnePlus induced infringement of the asserted patents.[8] Docket Nos. 300 at 25–26, 322 at 17–19. OnePlus criticizes Pantech's reliance on OnePlus's supply chain, arguing

---

[8] The Court need not address the parties' remaining arguments about the '052 patent because there is no direct infringement for the asserted claims of the '052 patent. *See supra* Section II.A.1.

that Pantech offered no evidence that OnePlus encouraged or instructed its subsidiaries or customers to use or manufacture the accused products in an infringing manner. Docket Nos. 300 at 25–26, 322 at 17–19. OnePlus argues that "touting" the accused products as 4G or 5G compliant does not show that OnePlus induced infringement of the SEPs. Docket No. 300 at 26. OnePlus emphasizes that there is even less evidence of inducement for the '654 patent because Pantech produced no evidence that OnePlus promoted or advertised the accused functionality of the '654 patent. Docket Nos. 300 at 25, 322 at 18. Moreover, OnePlus argues there can be no inducement because the accused functionality arose from combining stock Android software with off-the-shelf Qualcomm hardware, but neither Android nor Qualcomm have been sued for infringement. Docket No. 300 at 26. Finally, OnePlus argues there can be no induced infringement for the '654 and '954 patents because it had no knowledge of these patents pre-suit and there is a circuit split whether filing of the complaint satisfies the knowledge requirement. Docket No. 322 at 17.

Pantech responds that OnePlus actively encouraged ██████████ sales of the accused products in the United States. Docket Nos. 312 at 25–28, 337 at 6–7. Pantech points to evidence that OnePlus established ██████████ to facilitate the infringing sales, ██████████ ████████████████████████████████████████████████████████████████, communicates with United States wireless carriers about the accused products, and has a ██████████████████████████ "PCTRB, Federal Communication Commission, and Underwriters Laboratory certifications for the accused products." Docket No. 312 at 25–26. Pantech also notes that OnePlus oversees all business related to ██████████ sales and even contacts ██████████ customers directly to discuss "routine and specific matters." *Id.* at 26. Pantech argues that the fact that the infringing functionality arises from "off-the-shelf" components is irrelevant because this case is not about the manufacturing process—it is about the

evidence that OnePlus established and facilitated a sales channel of infringing products. *Id.* at 27. Finally, Pantech states that—as a matter of law—it has shown sufficient notice for the '654 and '954 patents because a complaint can provide sufficient notice to a party to support an induced infringement finding at least as of the time the complaint was filed. Docket No. 337 at 6.

First, a reasonable jury could find that OnePlus had knowledge of the asserted patents and knowledge of OnePlus USA's infringing activities. Pantech offered substantial evidence that OnePlus had knowledge of the allegations of infringement for the '839 and '247 patents based on the pre-suit licensing negotiations and by at least the filing of the complaint for the '954 and '654 patents. Thus, the jury could reasonably find there was sufficient evidence that OnePlus had knowledge of the alleged infringement. *See RightQuestion, LLC v. Samsung Elecs. Co.*, No. 2:21-CV-00238-JRG, 2022 WL 507487, at *3 (E.D. Tex. Feb. 18, 2022) ("The Complaint—and the service thereof—therefore provides [the defendant] the requisite notice of the Asserted Patents to support a claim of induced infringement at least as of the time the Complaint was filed.").

Next is whether OnePlus's involvement in the supply chain is sufficient to show OnePlus actively directed and encouraged infringement by the direct infringers (*e.g.*, ███████████). *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). Pantech persuasively argues it presented substantial evidence that a reasonable jury could rely upon to find induced infringement. Pantech presented evidence that OnePlus took affirmative steps to aid the sale of the infringing devices in the United States, including obtaining the required certifications, communicating with wireless carriers, and ████████████████████████████. *See, e.g.*, Docket Nos. 264 at 457:22–458:5, 266 at 681:21–682:19; PX-226 at 1.

The facts here are similar to those in *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, where the Federal Circuit reversed a district court's grant of summary judgment of

no induced infringement because there was no dispute the indirect infringer knew of the asserted patent and a reasonable jury could reasonably rely on communications between the indirect and direct infringer related to product testing, shipment coordination, and product troubleshooting to find that the indirect infringer intended to encourage infringement. 420 F.3d 1369, 1380 (Fed. Cir. 2005). Likewise, here a reasonable jury could find that OnePlus's active participation in the sale and certification of the accused products is sufficient to encourage infringement. *See id.* at 1379–80; *see also Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407–08 (Fed. Cir. 2018) (upholding a jury verdict of induced infringement of an apparatus claim where defendant manufactured, co-developed, and sold products it knew practiced the asserted patents even though it was not involved in the sales of the accused products within the United States).

OnePlus's arguments about its lack of advertising and its practice of buying off-the-shelf components are unconvincing. While advertising may be relevant when the theory of inducement relies on a consumer, Pantech's indirect infringement theory did not rely on the direct infringement of consumers (*e.g.*, end users or wireless carriers). OnePlus admits that Pantech instead relied on OnePlus's inducement of entities within its supply chain—a relationship in which external advertising is less relevant. Similarly, the manufacturers' use of off-the-shelf components is less persuasive because the inducing acts considered by the jury were directed towards testing, certification, and supply coordination—not manufacture.

Thus, OnePlus's motion for judgment as a matter of law of no inducement is **DENIED**.

## C. OnePlus's JMOL on Willful Infringement[9]

When arguing willfulness, the parties primarily repeat their positions about inducement. *See* Docket Nos. 300 at 27–28, 312 at 29–30, 322 at 19–20, 337 at 7. Both parties also discuss

---

[9] The Court need not further address the '052 patent. *See supra* Section II.A.1.

whether Pantech's pre-suit negotiations for the '839 and '247 patents show willfulness. *See, e.g.*, Docket Nos. 300 at 27, 312 at 29–30. OnePlus focuses on its position that the pre-suit offers for the '839 and '247 patents were not fair, reasonable, and non-discriminatory ("FRAND")— contrastingly, Pantech highlights OnePlus's alleged "holdout" pre-suit negotiation tactics. *See, e.g.*, Docket Nos. 300 at 27, 312 at 29–30. The parties also dispute whether post-suit willfulness is a legally available argument for the '954 and '654 patents. Docket Nos. 322 at 19, 337 at 7.

Pantech shows that there is sufficient evidence on the record to support the jury's verdict of willfulness for the '654, '954, '839, and '247 patents. OnePlus had knowledge of the infringement allegations for the '839 and '247 standard essential patents pre-suit and the jury considered evidence that OnePlus dragged out the pre-suit negotiations in bad faith. Similarly, a reasonable jury could have found post-suit[10] willfulness for the '954 patent given OnePlus's continued use of the standard essential technology even after it learned it was being accused of infringement. Willfulness is an especially close call for the '654 patent but the jury heard no evidence that OnePlus did anything to avoid infringement of the '654 patent after it received notice of the complaint.

Accordingly, OnePlus's motion for judgment as a matter of law of no willful infringement for the '654, '954, '839, and '247 patents is **DENIED**.

---

[10] Infringement may be willful post-suit if a defendant "continues its allegedly infringing conduct even after receiving notice of a complaint." *See Touchstream Techs., Inc. v. Altice USA, Inc.*, No. 2:23-CV-00059-JRG, 2024 WL 1117930, at *3 (E.D. Tex. Mar. 14, 2024).

### D. OnePlus's JMOL on Invalidity

#### 1. OnePlus's JMOL on the Invalidity of the '052 Patent

OnePlus argues that Tannenbaum anticipates the '052 patent.[11] First, OnePlus contends that "Stevenson's testimony that Tannenbaum's 'icons' 'all look like control interfaces because you can enter controls in all of them' . . . cannot be reconciled with his opinion that the call bubble is not a control interface. . . ." Docket No. 322 at 20. Second, OnePlus maintains that the separate gestures are met by Tannenbaum's advanced user interface, which associates gesture inputs to target application and control. Docket Nos. 300 at 29, 322 at 21.

Pantech persuasively shows a jury could reasonably find OnePlus did not show anticipation by clear and convincing evidence. Dr. Stevenson explained that everything in Tannenbaum is a control interface because one can enter controls in all of them, whether the background application is in an icon or control interface form.[12] Docket No. 268 at 972:1–974:1, 975:5–23. A reasonable jury could have also relied on Dr. Stevenson's testimony that Tannenbaum cannot anticipate the '052 patent because it only teaches the input of one gesture, rather than different and distinct target application control gestures and application selection gestures as required by the Court's claim construction. *Id.* at 976:10–977:7.

For these reasons, OnePlus's motion for judgment as a matter of law of invalidity of the '052 patent is **DENIED**.

---

[11] OnePlus correctly points out that any argument that Tannenbaum does not disclose a mobile terminal is irrelevant because Pantech never argued that the preamble is limiting. Docket No. 300 at 28. Pantech's briefing does not contest this position.

[12] While OnePlus has shown that Dr. Stevenson's infringement and invalidity opinions about what comprises a "control interface" are incongruent, if the jury credited his explanation of what a "control interface" is with respect to Tannenbaum, it could have found that Tannenbaum does not anticipate the asserted claims because its icons allow a user to enter controls.

### 2.   OnePlus's JMOL on the Invalidity of the '654 Patent

OnePlus argues judgment as a matter of law as to invalidity of the '654 Patent is warranted because its expert provided unrebutted testimony that Goren anticipates the '654 patent. Docket No. 300 at 30–31. In its reply, OnePlus explains that its expert provided testimony that the touch region is disclosed in Goren, because Goren teaches there is no substantive difference between the "touch region" and the "I" icon region. Docket No. 322 at 21–22. Finally, OnePlus believes that Pantech misrepresents Dr. Kia's testimony. *Id.* at 22.

Having considered the parties' arguments and the evidence, the jury could reasonably find Dr. Kia's testimony did not provide clear and convincing evidence that Goren anticipates the '654 patent. Pantech did not need to put up a rebuttal witness because a jury could have found that Dr. Kia conceded that the "touch region" "is not disclosed." Docket No. 268 at 948:11–17. Further, the jury could have also found that Dr. Kia's testimony that a touch region was "implied" did not meet the clear and convincing evidence standard required to show anticipation. *Id.*

Accordingly, OnePlus's motion for judgment as a matter of law of invalidity of the '654 patent is **DENIED**.

### E.   OnePlus's JMOL on Patent Exhaustion

OnePlus argues that because the jury found the '839 and '954 patents were infringed, they also had to find that the licensed based stations exhausted both patents. Docket Nos. 300 at 31–33, 322 at 14–17. Pantech responds that a reasonable jury could find OnePlus did not show substantial embodiment because the licensed base stations were never compared to the '839 or '954 patents or the SEP standards and there was no evidence about the licensed base stations' configurations or capabilities. Docket No. 312 at 41–44. Pantech also argues that patent exhaustion is legally inapplicable because its theory of infringement does not rely on any authorized acquirers of any licensed products. *Id.* at 44–45.

Having considered the parties' argument and the evidence, judgment as a matter of law is not warranted here. A reasonable jury could have found the evidence insufficient on this issue. Furthermore, the defense of patent exhaustion does not bar Pantech's infringement claims because the infringement theory that was ultimately presented at trial did not rely on "an assertion that an authorized acquirer was using the same invention by infringing the asserted claims." *Helferich Pat. Licensing, LLC v. New York Times Co.*, 778 F.3d 1293, 1302 (Fed. Cir. 2015).[13] Based on the evidence actually submitted at trial, allowing patent exhaustion to apply here would improperly extend it "far beyond the doctrine's traditional scope" by "bar[ring] the patentee from enforcing a patent claim against the making, selling, and using of new, patentee-unauthorized copies of an article covered by the claim." *Id.* at 1306.

For these reasons, OnePlus's motion for judgment as a matter of law of patent exhaustion is **DENIED**.

### F.      OnePlus's JMOL on Damages

OnePlus argues it is entitled to judgment as a matter of law on damages. Docket Nos. 300 at 33–50, 322 at 22–34. OnePlus reiterates its summary judgment arguments—that Pantech's damages theory is legally flawed because it fails to apportion and disregards comparable licenses. Docket Nos. 300 at 33–46, 322 at 28–34. OnePlus also emphasizes its belief that the royalty rates for the SEPs are not FRAND. Docket Nos. 300 at 41–43, 322 at 29. OnePlus argues that if the Court finds Pantech's damages theory is legally unsound, it should receive judgment of no damages or the damages at the royalty rate calculated by OnePlus's expert. Docket No. 300 at 33–40. Because it believes the jury's damages verdict is inappropriate, OnePlus alternatively

---

[13] Although OnePlus relies on Pantech's original infringement contentions to argue Pantech's inducement theory relied on authorized acquirers, the jury did not see these contentions or hear evidence of that infringement theory. *See* Docket No. 337 at 9; *see also,* Docket Nos. 255, 256.

argues that—assuming Pantech's damages theory is legally sound—the Court should grant judgment as a matter of law that damages are no more than Dr. Putnam's figures. Docket No. 300 at 47–50.[14] OnePlus concludes that the Court cannot accept the jury's verdict because it was 7.4 times higher than the highest number presented at trial and higher than what ███████████████ paid for a worldwide license to Pantech's portfolio. Docket No. 300 at 33–34, 47–50; *see also* Docket No. 322 at 22–29.[15]

Pantech responds that Dr. Putnam's damages were appropriate, reliable, and only provided a floor for the jury's award. Docket No. 312 at 47–49. Pantech explains that Dr. Putnam's analysis was based on comparable licenses and that he not only considered the ████████████████ but also explained why they were not comparable. Docket Nos. 312 at 59–64, 337 at 14. Pantech reasons that Dr. Putnam adhered to the requirements of apportionment by explaining the licenses had built-in apportionment, and then performing further apportionment to reach a per-patent rate for the asserted SEPs and by considering comparable technology for the asserted NEPs. Docket Nos. 312 at 61–64, 337 at 15–17. Finally, Pantech argues that Dr. Putnam's royalty rates for the SEPs are not unfair or discriminatory. Docket No. 337 at 15. Pantech also reiterates the IDC data was a reliable source of data for OnePlus's sales given the errors in OnePlus's own sales data. Docket No. 312 at 64–65.

Judgment as a matter of law of no damages is appropriate for the '052 patent because there is no direct infringement. *See supra* Section II.A.1. Otherwise, OnePlus fails to persuasively argue judgment of no damages or damages at the rate opined by its expert is required as a matter of law. All the issues identified by OnePlus could have been addressed via cross-examination.

---

[14] This argument is addressed below, in Section III.

[15] OnePlus also makes specific arguments about the '052 patent that are now moot. *See supra* Section II.A.1.

Accordingly, OnePlus's motion for judgment as a matter of law of no damages is **GRANTED-IN-PART** for the '052 patent and **DENIED-IN-PART** for the remaining asserted patents.

### III.    OnePlus's Motion for a New Trial or Remittitur

Both parties spent a significant portion of their briefing addressing the jury's verdict of $10.62 million in damages, which was significantly higher than the highest damages figure calculated by any expert at trial—$1.39 million. *See generally* Docket Nos. 300, 312, 322, 337, 352, 353. OnePlus argues a new trial on damages is necessary because the size of the award is so exaggerated as to indicate bias and prejudice.[16] *See generally* Docket No. 352. OnePlus argues that if the Court decides to offer a remittitur, it should not exceed $1,393,948. *Id.* at 9–12.

Pantech's original position was that remittitur was unnecessary because a jury could have awarded up to $13,935,019 damages based on the evidence presented at trial. *See* Docket No. 312 at 50–58. At the post-trial hearing, however, Pantech acknowledged that the theories it relied on in its briefing to reach up to $13 million in damages "absolutely were not argued at trial." Docket No. 351 at 27:4–6; *see also id.* at 23:2–25:4 (OnePlus discussing the fact that these theories were not presented at trial); *see also* Docket No. 350 at 37:14–25 (same). Pantech subsequently argued that the Court should offer remittitur of $3,441,979 before ordering a new trial because the jury's award does not reflect passion or prejudice. *See generally* Docket No. 353. Pantech reasons the jury's verdict is simply a mathematical error because it "reflect[s], roughly, undiscounted pre-

---

[16] OnePlus very briefly argues that a new trial on all issues is warranted because all these issues are "interwoven." *See* Docket Nos. 300 at 51, 322 at 35. But OnePlus fails to meet its burden of showing a new trial on all issues is warranted. The Court already found the evidence of liability as to the '954, '654, '839, and '247 patents was sufficient and OnePlus fails to articulate how infringement, invalidity, and willfulness are interwoven with damages. *See, e.g.*, *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1242 (5th Cir. 1985) (finding a new trial on damages may be held once liability is established because "[a] jury's assessment of damages may be influenced by impermissible factors even though it reaches an acceptable verdict on liability.").

litigation offers made by Pantech for its entire patent portfolio, although the SEP rate appears to have been adjusted upward." *Id.* at 7.

Typically, the Court defers to a jury's verdict, but when the Court "is left with the perception that the verdict is clearly excessive, deference must be abandoned." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 431 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 745 (2023), *reh'g denied*, 143 S. Ct. 1049 (2023) (citation omitted). In the Fifth Circuit, remittitur is ordinarily appropriate when "defects in the award are readily identifiable and measurable." *Id.* However, a new trial—not remittitur—is appropriate "when the jury's award resulted from passion and prejudice." *Frazier v. Honeywell Int'l, Inc.*, 518 F. Supp. 2d 831, 836 (E.D. Tex. 2007) (citing *Whitehead v. Food Max of Miss., Inc.,* 163 F.3d 265, 275 (5th Cir. 1998)).

First, there is no question this verdict is excessive. While Pantech is correct that the jury could treat Dr. Putnam's royalty rate as the floor, the overall damages award was more than seven times the amount of Dr. Putnam's highest damages calculation. Even if the attorney argument during closing—that the damages should be increased by $2.5 million to account for a litigation discount—is considered, the ultimate $10.62 million verdict is three times the $3,441,979 in damages that Pantech's own counsel sought during closing. Accordingly, given the evidence presented at trial and Pantech's admission that its theories supporting a verdict higher than $3.4 million were never discussed before the jury, the verdict is excessive and clearly not supported by the evidence.

Second, there is evidence that the verdict may have resulted from passion or prejudice.[17] Here, the verdict is so excessive in comparison to the evidence presented at trial that impropriety

---

[17] At the hearing, the Court permitted subsequent briefing on whether remittitur or a new trial was appropriate because it was unclear whether the unquestionably excessive award arose from passion, prejudice, or a mathematical error. Docket No. 350 at 73:6–9.

may be inferred. The verdict was more than seven times the amount supported by the expert testimony of Dr. Putnam. *See Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 684 (5th Cir. 1986) (finding a remittitur that reduced an award "by more than an order of seven" was inappropriate because the "jury award was so large that it reflected passion or prejudice"). Moreover, the verdict was more than three times what Plaintiff ultimately asked for during closing. *See id.*

OnePlus points to several incidents that it believes prejudiced the jury. *See* Docket No. 353 at 7–9. Most prejudicial are Pantech's excessive questions about litigation in the United Kingdom and Germany and Pantech's closing arguments that suggested to the jury that they should increase the damages to punish OnePlus for its holdout behavior. *See id.* at 9. The Court gave Pantech some leeway to talk about the United Kingdom and Germany litigation based on its representation that it wanted to impeach a witness who testified they did not know what a "holdout" was. Docket No. 266 at 723:16–725:12. The Court ultimately stopped this line of questioning because Pantech's questioning went well beyond impeachment and became prejudicial. *Id.* at 727:9–730:6. Pantech reintroduced this issue, prompting further objection that the Court sustained. Docket No. 269 at 44:3–7.

Pantech also inappropriately leveraged this prejudicial evidence during its closing arguments to seek punitive damages. Pantech argued that the jury should increase the final award by more than the "median cost of litigation" because "this is no average case," OnePlus was an "unwilling licensee," and the higher litigation rate should be applied because "[t]hat's how you stop it." *See e.g.*, Docket No. 270 at 1105:1–13. This argument is improper because the Court— not the jury—is responsible for adjusting the award to account for any alleged willfulness. *See Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, No. CV 15-634-JFB, 2019 WL

1877189, at *7 (D. Del. Apr. 26, 2019), *aff'd*, 967 F.3d 1380 (Fed. Cir. 2020) (noting that an "unwilling licensee" argument is part of a willfulness claim).

Moreover, Pantech's initial explanation that the jury could have applied multiple, unargued theories to reach the ultimate verdict would itself show that the jury's increased damages finding was based on prejudice or passion. *See generally* Docket No. 312 at 47–49, 51–58. The leaps of logic a jury would have had to perform to identify and apply all the unargued theories to significantly increase the royalty rate would suggest that the jury was attempting to punish OnePlus rather than provide an appropriate measure of damages. Pantech's subsequent argument that the jury's verdict is simply a mathematical error because it reflects, roughly, the undiscounted pre-litigation offers made for Pantech's entire patent portfolio would also suggest the verdict was a result of passion or prejudice. Even Pantech admits this explanation does not fully explain the SEP damages. *See* Docket No. 353 at 7. Moreover, the jury heard repeated testimony that Pantech's entire patent portfolio includes hundreds of patents—only five of which were at issue in this case. To ignore this evidence and apply the royalty rate for Pantech's *entire* patent portfolio to these five patents supports an inference of impropriety. This is especially true for the SEPs because the jury was instructed that the SEPs were subject to a FRAND rate.

Pantech fails to persuade the Court that remittitur is the appropriate remedy here. When it comes to the maximum amount a reasonable jury could have awarded, the parties are more than $2 million apart. *Compare* Docket No. 352 *with* Docket No. 353. While the maximum recovery is likely somewhere below Pantech's estimate, there is no simple mechanical solution to determine what the maximum verdict should be. For example, both parties assume the IDC data should be used when analyzing the verdict and the maximum award, rather than OnePlus's records of lower sales. *See* Docket Nos. 352, 353. But Pantech presented the IDC data based on its position that

OnePlus's own sales data was unreliable and inaccurate, and there was evidence on both sides as to the reliability of OnePlus's own data. An unprejudiced jury should have the opportunity to determine whether OnePlus's sales data or the IDC sales data is more reliable.

As another example, OnePlus's argument that the royalty rate is capped based on Dr. Putnam's maximum royalty rate ignores that the jury could have increased the royalty rate upon consideration of the *Georgia-Pacific* factors. *See generally* Docket No. 352. On the other hand, Pantech relies on Dr. Lopez's testimony to increase Dr. Putnam's damages by $2.5 million. *See* Docket No. 352. But this attorney argument—presented for the very first time at closing—does not appear to be reliable or appropriate.[18] Pantech argued Dr. Lopez's testimony supported dividing the $2.5 million cost for "above-average" litigation between the five asserted patents by "simply add[ing] an additional $500,000 for each patent." *See* Docket No. 270 at 1105:1–24, 1106:23–1107:3. The Court has already discussed why this argument improperly asks the jury to penalize OnePlus. But it is unclear whether this argument is even supported by Dr. Lopez's testimony given that he was testifying about a general survey that does not appear to be connected to the five asserted patents. *See* Docket No. 269 at 15:6–16:14. Accordingly, remittitur is inappropriate because the Court cannot determine whether the jury intended to remove a litigation discount or whether the jury increased the award simply to punish OnePlus.

For these reasons, OnePlus's motion for a new trial on damages is **GRANTED.**

## IV.   Pantech's Motions are Premature

The new trial on damages and a new jury verdict will affect attorneys' fees, interest, and costs. Moreover, the parties' present briefing does not account for the Court's judgment as a matter

---

[18] OnePlus initially believed this $2.5 million came from the 1.72 multiplier that was stricken. *See* Docket Nos. 300 at 35–36, 178 at 35–37. OnePlus's confusion appears to arise from the fact that Dr. Lopez's presented opinion testimony that relied on a survey that had data comparable to a stricken article. *Compare* Docket No. 178 at 35–37 *with* Docket No. 269 at 15:8–23.

of law for the '052 Patent. Accordingly, Pantech's Motions for Entry of Judgment (Docket No. 302), Award of Attorneys' Fees and Enhancement (Docket No. 303), and Bill of Costs (Docket No. 308) are **DENIED-WITHOUT-PREJUDICE** because they are premature. *See Shum v. Intel Corp.*, 629 F.3d 1360, 1370 (Fed. Cir. 2010) (affirming that it was not error for a district court to wait until after a second trial to determine the prevailing party and award costs).

## CONCLUSION

For these reasons, it is

**ORDERED** that OnePlus's Motion to Dismiss for Lack of Standing (Docket No. 299) is **DENIED**. It is further

**ORDERED** that OnePlus's Motion for Judgment as a Matter of Law (Docket No. 300) that OnePlus does not infringe—willfully, directly, or by inducement—the asserted claims of the '052 patent is **GRANTED**. It is further

**ORDERED** that OnePlus's Motion for Judgment as a Matter of Law (Docket No. 300) that OnePlus does not infringe—willfully, directly, or by inducement—the asserted claims of the 654, 839, 247, and 954 patents is **DENIED**. It is further

**ORDERED** that OnePlus's Motion for Judgment as a Matter of Law (Docket No. 300) that the asserted claims of the '052 and '654 patents are invalid is **DENIED**. It is further

**ORDERED** that OnePlus's Motion for Judgment as a Matter of Law (Docket No. 300) that the licensed base stations substantially embody the '839 and '954 patents and that the '839 and '954 patents are exhausted is **DENIED**. It is further

**ORDERED** that OnePlus's Motion for Judgment as a Matter of Law of no damages (Docket No. 300) is **GRANTED-IN-PART** as to the '052 patent and **DENIED-IN-PART** as to the remaining asserted patents. It is further

**ORDERED** that OnePlus's Motion for a New Trial (Docket NO. 300) is **GRANTED-IN-PART** as to damages for the '654 patent and SEPs only. It is further

**ORDERED** that Pantech's Motion for Entry of Judgment (Docket No. 302) is **DENIED-WITHOUT-PREJUDICE** as premature. It is further

**ORDERED** that Pantech's Motion for Award of Attorneys' Fees and Enhancement (Docket No. 303) is **DENIED-WITHOUT-PREJUDICE** as premature. It is further

**ORDERED** that Pantech's Motion for Bill of Costs (Docket No. 308) is **DENIED-WITHOUT-PREJUDICE** as premature. It is further

**ORDERED** that, within **seven (7) days** of this Order's entry, the parties **SHALL** jointly move to file a redacted version of this Order. The parties' joint motion **SHALL** provide proposed redactions, describe the confidential information in those proposed redactions, and provide good cause for each redaction. Or, if no redactions are necessary, the parties **SHALL** jointly file an unsealed and unredacted version of the Order with a cover page stating no redactions are needed. It is further

**ORDERED** that within **seven (7) days** of this order the parties **SHALL** prepare and submit a joint motion attaching a joint proposed docket control order[19] for the damages retrial that incorporates the following schedule of deadlines:

| Jury Trial | *October 15, 2024 immediately following jury selection in Texarkana, Texas |
| --- | --- |
| **Jury Selection** | *October 15, 2024 in Texarkana, Texas |
| **Pre-Trial Conference** | *October 2, 2024 at 10:00 a.m. in Texarkana, Texas |
| **File Joint Jury Panel Questionnaire**<br><br>If the parties request to submit a jury panel questionnaire, the proposed questionnaire shall be | August 21, 2024 |

---

[19] While the parties should reference the sample docket control order for patent cases that can be found on the Court's website, the parties need only propose deadlines related to pretrial and trial.

| jointly filed as an agreed, single document that is no more than three pages. The parties shall also email a Microsoft Word version of the questionnaire to the law clerk assigned to this case. | |

(*) indicates a deadline that cannot be changed without showing good cause. Good cause is not shown merely by indicating that the parties agree that the deadline should be changed.

**So ORDERED and SIGNED this 14th day of August, 2024.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE