IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| PANTECH CORPORATION and PANTECH WIRELESS, LLC<br><br>Plaintiffs,<br><br>v.<br><br>ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD.,<br><br>Defendant. | Case No. 5:22-cv-00069-RWS<br><br>**JURY TRIAL DEMANDED** |

## FINAL JURY INSTRUCTIONS

**1. Introduction**

    **1.1    Introduction to Jury Instructions**

Ladies and Gentlemen of the Jury: You have now heard the evidence in this case. I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am about to give you orally. You will have these instructions for your review when you retire to deliberate in a few minutes. Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so. My preference is that you listen carefully while I give them to you orally, understanding you'll have your own written copy to review when you get to the jury room.

    **1.2    Introduction to Jury Instructions**

It is your duty to follow the law as I give it to you. On the other hand, as I have said, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have

made in the course of the trial or may make in the course of these instructions as an indication that I have any opinion about the facts in this case.

You are about to hear closing arguments from the attorneys for both of the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

### 1.3    Verdict Form and Procedure

A verdict form has been prepared for you. You will take this form to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it, and sign it. Answer the questions as directed in the verdict form from the facts as you find them to be. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

**2.     Considering the Evidence**

**2.1     Credibility of Witness and Evidence**

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all of the witnesses, regardless of who may have called them, and the stipulations of the parties. You may also consider all the exhibits received and admitted into evidence, regardless of who may have introduced them.

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all of the evidence. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider a witness's manner and demeanor on the witness stand, any feelings or interest they may have in the case, any prejudice or bias about the case that the witness may have, and the consistency or inconsistency of their testimony, considered in light of the circumstances. Has the witness been contradicted by other evidence? Has he or she made statements at other times and places contrary to what he or she said on the witness stand? You must give the testimony of each witness the amount of credibility that you think it deserves.

You must also keep in mind, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth. You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

**2.2     Objections of Counsel**

As I have told you previously, the attorneys in this case are advocates for their competing clients, and they have a duty to object when they believe evidence is offered that should not be

admitted under the rules of this Court. When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer. If the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question as if the objection had not been made. By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

Now, at times during the trial it was necessary for the Court to talk with the lawyers outside of your hearing at the bench, or by calling a recess and talking to them while you were out of the courtroom. This happened because, often during a trial, something comes up that does not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence.

### 2.3    Direct and Circumstantial Evidence

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented.

### 2.4    Stipulated Facts

The parties have stipulated or agreed to some facts in this case. When the lawyers on both sides stipulate as to the existence of a fact, then you must, unless otherwise instructed, accept the

stipulation as evidence and regard that fact as proven. These facts, which have been read to you throughout the trial, are not in dispute between the parties.

### 2.5   Testimony by Deposition or Trial Transcript

Certain testimony in the case has been presented to you through depositions or prior trial testimony. A deposition is the sworn, recorded answers to questions asked to a witness in advance of this trial. The prior trial testimony is similarly sworn, recorded answers to questions asked to a witness in advance of this trial. If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition or prior trial testimony.

Before this trial began, the attorneys representing the parties in this case questioned these witnesses under oath. At that time, a court reporter was present and recorded their sworn testimony. Deposition and prior trial testimony is entitled to the same consideration by you as testimony given by a witness in-person from the witness stand in open court. Accordingly, you should judge the credibility and importance of the deposition and prior trial testimony to the best of your ability, just as if the witness had testified before you in open court.

### 2.6   Reasonable Inferences from Evidence

Now, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. However, you should not base your decision on any evidence not presented by the parties during this case, including your own personal experience with any products that are at issue in the case.

**2.7    Sufficiency of Testimony**

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence, you believe that single witness.

**2.8    Expert Witnesses**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide whether to rely upon it or not.

**2.9    Demonstratives**

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aids." Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence. Demonstrative exhibits will not be available for you to view during your deliberations.

3.     **Burdens of Proof**

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." The Plaintiffs in this case, Pantech Corporation and Pantech Wireless, LLC, which have been referred to as "Pantech" or "Plaintiffs," have the burden of proving damages for OnePlus Technology (Shenzhen) Co., Ltd.'s, which has been referred to as "OnePlus" or "Defendant," patent infringement by a preponderance of the evidence. A preponderance of the evidence means evidence that persuades you that a claim is more likely true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

This burden of proof is not to be confused with the burden of proof known as "beyond a reasonable doubt," which is the burden of proof applied in a criminal case, not in a civil case such as this. Beyond a reasonable doubt is a higher standard than the preponderance of the evidence standard.

In determining whether any fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of the witnesses, regardless of who called them, and all of the evidence—including all of the exhibits received into evidence during the course of the trial, regardless of who may have produced them.

**4.     Summary of the Positions of the Parties**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously advised you, this is an action to assess the fair and reasonable compensation for established patent infringement. It has been determined that certain OnePlus products infringe claim 1 of U.S. Patent Number 10,869,247 (the '247 Patent), clams 6 and 9 of U.S. Patent Number 11,012,954 (the '954 Patent), claims 9 and 11 of U.S. Patent Number 9,548,839 (the '839 Patent), and claims 1, 6, and 10 of U.S. Patent Number 9,063,654 (the '654 Patent). Together, these patents are referred to as the "Asserted Patents" or the "Patents-in-Suit." Pantech is entitled to damages for this infringement but the parties disagree on the amount of those damages. The amount of damages for the infringement by OnePlus is the only issue which you must decide.

**5.     Damages**

I will now instruct you about the measure of damages. You must determine the amount of money damages to be awarded to Pantech to compensate it for OnePlus's infringement.

The damages you award must be adequate to compensate Pantech for the infringement of the Asserted Patents by OnePlus. You must not award Pantech more damages than are adequate to compensate for the infringement, nor should you include any additional amount for the purpose of compensating Pantech for its litigation costs or punishing OnePlus. Damages are not meant to punish an infringer or set an example. Your damages award should put Pantech in approximately the financial position that it would have been in had the infringement not occurred; that is, the payment of a reasonable royalty for OnePlus's sales of the Accused Products.

Pantech has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Pantech establishes that it more likely than not suffered. While Pantech is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

Pantech seeks patent damages in the form of a reasonable royalty. You must be careful to ensure that the award is no more or no less than the value of the patented invention.

### 5.1  Damages – Reasonable Royalty Overview

A reasonable royalty is defined as the money amount that Pantech and OnePlus would have agreed to in a hypothetical negotiation taking place at the time when infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner and OnePlus would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed that the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

With respect to the '839, '247, and '954 SEPs, any reasonable royalty must reflect that Pantech is obligated to license these patents on fair, reasonable, and non-discriminatory

("FRAND") terms. Therefore, a reasonable royalty as to the '839, '247, and '954 SEPs cannot exceed the amount permitted under Pantech's FRAND obligations.

### 5.2    Damages – Date of Commencement of Damages

The parties have stipulated as to notice and amounts of licensable sales for each patent, which you heard read into the record as stipulations.

### 5.3    Damages – Apportionment

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Pantech's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, damages must be apportioned so that it is based only on the value of the patented features, and no more.

With respect to the '839, '247, and '954 standards-essential patents, any royalty for the patented technology must be apportioned from the value of the standard as a whole; and the royalty must be based on the value of the invention, not any value added by standardization of that invention.

### 5.4    Damages – Reasonable Royalty Factors

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner at the time and the alleged infringer would consider in setting the amount the alleged infringer should pay. Some of the kinds of factors that you may consider in making your determination are:

1. The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patents, its commercial success, and its current popularity.

9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

> 15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

You may have heard these factors referred to as the "*Georgia-Pacific* factors."

The '247, '954, and '839 Patents are standard essential patents, that is, the LTE and/or 5G standards cannot be practiced without infringing the patents. Pantech agreed to grant an irrevocable license for the '247, '954, and '839 standards-essential Patents on FRAND terms and conditions.

Accordingly, you must ensure that your damages award with respect to these patents reflects only the value of the patented invention and not the additional value that resulted from the patent's inclusion in one of the standards. In other words, you may not consider the success of the standard itself in determining a reasonable royalty for the asserted essential patents. In addition, because Pantech committed to grant licenses on terms that are fair, non-discriminatory, and reasonable, when assessing any royalty rate to be applied to the standard-essential '247, '954, and '839 patents, you should not consider *Georgia-Pacific* factors 4, 5, 8, 9, and 10. A reasonable royalty with respect to the '247, '954, and '839 standards-essential Patents cannot exceed the amount permitted under Pantech's FRAND obligations.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty that OnePlus would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

### 5.5 Damages – Comparable Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies. Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the patent owner and accused infringer in order for you to consider it. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

### 6. Instructions for Deliberations

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Your verdict must be unanimous. When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during trial. After you have reached your verdict, your Foreperson is to fill in on the verdict form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to deliberate.