**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

|  |  |
|---|---|
| PANTECH CORPORATION and PANTECH WIRELESS, LLC, | C.A. No. 5:22-cv-00069-RWS |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., | **FILED UNDER SEAL** |
| Defendant. | |

**ONEPLUS'S  RULE 50(B) MOTION FOR JUDGMENT AS A MATTER OF LAW**

**TABLE OF CONTENTS**

I.    PANTECH FAILED TO PROVE ANY DAMAGES FOR THE '654 NEP.......................3

II.   PANTECH FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE SUPPORTING A ROYALTY RATE FOR THE SEPS.......................................8

III.  THE COURT SHOULD GRANT JMOL OF NO DAMAGES ........................................13

IV.   JMOL OF NO DAMAGES IS ADDITIONALLY APPROPRIATE BECAUSE PANTECH PURSUED AN INVALID DAMAGES THEORY BASED ON A LUMP-SUM LICENSE AGREEMENT THAT DOES NOT REFLECT THE VALUE OF THE LICENSED PATENTS..................................................................................14

V.    JMOL OF NO DAMAGES IS ADDITIONALLY APPROPRIATE BECAUSE PANTECH PURSUED AN INVALID DAMAGES THEORY THAT IGNORES COMPARABLE LICENSES AND FAILS TO APPORTION THE VALUE OF THE ASSERTED SEPS FROM THE VALUE OF STANDARDIZATION ...........................15

VI.   CONCLUSION...................................................................................................16

███████████████

# TABLE OF AUTHORITIES

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
    809 F.3d 1295 (Fed. Cir. 2015).................................................................14

*Cowart v. Erwin*,
    837 F.3d 444 (5th Cir. 2016) ...................................................................2

*EcoFactor, Inc. v. Google LLC*,
    104 F.4th 243 (Fed. Cir.2024) .................................................................15

*EcoFactor, Inc.v. Google LLC*,
    115 F.4th 1380 (Fed. Cir. 2024) ..............................................................15

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014)...........................................................10, 14

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
    879 F.3d 1332 (Fed. Cir. 2018)..................................................................7

*Garretson v. Clark*,
    111 U.S. 120 (1884)......................................................2, 10, 13, 14

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
    897 F.2d 508 (Fed. Cir. 1990)...................................................................2

*Heck v. Triche*,
    775 F.3d 265 (5th Cir. 2014) ....................................................................2

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004).................................................................12

*LaserDynamics, Inc. v. Quanta Comput.*
    694 F.3d 51 (Fed. Cir. 2012)...........................................................6, 7, 10

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).................................................................2

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
    10 F.4th 1358 (Fed. Cir. 2021) ................................................................14

*Montano v. Orange Cty., Texas*,
    842 F.3d 865 (5th Cir. 2016) ....................................................................2

*Omega Pats., LLC v. CalAmp Corp.*,
    13 F.4th 1361 (Fed. Cir. 2021) .......................................................10, 12, 13

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005).................................................................12

*Promega Corp. v. Life Techs. Corp.*,
    875 F.3d 651 (Fed. Cir. 2017)................................................................................13

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020)..........................................................................2, 13

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)...................................................................7, 10, 12

*Whitserve, LLC v. Comput. Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012)................................................................................14

**INTRODUCTION**

Defendant OnePlus Technology (Shenzhen) Co. Ltd. ("OnePlus") respectfully renews its motions for judgment as a matter of law ("JMOL") pursuant to Federal Rule of Civil Procedure 50.[1] For the reasons set forth below, OnePlus is entitled to JMOL of no damages because no reasonable jury could find damages of any amount in light of Pantech Corporation and Pantech Wireless, LLC's (together, "Pantech") failure to introduce legally sufficient evidence tying any royalty rate to the facts of the case, let alone the $260,291.57 the jury awarded with respect to U.S. Patent No. 9,063,654 ("the '654 NEP") and the $739,708.43 the jury awarded with respect to U.S. Patent Nos. 9,548,839 ("the '839 SEP"), 10,869,247 ("the '247 SEP"), and 11,012,954 ("the '954 SEP") (collectively, "the SEPs").

Through its damages expert, Dr. Putnam, Pantech presented a damages theory based on licenses to its entire patent portfolio, which contains about 1,800 patents. Day 1 Tr. at 205:8–12; Day 2 Sealed Tr. at 29:15–30:3. Dr. Putnam used these licenses to determine a portfolio royalty rate, and then he assigned individual royalty rates to the asserted patents. Dr. Putnam calculated his final damages figures—$295,383 for the '654 NEP and $836,591 for the SEPs—by multiplying these individual royalty rates by OnePlus's accused smartphone sales. Day 2 Tr. at 336:21–337:8. Because Pantech did not present legally sufficient evidence supporting these patent-specific royalty rates, Pantech did not carry its burden of proving damages.

For the '654 NEP, Dr. Putnam assigned a rate equal to the rate he assigned to the '247 SEP, without any evidence establishing that these two patents are of comparable value. And with respect to the SEPs, Dr. Putnam assigned royalty rates based on forward citations not only to the asserted

---

[1] OnePlus also preserves for appeal purposes all of its JMOL motions made in its Rule 50(b) motion following the prior trial, including noninfringement, no willful infringement, invalidity, subject-matter ineligibility, and patent exhaustion. Dkt. 300.

1

█████████████████████████████████████████████

patents, but also to unasserted family members, without any showing that they cover the same subject matter as the asserted claims. For both sets of patents, therefore, Pantech failed to prove damages reflecting the value of the asserted patents in question, as required by law.

Additionally, JMOL of no damages should further be granted because Pantech pursued a legally flawed damages methodology, at least by virtue of Dr. Putnam's reliance on the lump-sum ████ license agreement, which by its own terms states that the consideration for that license is not reflective of the value of the licensed patents.

## LEGAL STANDARDS

"When a case is tried to a jury, a motion for judgment as a matter of law 'is a challenge to the legal sufficiency of the evidence supporting the jury's verdict.'" *Cowart v. Erwin*, 837 F.3d 444, 450 (5th Cir. 2016) (quoting *Heck v. Triche*, 775 F.3d 265, 272 (5th Cir. 2014)). "JMOL should be granted when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Montano v. Orange Cty., Texas*, 842 F.3d 865, 873 (5th Cir. 2016) (internal quotation marks omitted). "The burden of proving damages falls on the patentee." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). The Patent Act "does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020) ("[T]here can be an award of no damages where 'none were proven.'" (quoting *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 509 (Fed. Cir. 1990)); *see also Garretson v. Clark*, 111 U.S. 120, 120–21 (1884) (affirming determination of no damages where patentee "produced no evidence to apportion the profits or damages between the improvement constituting the patented feature and the other features").

███████████████████████████████

## ARGUMENT

### I.      Pantech Failed to Prove Any Damages For the '654 NEP

The jury's award of $260,291.57 for the '654 NEP is not supported by the evidence. At trial, Dr. Putnam opined that the damages for this patent "are $294,383," based on his assumption of the royalty rate for this patent "being the same as the rate for the '247 [SEP]." Day 2 Tr. at 338:21–22; Day 2 Tr. at 368:1–5; *see also* Day 2 Sealed Tr. at 58:18–23.[2] But there is no factual basis for equating the '654 NEP with the '247 SEP. Pantech has offered no economic or technical reason why the two patents should have the same royalty rate, and Dr. Putnam's *ipse dixit* statement that their rates should be the same cannot support the jury's verdict.

*First*, no expert has conducted any analysis comparing the '654 NEP to the '247 SEP. Dr. Putnam testified that he "assigned [the '654 NEP] the same rate as the '247 [SEP] on the basis that Mr. Mauro testified that it was commercially essential," Day 2 Sealed Tr. at 58:18–25, and admitted that Dr. Mauro's statement was the *sole* basis for his opinion, Day 2 Tr. at 61:9–12. But Mr. Mauro confirmed that he had no opinions regarding the '247 SEP or how it compares with the '654 NEP. Day 2 Tr. at 326:10–328:1. Indeed, Mr. Mauro testified that he had "not looked at that patent." Day 2 Tr. at 326:10–13. Mr. Mauro further confirmed that he had not reviewed any materials comparing the '654 NEP with the '247 SEP, and that he is not qualified to offer opinions about the '247 SEP. Day 2 Tr. at 326:10–327:10.

Pantech also presented no evidence comparing the two patents through Dr. Cooklev. Dr. Cooklev confirmed that he had no opinions regarding—and had not read—the '654 NEP, nor how the '654 NEP compares in value to the '247 SEP. Day 1 Tr. at 248:6–249:19. That was not "part

---

[2] OnePlus previously moved to strike this opinion, and the Court declined to do so on the ground that "Dr. Putnam has at least put forth a baseline theory that the '247 patent may be economically comparable." Dkt. 178 at 34. But that theory was not borne out by evidence at trial.

of [his] assignment." Day 1 Tr. at 248:22–249:6. Nor did he review any technical documents or internal Pantech documents, market reports, or any materials comparing the '654 NEP with the '247 SEP. Day 1 Tr. at 249:7–19. In short, neither of Pantech's technical experts compared the value of the '247 SEP with the '654 NEP, nor spoke with Dr. Putnam regarding such a comparison. Day 1 Tr. at 250:5–22; Day 2 Tr. at 327:11–328:1; Day 2 Sealed Tr. at 54:18–56:15.

Dr. Putnam himself is also not qualified to compare the '654 NEP with the '247 SEP, let alone conclude that they are of equal value. Dr. Putnam acknowledged that, as an economic expert, he is not qualified to form an understanding of the technical impact of the '654 NEP on his own. Day 2 Sealed Tr. at 61:2–8. The same is true with respect to the '247 SEP. According to Dr. Cooklev, one would need technical training in order to read and understand the SEPs, and the '247 SEP, for example, is addressed to an audience of persons of ordinary skill in the art, who would have "at least a bachelor's degree in electrical engineering, telecommunications engineering, or [a] related field, with at least two years of experience in the field of networking and wireless devices." Day 1 Tr. at 236:24–237:7. Because Dr. Putnam is not qualified to form an understanding of the technical merits of either the '654 NEP or the '247 SEP, he also is not qualified to perform the comparison needed to conclude that they are equally valuable and therefore should have the same royalty rate. *See* Day 2 Sealed Tr. at 40:22–23 (Dr. Putnam testifying that he is "not competent to evaluate the claims and the technology of individual patents.").

*Second*, Dr. Putnam's own testimony establishes that his assignment of a 0.075% royalty rate was arbitrary and was not supported by the evidence. Dr. Putnam acknowledges that not all standard-essential patents are created equal. Some are more valuable than others. Based on his citation analysis, Dr. Putnam determined that the rate for the '839 SEP should be 0.01%, while the '247 SEP was more than seven times as valuable, with a royalty rate of 0.075%. *See* Day 2 Tr. at

363:18–364:6. He also opined that the SEPs asserted in this case had above-average values compared to the other standard-essential patents in Pantech's portfolio, with the three families accounting for 21% of the total value of Pantech's entire SEP portfolio. Day 2 Tr. at 363:12–17.

Dr. Putnam offered no economic basis for equating the '654 NEP's value to that of a standard-essential patent. But even if he had, there is no evidence to support his assumption that the '654 NEP is as valuable as the '247 SEP, which is, in his opinion, the *most* valuable standard-essential patent in this case—such that the '654 NEP accounts for *half* of the 0.15 percent that Dr. Putnam had said is an established rate for Pantech's *entire* NEP portfolio. Day 2 Sealed Tr. at 59:6–61:12. Dr. Putnam provided no explanation or rationale as to why the '654 NEP should be comparable to the '247 SEP, as opposed to the '839 SEP or any of the even less-valuable patents in Pantech's portfolio.

Dr. Putnam further admitted that he did not perform a proper economic analysis of the '654 NEP. He did not compare the '654 NEP to any other NEPs:

> Q. Dr. Putnam, when you valued the three asserted SEPs, you looked at the big pie and you cut a slice, correct?
>
> A. Yes.
>
> Q. You didn't do the same analysis with the '654 patent, correct?
>
> A. Of course not.
>
> Q. You did not apportion the value of the '654 patent relative to the other NEP patents that Pantech owns, correct?
>
> A. Of course not.

Day 2 Sealed Tr. at 59:6–15. Nor did he do any independent analysis to determine the importance or value of the '654 NEP:

> Q. You didn't conduct a consumer survey to determine whether OnePlus's use of the '654 technology drove consumer demand, correct?

████████████████████████████

A. No.

Q. And you did not conduct a consumer survey to determine whether OnePlus's phones could not compete effectively in the marketplace if the use of the '654 technology was removed, correct?

. . .

A. I did not do such a study.

Day 2 Sealed Tr. at 60:4–61:1. Instead, Dr. Putnam arbitrarily assigned a rate of 0.075% to the '654 NEP based *solely* of Dr. Mauro's testimony that the patent is "commercially essential." By Dr. Putnam's own admission, "[t]here's no other analysis in [his] report or that [he's] offering today concerning setting the royalty rate of the '654 patent." Day 2 Sealed Tr. at 61:9–12. Dr. Putnam's rate is therefore "arbitrary and speculative" and cannot support the verdict. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 81 (Fed. Cir. 2012).

*Third*, Mr. Mauro's conclusion that the '654 NEP is "commercially essential" lacks any factual basis. This is another *ipse dixit* conclusion, and it is belied by Mr. Mauro's own testimony. Mr. Mauro made clear that, with respect to patent value, he does not "proffer actual financial impact," but rather just a "list of benefits or lack of benefits from reading the patent." Day 2 Tr. at 334:21–325:5. Mr. Mauro testified that there is *no quantitative measurement* he could present to the jury regarding the value of the '654 NEP. Day 2 Tr. at 326:4–7. And Mr. Mauro's "essentiality" conclusion is untethered from Pantech's interpretation of the asserted claims. Mr. Mauro testified that he had no opinion on whether there is any specific value associated with the pop-up-clearing function accused of infringing the '654 NEP. Day 2 at 321:3–6. Nor had Mr. Mauro seen any evidence that this feature was driving sales of OnePlus phones, further undermining Mr. Mauro's conclusion that the '654 NEP is commercially essential. Day 2 Tr. at 323:2–13. According to Mr. Mauro, individual "features" like those accused of infringing the '654 NEP are not what drive sales of smartphones. Day 2 Tr. at 323:14–25; *see* Day 2 at 321:11–20 (describing the "function of being

6

able to remove a pop-up after a period of time which can be set or determined" as "a feature").[3] Thus, Mr. Mauro's testimony is insufficient to establish the purported commercial essentiality of the '654 NEP.

As the Federal Circuit has explained, "[i]t is not enough to merely show that the [patented feature] is viewed as valuable, important, or *even essential* to the use of the [overall product]." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326–27 (Fed. Cir. 2014) (alterations in original) (quoting *LaserDynamics*, 694 F.3d at 79) (emphasis added). Rather, a reasonable royalty analysis must "carefully tie proof of damages to the claimed invention's footprint in the market place." *Id.* (internal citations omitted). Accordingly, Dr. Putnam's arbitrary assignment of a royalty rate for the '654 NEP, based solely on commercial essentiality and divorced from the incremental value of the patented technology, is flawed as a matter of law. *See, e.g.*, *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018) (testimony where expert "concluded with little explanation" that the parties "would have agreed to a 5% royalty rate on the sales of the [accused products] as the value for the [patented feature]" should have been excluded). The testimony Pantech presented in support of the '654 royalty rate is based on nothing more than "vague qualitative notions of the relative importance of the . . . technology," which is not a substitute for a properly apportioned royalty rate. *LaserDynamics*, 694 F.3d at 69. JMOL of no damages should be granted with respect to the '654 NEP because the jury has heard no evidence tying the value of the invention of the '654 NEP to the royalty rate Pantech presented.

---

[3] Although Mr. Mauro at trial attempted to suggest that the '654 NEP covers a variety of user interactions, the removal of the pop-up after a "reference period of time" is the sole feature that Pantech accused of satisfying the patent's claims.

## II.    Pantech Failed to Present Legally Sufficient Evidence Supporting a Royalty Rate for the SEPs

Pantech also relied on Dr. Putnam to present evidence establishing royalty rates for the asserted SEPs. Dr. Putnam's testimony is insufficient as a matter of law to support the damages award with respect to the SEPs.

*First*, Dr. Putnam's forward-citation analysis rests on an unsupported assumption regarding the number of "actually" essential SEPs in Pantech's portfolio. Dr. Putnam used a forward-citation analysis that counted citations to family members of the asserted SEPs, as well as other patent families in Pantech's portfolio that he deemed standard-essential. Day 2 Tr. at 358:1–359:1, 360:2–17, 362:7–363:5. Dr. Putnam then determined what he considered the "share of Pantech's portfolio value" attributable to the asserted SEPs, which he translated to a percentage of his portfolio rate, thereby arriving at a royalty rate for the asserted patents. Day 2 Tr. at 363:6–364:6. This analysis rests on Dr. Putnam's assumption that there are 29 actually essential SEP families in Pantech's portfolio in addition to the families of the asserted SEPs. Day 2 Tr. at 358:11–6. But Dr. Putnam provided no evidence at trial establishing how many actually essential SEPs are in Pantech's portfolio. By his own admission, determining whether a patent "actually is essential" is a technical determination made by a legal authority. According to Dr. Putnam, while Pantech may "disclose" patents it believes may be "potentially essential," whether a patent "actually is essential" is determined by "someone like a court." Day 2 Sealed Tr. at 25:11–23. As an economic expert, Dr. Putnam is not qualified to make a determination as to how many of Pantech's patents are actually standard essential. At trial, Dr. Putnam did not cite any court decisions determining Pantech patents to be actually essential, nor identify *which* Pantech patents he believes are essential, nor to which standards. Without a basis for Dr. Putnam's conclusion that Pantech owns 29 actually essential

patent families beyond the families of the three asserted SEPs, the jury was not provided substantial evidence supporting the rates Dr. Putnam assigned to the asserted SEPs.

*Second*, Dr. Putnam gave no explanation for how he translated from citation counts to the values he assigned to the patent families of the asserted SEPs, beyond his conclusory assertion that they reflect a share of the value of Pantech's SEPs based on a forward-citation analysis. At trial, Dr. Putnam testified that he counted the number of citations to families of actually essential SEPs in Pantech's portfolio and "translate[d] that to the share of Pantech's portfolio value that's accounted for by the three SEPs in this case." Day 2 Tr. at 363:1–4. Based on this analysis, Dr. Putnam asserted that "the share of the total Pantech portfolio is 2 percent for the '839 family, 3 percent for the '954 family, [and] 15 percent for the '247 family, for a total of 21 percent for the three SEPs in this case out of the total Pantech portfolio." Day 2 Tr. at 363:12–17. Then, Dr. Putnam assigned royalty rates to the asserted SEPs by multiplying their percentage share of the portfolio by his portfolio rate of 0.5 percent. Day 2 Tr. at 363:19–364:1. Dr. Putnam, however, did not explain to the jury how he "translated" citation counts to percentage shares of the portfolio's value; he simply asked the jury to accept the percentages he presented to it, along with the royalty rates he derived from those percentages. For example, Dr. Putnam did not explain why he compared citations to family members of the '247 SEP—a patent that Pantech considers essential to the 5G standard—against citations to patent families that Dr. Putnam considers essential to the 4G standard. Day 2 Sealed Tr. at 53:3–54:13; *see also* Day 1 Tr. at 229:18–230:7 (Dr. Cooklev testifying that '247 SEP does not cover the 4G standard because it use an "NDI" bit instead of a "NACK" to inform the handset to resend data). Nor did he articulate his methodology for translating relative family citation counts to patent value.

*Third*, the royalty rates Dr. Putnam assigned to the three SEPs improperly include value attributable to other, unasserted family members, not only the asserted SEPs. "[W]here a royalty is at issue, no matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376 (Fed. Cir. 2021) (alteration and internal quotation marks omitted) (quoting *VirnetX*, 767 F.3d at 1326). For this reason, "[t]he patentee must in every case give evidence tending to separate or apportion the patentee's damages between the patented feature and the unpatented features." *Id.* (quoting *LaserDynamics*, 694 F.3d at 67 (cleaned up)). "[S]uch evidence must be reliable and tangible, and not conjectural or speculative." *LaserDynamics*, 694 F.3d at 67 (quoting *Garretson*, 111 U.S. at 121); *see also id.* ("A damages theory must be based on sound economic and factual predicates.") (internal quotation marks omitted). "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). Dr. Putnam's testimony does not satisfy this requirement because his royalty rates incorporate value from unasserted family members, rather than reflecting only the "incremental value that the patented invention adds to the end product." *Id.*

Dr. Putnam's damages theory presumes that, the more citations a patent receives, the more valuable the patent is. *See, e.g.*, Day 2 Tr. at 362:24 ("More citations, higher value."). But Dr. Putnam did not count the number of citations received by the *asserted patents* only. Instead, he calculated the number of citations received by the *families* of the asserted patents. *See, e.g.*, Day 2 Tr. at 360:5–6 ("[Y]ou count the family of patents."). For example, when asked whether he "distinguish[ed] between which family member of, say, the '247 family received the citation or not," Dr. Putnam responded that the citations he "added up" were those to "each one of the family

members." Day 2 Sealed Tr. at 53:12–21. Furthermore, Dr. Putnam conceded that he did not know how many patents were contained in each of the families of the asserted SEPs, nor how many times each of the asserted SEPs had been cited, nor even whether any of them had been cited. Day 2 Sealed Tr. at 52:16–21. Dr. Putnam thus calculated the relative value of patent families, not the asserted patents themselves. Day 2 Sealed Tr. at 50:6–51:4, 53:7–24. This approach is wrong as a matter of law. As of this motion, the '247 SEP's family contains twelve U.S. patents, the '839 SEP's family contains eight U.S. patents, and the '954 SEP's family contains four U.S. patents, as reflected on the first two pages of each of the most recent family members. *See* Ex. A (U.S. Patent No. 11,706,681, the most recent member of the '247 SEP's family); Ex. B (U.S. Patent No. 11,770,218, the most recent member of the '839 SEP's family); Ex. C (U.S. Patent No. 11,659,503, the most recent member of the '954 SEP's family). However, OnePlus has not been alleged to infringe, let alone found to infringe, *every* patent in these families. Dr. Putnam, therefore, improperly imposed royalties for patents that OnePlus has not infringed.

Dr. Cooklev also presented no evidence that could be used to support Dr. Putnam's SEP royalty rates. Although Dr. Cooklev testified that patent citations support his opinions regarding the technical value of the SEPs, including citations from leading companies such as Ericsson, Nokia, and Qualcomm, he could not demonstrate on cross-examination that it was the patents *themselves*, not their family members, that were cited. Day 1 Tr. at 245:21–245:5. Indeed, Dr. Cooklev was unaware that, based on information provided by Pantech, the actual number of citations for the '247 SEP are two, the actual number of citations for the '839 SEP are five, and the actual number of citations for the '954 SEP are zero. Day 1 Tr. at 247:3–12.

The '247 SEP is a prime example of why citations to family members do not translate to the incremental value of the patented features of the asserted patents. Dr. Cooklev opined that the

'247 SEP is essential to the 5G standard. Day 1 Tr. at 235:18–20. But he was unaware that earlier family members of the '247 SEP had been disclosed as essential to the 3G standard, as stated in a sworn interrogatory response by Pantech. Day 1 Tr. at 240:24–242:5; *see* Ex. D (Second Supp. Responses to OnePlus's First Set of Interrogatories), No. 13 at 50. Particularly in view of Dr. Cooklev's own testimony that the 3G, 4G, and 5G standards are quite different, Day 1 Tr. at 233:25–234:4, 237:10–20, and Pantech's stated position that earlier members of the '247 patent family were essential to the 3G standard, Ex. D, counting citations to the '247 SEP's earlier family members would compensate Pantech not only for the '247 SEP's alleged contributions to the 5G standard but also for the contributions of other patents to the 3G standard.

Pantech presented no evidence that remedies Dr. Putnam's failure to tie damages to the value of the asserted patents, rather than their family members. Both Dr. Putnam and Dr. Cooklev testified that patent family members often share the same specification, suggesting that this is a reason why it would be appropriate to count citations to family members in valuing the asserted SEPs. Day 1 Tr. at 251:19–252:22; Day 2 Tr. at 360:14–16. But it is the *claims* that define an invention, not the specification. *E.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'") (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). And it is the "inventive aspects of the *asserted claims*" that must be reflected in a damages award. *See, e.g.*, *Omega*, 13 F.4th at 1378 (emphasis added); *see also, e.g.*, *VirnetX*, 767 F.3d at 1327 (courts must "carefully tie proof of damages to the *claimed invention's* footprint in the market place") (emphasis added; internal

quotation marks omitted). Accordingly, the fact that family members often share specifications is not a reason to count citations to family members in valuing an individual patent.[4]

## III.    The Court Should Grant JMOL of No Damages

By failing to present evidence tying the royalty rates assigned by Dr. Putnam to the value of the '654 NEP and the three SEPs, Pantech has failed to prove a reasonable royalty rate—for the NEP—and FRAND royalty rates—for the SEPs—that could provide the basis for a legally supported damages award. Without such a showing, Pantech's damages case cannot meet the legal requirement of apportionment. *See Omega*, 13 F.4th at 1377, 1380–81 (holding that patentee failed to prove damages where it did not separate value added by patented improvement from other conventional features, and where damages testimony regarding multi-patent licensing agreements did not tie royalty rate to the value of the asserted patent).

Section 284 of Title 35 "does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec*, 978 F.3d at 1291; *see Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017) (concluding patentee was entitled to no damage where it "deliberately abandon[ed] valid theories of recovery in a singular pursuit of an ultimately invalid damages theory"). For example, in *Garretson v. Clark*, the Supreme Court affirmed a determination of infringement but no damages where there was "no proof presented . . . that the plaintiffs had suffered any damages" because the plaintiff "produced no evidence to apportion the profits or damages between the improvement constituting the patented feature and the other features" of the accused product. 111 U.S. at 1211. *Garretson* continues to be cited by the Federal Circuit in apportionment cases and is instructive here, where Pantech has failed to

---

[4] Dr. Putnam also opined that it is appropriate to count citations to family members because the FRAND commitment "applies to every member of a family." Day 2 Tr. at 360:10–13. But he did not explain why that would be the so.

13

███████████████████████████████████████████████████

apportion for the incremental value of the patented features. *See, e.g.*, *Ericsson,* 773 F.3d at 1226 ("[W]here multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." (citing *Garretson*, 111 U.S. at 121)); *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (discussing *Garretson*). Here, because Pantech has not proven royalty rates tied to the value of the '654 NEP and the three SEPs, neither damages award can stand as a matter of law.

## IV.     JMOL of No Damages is Additionally Appropriate Because Pantech Pursued an Invalid Damages Theory Based on a Lump-Sum License Agreement That Does Not Reflect the Value of the Licensed Patents

A further flaw in Pantech's damages case is its reliance on the ██████████ license as one of the licenses used to determine a portfolio royalty rate. "[L]ump sum payments . . . should not support running royalty rates without testimony explaining how they apply to the facts of the case," *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012), and the Federal Circuit has vacated damages awards where the derivation of a reasonable royalty from a lump sum was "incompatible with the . . . agreement as a whole," *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1368 (Fed. Cir. 2021). Here, Dr. Putnam's analysis of the ████ license, which he used to support his 0.05% portfolio royalty rate, is incompatible with the license itself, which states: "███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████"

PX 43 (████ Agreement) § 4.1. Dr. Putnam's damages theory lacks support in the ████ license because it inappropriately derives a per-unit royalty from a lump-sum license that, by its own terms, "███████████████████████████████████." *Id.* Dr. Putnam did not attempt to

14

address this language, and Dr. Jung declined to do so on the basis that he was not qualified to
interpret legal documents. Day 1 Sealed Tr. at 24:16–26:14.

The Federal Circuit's recent grant of *en banc* rehearing in *EcoFactor, Inc. v. Google LLC*,
115 F.4th 1380 (Fed. Cir. 2024), underscores this flaw in Pantech's damages theory. As pointed
out in Judge Prost's dissent from the now-vacated panel opinion in *EcoFactor*, two of the licenses
at issue in that case included language indicating that they were "not based upon sales and do[] not
reflect or constitute a royalty." *EcoFactor, Inc. v. Google LLC*, 104 F.4th 243, 258 (Fed. Cir. 2024)
(Prost, J., dissenting). In the dissent's view, this language "contradicted" and "directly refuted" the
recitals upon which the disputed royalty rate was based. *Id.* at 257, 259 (Prost, J., dissenting). This
language is highly similar to the language in the ▮ license, which likewise contradicts Dr.
Putnam's use of the ▮ license to support his portfolio royalty rate, which Dr. Putnam contended
is meant to account for the value of the licensed patents. At least because Dr. Putnam relied on the
▮ license in support of his determination of a portfolio rate, his damages theory is flawed and
JMOL of no damages should be granted.

**V.    JMOL of No Damages Is Additionally Appropriate Because Pantech Pursued an
Invalid Damages Theory That Ignores Comparable Licenses and Fails to Apportion
the Value of the Asserted SEPs from the Value of Standardization**

OnePlus incorporates by reference additional arguments, made in OnePlus's Rule 50(b)
motion filed following the prior trial in this matter, that JMOL of no damages should be granted
due to flaws in the damages theory Pantech presented through Dr. Putnam. Pantech presented the
same damages theory in this trial, and it is flawed for the same reasons. *First*, Dr. Putnam's
damages theory improperly ignores the ▮ and ▮ even though these are highly
relevant, comparable licenses. Dkt. 300 at 29–35; *see, e.g.*, Day 1 Sealed Tr. at 3:1–8:14, 11:19–
14:2, 15:7–13, 17:3–28:24, 31:3–37:25; Day 1 Tr. at 216:20–221:13; Day 2 Tr. at 336:2–337:8,
338:11–343:12, 344:17–364:21, 367:14–368:25, 387:5–396:25; Day 2 Sealed Tr. at 3:10–61:12;

PX 41; PX 42; PX 40; PX 43; DTX 005; DTX 007. *Second*, Dr. Putnam's damages theory did not attempt to apportion the value of the asserted SEPs from the value of standardization, which is required under Federal Circuit case law. Dkt. 300 at 35–36; *see* Day 2 Tr. at 336:2 –337:8, 338:11–343:12, 344:17–364:21, 367:14–368:25; Day 2 Sealed Tr. at 3:10–61:12, 63:4–100:1. Recognizing that the Court did not grant JMOL based on these arguments following the prior trial, OnePlus preserves them for appeal.

## VI.    CONCLUSION

For the foregoing reasons, OnePlus requests that the Court grant JMOL of no damages with respect to the '654 NEP and the SEPs.

████████████████████████████

Date: October 30, 2024                          Respectfully Submitted,


                                                 */s/ G. Blake Thompson*
                                                **G. Blake Thompson**
                                                State Bar No. 24042033
                                                Blake@TheMannFirm.com
                                                **MANN | TINDEL | THOMPSON**
                                                112 E. Line Street, Suite 304
                                                Tyler, Texas 75702
                                                Telephone (903) 657-8540
                                                Facsimile (903) 657-6003

                                                David M. Airan (lead counsel)
                                                Wesley O. Mueller
                                                Robert T. Wittmann
                                                Paul J. Filbin
                                                Leonard Z. Hua
                                                Christopher J. Gass
                                                John K. Winn
                                                Nicole E. Kopinski
                                                Pei Chen
                                                Michael J. Schubert
                                                LEYDIG, VOIT & MAYER, LTD.
                                                Two Prudential Plaza, Suite 4900
                                                180 North Stetson Avenue
                                                Chicago, IL 60601
                                                Telephone: (312) 616-5600
                                                Facsimile: (312) 616-5700
                                                dairan@leydig.com
                                                wmueller@leydig.com
                                                bwittmann@leydig.com
                                                pfilbin@leydig.com
                                                lhua@leydig.com
                                                cgass@leydig.com
                                                jwinn@leydig.com
                                                nkopinski@leydig.com
                                                rchen@leydig.com
                                                mschubert@leydig.com



Richard L. Rainey
Kevin Collins
Peter Swanson
Justin W. Burnam
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-5565
Facsimile: (202) 778-5565
RRainey@cov.com
PSwanson@cov.com
MKudzin@cov.com
JBurnam@cov.com

*Attorneys for Defendant*
*OnePlus Technology (Shenzhen) Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on October 30, 2024, and Defendant served a true and correct copy of the foregoing document on Plaintiffs' counsel of record by electronic mail.

_/s/ G. Blake Thompson_
**G. Blake Thompson**